UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CERTIFIED POWER SYSTEMS, INC., Plaintiff, | : | |
| v. | : | C.A. No. 05-066-ML |
| RHODE ISLAND STATE ENERGY STATUTORY TRUST 2000, FPLE RHODE ISLAND STATE ENERGY, L.P. and FPLE RHODE ISLAND STATE ENERGY GP, INC. Defendants. | : | |

**DEFENDANTS' FIRST AMENDED ANSWER AND COUNTERCLAIM**

Defendants Rhode Island State Energy Statutory Trust 2000, FPLE Rhode Island State Energy, L.P. and FPLE Rhode Island State Energy GP, Inc. (collectively, "Defendants") respond to the allegations made by Plaintiff Certified Power Systems, Inc. ("CPS" or "Plaintiff") in its Complaint (the "Complaint") and state as follows:

## ANSWER

### Jurisdiction

Defendants admit the allegations concerning jurisdiction set forth in the introductory paragraph with no number.

### COUNT I
### (Preamble)

1. Defendants lack knowledge or information sufficient to form a belief as to the truth of the factual allegations contained in Paragraph 1, and therefore deny the same.

2.-4. Defendants admit the factual allegations of Paragraphs 2 through 4 of the Complaint.

6

5. Defendants admit that on or about September 1, 2004, Rhode Island State Energy Statutory Trust 2000 entered into a contract with CPS (the "Contract"), under which CPS agreed to serve as general contractor with regard to certain improvements to be performed at the Rhode Island State Energy Center (the "Project") located at 24 Shun Pike in Johnston, Rhode Island. The Contract was comprised of a Purchase Order dated September 1, 2004, as amended, plus certain other terms and conditions expressly incorporated by reference therein, including, but not limited to, certain General Conditions for Contract Work (rev. 7/23/04) and certain Supplementary Conditions for this Project. Defendants deny any allegations of paragraph 5 not otherwise admitted.

6. Paragraph 6 of the Complaint purports to recite certain material terms of the subject contract. Defendants submit that the written contract itself is the best evidence of the terms thereof, and speaks for itself. Defendants therefore make no response to the allegations of Paragraph 6.

7. Upon information and belief, Defendants admit that CPS entered into a subcontract with Zampell Refractories, Inc. ("Zampell"), under which Zampell agreed to perform certain aspects of the scope of work covered by CPS' Contract with Defendants. Defendants deny the allegation that CPS entered into an agreement with Zampell "to construct a portion of the aforesaid contract."

8.-9. Defendants admit that on or about December 2, 2004, a fire occurred at the Project, and that the fire started in an area where Zampell was in the process of performing certain work with welding machines. Defendants further admit that the aforementioned fire on December 2, 2004, caused extensive damage to the Project.

10. Defendants admit that they subsequently directed CPS to perform certain repairs to correct the damage caused by the aforementioned fire, and agreed to pay CPS for certain aspects of those repairs, pursuant to the terms of a supplemental Purchase Order dated December 16, 2004, as amended (the "Repair Purchase Order"). Defendants deny any implication that the Repair Purchase Order constituted an acknowledgment of responsibility for the repair work or a waiver of Defendants' claims against CPS for such damages. The parties expressly agreed in the Repair Purchase Order that Defendants were reserving against CPS all available rights and remedies for the damages under the Contract.

11. Defendants admit that certain provisions of the Contract between CPS and Defendants referenced insurance and required CPS to maintain liability insurance. Defendants further state that the Contract required CPS to insure the obligations of its subcontractors or, alternatively, to require its subcontractors to procure and maintain their own insurance in conformity with the Contract. Otherwise, Defendants deny the allegations of paragraph 11 and state that the terms of the Contract itself are the best evidence thereof, and speak for themselves.

12.-13. Paragraphs 12 and 13 purport to recite certain material terms of the Contract between CPS and Defendants. Defendants state that the terms of the written Contract are the best evidence thereof, and speak for themselves. Accordingly, Defendants make no response to the allegations of paragraphs 12 and 13.

14. Defendants lack knowledge or information sufficient to form a belief as to the truth of the factual allegations contained in Paragraph 14, and therefore deny the same. The Contract does not limit the Defendants' remedies and sources of recovery for damages to insurance provided under the Contract. As of this date, neither Plaintiff's insurance carrier nor it

subcontractor's insurance carrier(s) have made any payments, or offered to make any payments, for the damages sustained in the fire.

**Count II**
**(Breach of Contract)**

15. Defendants repeat their responses to Paragraphs 1-14 of the Complaint as if fully set forth herein.

16. Defendants state that it remains entirely unclear whether any insurance coverage maintained by CPS pursuant to the terms of the Contract, or maintained by Zampell pursuant to the terms of its subcontract with CPS, is "sufficient," until such time as Defendants are fully indemnified and/or reimbursed for any and all losses or costs incurred as a result of the fire. Defendants admit that they have not released or paid any funds to CPS under the Contract since the fire on December 2, 2004. All allegations of paragraph 16 not otherwise admitted are denied.

17. Defendants admit that CPS has requested additional payment pursuant to the terms of the Contract since the date of the aforementioned fire on December 2, 2004. Otherwise, Defendants incorporate their response to Paragraph 16 of the Complaint by reference, as if fully set forth herein.

18.-19. Defendants deny the allegations of Paragraphs 18 and 19.

**Count III**
**(Unjust Enrichment)**

20. Defendants repeat their responses to Paragraphs 1-19 of the Complaint as if fully set forth herein.

21. Defendants deny the allegations of Paragraph 21, and further note that they have incurred damages and losses in excess of $5 million as a result of the aforementioned fire on

December 2, 2004, which they believe was caused by the acts or omissions of parties outside their control, including CPS and/or its subcontractor Zampell.

**First Affirmative Defense**

In each of the three counts, Plaintiff has failed to state a claim upon which relief may be granted. Plaintiff's first count for "Preamble" fails to set forth a claim showing it is entitled to relief and fails to assert a demand for judgment for relief. Likewise, Plaintiff's second count for "Breach of Contract" fails to identify the basic elements necessary to an entitlement for relief. Finally, Plaintiff's third count for "Unjust Enrichment" incorporates all allegations from the second count, improperly mixing inconsistent legal and equitable claims and remedies.

**Second Affirmative Defense**

Plaintiff's claims must fail, in whole or in part, because Plaintiff is in material breach of certain portions of the Contract.

**Third Affirmative Defense**

Plaintiff's claims must fail, in whole or in part, because Defendants are entitled to a right of set-off pursuant to Section 34.3 of the aforementioned General Conditions for Contract Work for amounts due from Plaintiff. Defendants assert that its damages from the aforementioned fire are substantially in excess of any remaining amounts due to CPS under the terms of the Contract, and that the fire was caused by the acts or omissions of parties outside their control, including CPS and/or its subcontractor, Zampell.

**Fourth Affirmative Defense**

Plaintiff's claim must fail, in whole or in part, because Defendants are entitled to withhold payment pursuant to Section 34 of the General Conditions for Contract Work.

**Fifth Affirmative Defense**

Plaintiff's claims must fail, in whole or in part, because CPS is responsible, pursuant to Sections 21 and 59 of the aforementioned General Conditions for Contract Work, to protect the work and for any loss or damage of any kind caused on the Project, and has an affirmative obligation to promptly repair any and all such damage.

**Sixth Affirmative Defense**

Plaintiff's claims must fail, in whole or in part, because Plaintiff has failed to adequately supervise work on the Project, including the work of its subcontractors, pursuant to Section 12 of the General Conditions for Contract Work.

**Seventh Affirmative Defense**

Plaintiff's claims must fail, in whole or in part, because Plaintiff has failed to satisfy all conditions precedent for payment under the Contract. The unsatisfied conditions precedent include but are not limited to (a) the failure to deliver appropriate lien waivers and/or releases from CPS and its subcontractor(s); (b) acceptance of work by owner; (c) payment to CPS' subcontractors; and (d) repairs of damaged work.

WHEREFORE, Defendants request an Order of this Court denying and dismissing all claims and prayers for relief contained in the Complaint of Plaintiff, and request a Judgment against Plaintiff, and in favor of Defendants, awarding Defendants their costs of suit and reasonable attorneys' fees.

**COUNTERCLAIM**

Defendants and Counterclaim Plaintiffs Rhode Island State Energy Statutory Trust 2000, FPLE Rhode Island State Energy, L.P. and FPLE Rhode Island State Energy GP, Inc.

("Defendants") hereby state as follows, by and through their undersigned attorneys, as and for their Counterclaim against Plaintiff and Counterclaim Defendant CPS.

**Factual Allegations Common to All Counts**

1. As set forth above, on or about September 1, 2004, Defendant and Counterclaim Plaintiff Rhode Island State Energy Statutory Trust 2000, as owner, and CPS, as general contractor, entered into a Contract (as defined above in Defendants' Answer), under which CPS agreed to perform certain services and improvements at the Project.

2. On information and belief, at some time thereafter, CPS entered into a subcontract with Zampell under which Zampell agreed to perform certain aspects of the scope of work identified under the terms of the Contract between CPS and Defendants.

3. Under the terms of the Contract, particularly Sections 21 and 59 of the General Conditions for Contract Work, CPS assumed responsibility for the protection of the work and any and all risk of loss or damage of any kind to its work on the Project (including the work of its subcontractors), and assumed a responsibility to promptly repair or remedy any losses or damages to its work.

4. Under the terms of the Contract, particularly Section 12 of the General Conditions for Contract Work, CPS was responsible for competent and adequate supervision on the job site at all times, including for the performance of its subcontractors, employees and other agents.

5. Under the Contract, CPS had an implied duty to perform its work skillfully, carefully, prudently, competently and in a workmanlike manner.

6. Under the terms of the Contract, particularly Section 34.1 of the General Conditions for Contract Work, Defendants are entitled at all times to withhold payment of any amount due to Plaintiff because of defective work not remedied, any claims filed, any reasonable

doubt concerning Plaintiff's ability to make payments to subcontractors for material or labor, and/or for any damage to Defendants' equipment, materials or tools.

7. Under the terms of the Contract, particularly Section 34.3 of the General Conditions for Contract Work, Defendants are entitled at all times to set-off any amount due from Plaintiff or its affiliates against any amount payable by Defendants to Plaintiff under the terms of the Contract.

8. On or about December 2, 2004, there was a fire at the Project that caused substantial and extensive damage. The aforementioned fire began in an area where Zampell, CPS' subcontractor, was performing work at the time.

9. The aforementioned fire was caused by the acts or omissions of parties other than Defendants, including, but not limited to, CPS and/or Zampell.

10. As a direct and proximate result of the aforementioned fire, Defendants have incurred losses and damages in an amount in excess of $5 million for necessary repairs and related materials.

11. To date, approximately $2.3 million of the aforementioned repair costs have been paid by Defendants to CPS under the terms of the aforementioned Repair Purchase Order.

12. Under the terms of that Repair Purchase Order, it was expressly agreed and understood that Defendants were reserving all rights under the underlying Contract, including the right to treat any and all costs or damages incurred as a result of the fire, including any amounts paid to CPS or its subcontractors for repairs, as a backcharge or set-off against any remaining amounts due to be paid to CPS under the terms of the Contract, until or unless Defendants are otherwise fully indemnified or reimbursed for all such losses and damages.

13. To date, Defendants have not received any reimbursement or compensation for any of the costs that they have incurred, in excess of $5 million, for losses and damages caused by the aforementioned fire, from either CPS or Zampell, or from their insurers.

**Count I**
**(Breach of Contract)**

14. Defendants hereby restate the allegations of Paragraphs 1-13 as if fully set forth herein.

15. CPS has breached the Contract by failing or refusing to accept responsibility for damages caused by the fire on December 2, 2004, which fire was caused by the acts or omissions of parties outside the control of Defendants, including, but not limited to, CPS and/or Zampell.

16. Further, CPS has breached the Contract by (a) failing to adequately protect the work and take appropriate precautions in performing the work; (b) failing to competently and adequately supervise work on the Project, including the acts and omissions of Zampell, its subcontractor, in relation to the subject fire; (c) failing to perform its work skillfully, carefully, prudently, competently and in a workmanlike manner; (d) failing to repair and replace the damaged work; (e) failing to pay its subcontractor(s); and (f) failing to protect, defend and hold Defendants harmless from liabilities of CPS subcontractors .

17. As a result of the acts and omissions of CPS and its subcontractor(s), in breach of the Contract, Defendants have sustained substantial losses and damages in excess of $5 million.

18. Pursuant to Section 34.3 of the General Conditions for Contract Work, as incorporated by reference in the Contract, Defendants are entitled to set-off any amounts due from CPS against remaining amounts due and payable to CPS under the terms of the Contract.

19. Defendants' damages as a result of the aforementioned fire are substantially in excess of the remaining amounts due to be paid to CPS under the terms of the Contract.

20. Defendants state that the remaining amount due to be paid to CPS under the terms of the original Contract is approximately $1.8 million.

21. As a direct and proximate result of the aforementioned breach of Contract, as set forth herein, Defendants have sustained substantial pecuniary harm.

22. In addition, pursuant to the Contract, particularly the terms of the original Purchase Order and Section 9 of the Supplementary Conditions for this Project, CPS is liable to Defendants for liquidated damages in the amount of $10,000.00 per day in the event that work is not completed by certain identified milestones.

23. CPS has not completed the work within those milestones and therefore Defendants are entitled to liquidated damages for CPS' untimely performance.

24. Defendants have satisfied all conditions precedent to bring this action.

**Count II**
**(Negligence)**

25. Defendants restate the allegations of Paragraphs 1-24 as if fully set forth herein.

26. Under the circumstances present, CPS (including its subcontractors, for whom it was responsible) owed a duty to Defendants, as owner(s), to exercise reasonable care when performing services on the site, and particularly when working with welding and other equipment in proximity to flammable materials. CPS had a duty to perform its work skillfully, carefully, diligently and in a workmanlike manner.

27. CPS was responsible for the acts and omissions of its subcontractor in connection with services or duties performed on the Project. CPS therefore had a duty to supervise Zampell's work and other conduct on the job site.

28. CPS breached its aforementioned duties to Defendants in connection with the fire that occurred on December 2, 2004, which was proximately caused by the acts or omissions of parties outside their control, including CPS and/or Zampell.

29. As a direct and proximate result of the aforementioned negligence of CPS and/or its agents or subcontractors, Defendants have sustained substantial pecuniary harm, as set forth above. Also, the damage caused by the fire extended beyond the work performed by CPS and included damage to other property owned by Defendants.

WHEREFORE, Defendants and Counterclaim Plaintiffs request a Judgment in their favor, and against CPS, and request the following relief:

(a.) Any and all amounts due and owing to Defendants for any and all losses or damages sustained by Defendants arising out of the claims asserted above;

(b.) Any other compensatory damages due Defendants under the circumstances present;

(c.) Liquidated damages, as set forth above;

(d.) Defendants' costs of suit;

(e.) Prejudgment interest;

(f.) Reasonable attorneys' fees; and

(g.) Any other relief the Court deems equitable and just.

RHODE ISLAND STATE ENERGY
STATUTORY TRUST 2000, FPLE
RHODE ISLAND STATE ENERGY, L.P.
and FPLE RHODE ISLAND STATE
ENERGY GP, INC.

By their Attorneys,

Mark W. Freel (#4003)
Armando E. Batastini (#6016)
EDWARDS & ANGELL, LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611 (Fax)

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on the 11th day of April 2005, I caused a true copy of the within Defendants' Answer, Affirmative Defenses and Counterclaim to be delivered by hand to the following counsel of record:

Girard R. Visconti
VISCONTI & BOREN LTD.
55 Dorrance Street
Providence, RI 02903

FILED



PRV_720710_2/MFREEL