**EXHIBIT A**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

CERTIFIED POWER SYSTEMS, INC.,
Plaintiff,

v.

RHODE ISLAND STATE ENERGY STATUTORY TRUST 2000, FPLE RHODE ISLAND STATE ENERGY, L.P. and FPLE RHODE ISLAND STATE ENERGY GP, INC.,
Defendants,

**C.A. No. 05-066-ML**

v.

CERTIFIED POWER SYSTEMS, INC.,
Defendant on Counterclaim/
Third-Party Plaintiff,

v.

ZAMPELL REFRACTORIES, INC.,
Third-Party Defendant.

**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS PROPOUNDED ON DEFENDANT, ZAMPELL REFRACTORIES, INC.**

Please take notice that, in accordance with Rule 34 of the Federal Rules of Civil Procedure, Plaintiff, Defendant on the Counterclaim and Third-Party Plaintiff, **CERTIFIED POWER SYSTEMS, INC.** (hereinafter "CPS"), hereby requests that Third-Party Defendant/Counterclaimant, **ZAMPELL REFRACTORIES, INC.** ( "Defendant"), produce for inspection and copying all of the documents described below in its possession, custody or control, within thirty (30) days of the date of service hereof.

## DEFINITIONS

1. "Communicate" or "communication" means and includes every manner or means of transfer, exchange, or disclosure of information, fact, idea, or inquiry, whether orally, by document, or electronically, and whether face-to-face, by telephone, mail, e-mail, telecopier, personal delivery, or otherwise.

2. "Documents" includes all written material or other tangible medium of reproduction of every kind or description, however produced or reproduced, including, without limitation, correspondence, memoranda, notes, recordings, letters, charges, accountings, graphs, charts, balance sheets, profit and loss statements, summaries, records of oral conversations, diaries, calendars, logs, analyses, projections, work papers, tape recordings, films, video tapes, plans, minutes or records of meetings, minutes or records of conferences, lists of persons attending meetings or conferences, reports and/or summaries of investigations, opinions or reports of consultants, evaluations, records, contracts, agreements, preliminary drafts, and includes e-mails, computer reports, programs, discs and communications, however denominated by whomever prepared, to whomever addressed, and any other writing, graphic representation or memorialization that are in possession of the respondent as defined herein. Further, "documents" includes any copies of documents that are not identical duplicates or originals, including, but not limited to, all drafts of whatever date prepared prior to the completion of the final version and copies with typed or handwritten notations.

3. "Documents" also includes any electronically stored data on magnetic or optical storage media as an "active" file or files (readily readable by one or more computer application software or forensics software); any "deleted" but recoverable electronic files on

such media; any electronic file fragments (files that have been deleted and partially overwritten with new data); and slack (data fragments stored randomly from Random Access Memory on a hard drive during the normal operation of a computer [RAM slack] or residual data left on the hard drive after new data has overwritten some but not all of previously stored data). "Documents" also includes each and every file folder or other material in which the above items are stored, filed, or maintained, including computer or other electronic storage.

4. "Application Software" refers to a set of electronic instructions, also known as a program, which instructs a computer to perform a specific set of processes.

5. "Archive" means a copy of data on a computer drive, or on a portion of a drive, maintained for historical reference.

6. "Backup" means a copy of active data, intended for use in restoration of data lost to catastrophic failure of a system memory.

7. "Computer" includes but is not limited to network servers, desktops, laptops, notebook computers, employees' home computers, mainframes, PDAs (Personal Digital Assistants such as Blackberry, PalmPilot, Cassiopeia, HP Jornada and other such handheld computing devices), digital cell phones, and pagers.

8. "Data" means any--and all information stored on media that may be accessed by a computer.

9. "Third-Party Defendant/Counterclaimant" means ZAMPELL REFRACTORIES, INC. ("Defendant").

10. "Plaintiff/Defendant on the Counterclaim/Third-Party Plaintiff" refers to CERTIFIED POWER SYSTEMS, INC.

11. "Hard Drive" means the primary hardware that a computer uses to store information, typically magnetized media on rotating disks.

12. "Magnetic or optical storage media" include but are not limited to hard drives (also known as "hard disks"), backup tapes, CD-ROMs, DVD-ROMs, JAZ and Zip drives, and floppy disks, all used singly or in combination in, or in conjunction with, your computers and any and all backup and archive systems for your computers.

13. "Network" means a group of connected computers that allow people to share information and equipment (e.g., local area network (LAN), wide area network (WAN), metropolitan area network (MAN), storage area network (SAN), peer-to-peer network, client-server network).

14. "Occurrence" when used in these Interrogatories shall mean the fire that occurred at the "Project" on or about December 3, 2004, which is the subject of the Complaint and counterclaim in this matter.

15. "Operating System" means software that directs the overall activity of a computer (e.g., MS-DOS, Windows, Linux).

16. "Network Operating System" means software that directs the overall activity of networked computers.

17. "Person" means natural persons or any partnership, joint venture, association, corporation, or any other legal entity.

18. "Project" when used in these Interrogatories shall mean the Rhode Island State Energy Center site at 24 Shun Pike Road in Johnston, Rhode Island and the work to be performed by plaintiff for defendants at the site in accordance with a September 1, 2004 Contract

between plaintiff and defendants which is the subject of the Complaint and counterclaim in this matter.

19. "Relevant Period" means the time period encompassing January 1, 2002 through the present time.

20. "Software" means any set of instructions stored on computer-readable media that tells a computer what to do. "Software" includes operating systems and applications.

21. "Storage Devices" means any device that a computer uses to store information.

22. "Storage Media" means any removable device that stores data.

23. "Refer" or "relate" means to have a logical or causal relationship to, to make a statement about, discuss, describe, show, reflect, concern, identify, constitute, consist of, or pertain to, in whole or in part, the subject.

24. "Third-party defendant" means Zampell Refractories, Inc.

25. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

26. The singular form of a word is to be interpreted as including the plural (and vice versa), where the context so dictates.

GENERAL INSTRUCTIONS

1. If you object to any portion or aspect of the request, produce all documents responsive to the remainder. If any requested document cannot be produced in full, produce it to the extent possible; indicating which portion of the document is being withheld.

2. In producing documents and other materials, you are requested to furnish all documents or things in your possession, custody or control, without regard to their location,

regardless of whether such documents or materials are possessed physical directly by you or your directors, officers, agents, employees, accountants, representatives, subsidiaries, managing agents, affiliates, investigators, or by your attorneys or their agents, employers, representatives or investigators. To the extent that documents requested below are not produced because they are not in your possession, custody or control, disclose all information known to you that may lead to the discovery of such documents.

3. All documents should be produced in the file folder, envelope or other container in which the documents are kept or maintained by you in the ordinary course of your business. If the container cannot be produced, produce copies of all labels or other identifying marks.

4. You should produce the original of each document requested together with all non-identical copies and drafts of that document. If the original of a document cannot be located, a copy should be produced in lieu thereof, and should be legible and bound or stapled in the same manner as the original.

5. Documents not otherwise responsive to this document request should be produced if such documents mention, discuss, refer to or explain one or more documents that are called for by these document requests, or if such documents are attached to documents called for by these document requests and constitute routing slips, transmittal memoranda or letters, comments, evaluations or similar materials.

6. Documents attached to each other should not be separated.

7. If any documents requested herein have been lost, discarded, destroyed, or are otherwise no longer in your possession, custody or control, they shall be identified as completely as possible including, without limitation, the following information: date of

disposal, manner of disposal, reason for disposal, person authorizing the disposal, and person disposing of the document.

8. If any document requested is withheld based on a claim of privilege, please provide a statement of the claim of privilege and all facts relied on in support of the claim, including:

a. The date and nature of the document;

b. The author(s) and recipient(s) of the document and their employers and job titles at the time;

c. The subject matter of the document:

d. The request(s) herein to which the document is responsive; and

e. The present location of the document.

*Notwithstanding the assertion of an objection on the grounds of privilege, any purportedly privileged document containing nonprivileged matter must be disclosed, with the purportedly privileged portion excised.*

9. If any document requested herein is withheld based on a claim that such document constitutes attorney work product, please provide all of the information described in Instruction No. 8 above and also identify the litigation in connection with which such information was obtained or prepared.

10. All documents, information, or data responsive to these requests currently existing in machine-readable form, including any spreadsheet files, should be provided in the original format, unless that format requires specialized or proprietary hardware or software. (Acceptable formats include Access or Excel for spreadsheets, dBASE for database files, and Corel WordPerfect 8.0 and MSWord 2000 or 9.0 for word processing files. If the original format is not listed above, the data should be converted to one of the acceptable formats, if possible.) Electronic mail messages should be provided in their original electronic form, even

if only available on backup or archive tapes or disks. Data files should be in sequential format also known as ASCII files or flat files, with the data fields in fixed-column positions. For each database file provided, the following information is needed: a record layout, a short narrative description of what the file contains, translation of any coded fields, the number of records in the file, and a printout of the first 100 records in report format. A record layout must contain the following pieces of information: name of the field, description of the field, starting and ending position of the field, length of the field, starting and ending position of the record, length of the file, and characteristics of the field (i.e., packed decimal, zoned decimal, alphanumeric, etc.).

Electronic data should be produced as printouts (if they exist) and on 3-1/2" PC diskettes, CD-ROM, or zip disks (which can be in ASCII format). For PC files that are too large for one diskette, MSBACKUP diskettes will be acceptable as long as they are accompanied by backup listings. Backup listings may be hard copy or ASCII files on non-backup diskettes. A backup listing must provide the path name necessary to individually restore each file on the backup diskette. Compression utilities are acceptable as long as the utility is provided and does not violate any licensing or copyright laws. The delivery of documents by respondent to its lawyers does not relieve respondent from its obligations to produce such documents. For all responsive data produced in computer-usable form, specify the software used (including version and release date), the configuration of computer hardware, the operating system (including the name, version and release date), and any passwords or user-created files needed to examine the information on the diskettes.

11. To the extent required by agreement of the parties, production shall be timely supplemented whenever documents become available that are responsive to these requests

but have been not previously produced. These Document Requests are a continuing demand for any and all responsive documents and things. Therefore, any such documents and things discovered by you after the date hereof shall be produced at the time they are discovered. This paragraph shall not be construed to alter your obligations to comply with all other instructions herein

12. Except as otherwise indicated, this document request relates to the period encompassing January 1, 2002 through the present ("Relevant Period"); and documents to be produced are all requested documents that either concern, or were created before, during, or after, the January 1, 2002 up to the present time.

DOCUMENTS REQUESTED

1. All reports and current curriculum vitae of all experts whom you intend to use at trial, including all drafts of all reports.

2. All documents, correspondence, memoranda, pleadings, discovery, records, reports, industry or government standards, treatises, textbooks, authorities, and any and all written or graphic material submitted to, relied upon or reviewed by any and all experts in forming his/her opinion in this case.

3. All records, invoices, bills, cancelled checks and any other documents which verify, dispute, quantify, describe or in any way relate to the damages claimed by defendants in their counterclaim in this case.

4. All police, fire or other municipal, county, state or federal investigative and/or administrative reports pertaining to the fire which is the subject of the counterclaim.

5. All statements obtained from plaintiff, its agents, servants or employees regarding any allegation stated in the pleadings.

6. Copies of all documents evidencing the make, model and serial number of the welding apparatus that was being used by Bruce Crossman on December 3, 2004 and copies of all instructional and/or safety material provided when the welding apparatus was purchased and/or acquired.

7. All standards, industry standards, statutes, ordinances, codes, rules, regulations, texts, treatises, or any other written or published material which you claim either were violated by CPS or are evidence of negligence, breach of contract or liability on the part of CPS.

8. All standards, industry standards, statutes, ordinances, codes, rules, regulations or any other published material which you claim either were violated by Rhode Island State Energy Statutory Trust 2000, FPLE Rhode Island State Energy, L.P. and FPLE Rhode Island State Energy GP, Inc. (collectively "FPLE") or are evidence of negligence or liability on the part of FPLE.

9. All written communications between and among all parties to this lawsuit pertaining to flammable material contained within the air inlet plenum structures, welding procedures, hot work permits and the operations manual for the intake air filter system prepared by the manufacturer.

10. All written communications between and among all parties to this lawsuit pertaining to the cause, origin or responsibility for the Occurrence.

11. Full and complete copy of all insurance policies in effect on December 3, 2004 providing first party or other insurance coverage to Zampell for the damages claimed as a result of the Occurrence, including all endorsements, together with a summary of all benefits paid to date and all documents reflecting communications with any insurers.

12. Copies of all daily reports, logs, diaries relative to any job meeting and/or discussion pertaining to hot work permits for welding, the operations manual for the intake air filter system, welding procedures to be utilized for the insulation material or flammable materials contained within the air inlet plenum structure.

13. All incident and investigative reports prepared by FPLE pertaining to the Occurrence.

14. All incident and investigative reports prepared by Zampell pertaining to the December 3, 2004 fire.

15. All documents which reflect the identities of Zampell's employees or any other person who had or claims to have had discussions with CPS or any of the Defendants/Counterclaimants prior to the Occurrence on December 3, 2004 concerning the existence of air filters and/or evaporative cooling media on the inside of the air inlet plenum.

16. All documents in Zampell's possession, custody or control in any way arising out of, or relating to the cause of the fire that occurred on December 3, 2004.

17. All documents in Zampell's possession, custody or control in any way arising out of or relating to any contractor or subcontractor deviating from the plans and specifications on the Project as it pertained to installing insulation at CT-101 or CT-102 and the welding operations to be performed on the air inlet plenum relative to the attachment of iron brackets.

18. All documents which set forth, refer to or in any way memorialize your document retention policy during the Relevant Period.

19. All documents which set forth, refer to or in any way memorialize the spoliation of any documents, things or tangible objects during the Relevant Period that potentially would have become evidence in this lawsuit.

20. All documents which set forth, refer to or in any way memorialize your storage of data by the users of your computers (such as word processing files and e-mail) and any and all backup systems, including all related hardware and software, during the Relevant Period.

21. All documents which set forth, refer to or in any way memorialize the identity of all personnel responsible for maintaining computer hardware, data storage, or information systems on your computers, during the Relevant Period.

22. All documents which set forth, relate to or in any way memorialize the identity of the persons who maintain or with whom you have contracts to maintain inventory of data resources such as a Disaster Recovery Plan or a plan addressing the recover of deleted electronic data during, the Relevant Period.

23. Copies of all documents in Zampell's possession that indicate whether the electrical pumps were on and operational on CT-101 when the fire occurred on December 3, 2004.

24. Copies of all documents in Zampell's possession that would indicate whether air was flowing through CT-102 in October or November of 2004 when Zampell performed its welding work and attached the iron brackets to the insulation on CT-102.

25. Copies of all documents in Zampell's possession that would reveal whether air was flowing through CT-101 when the welding work was performed by Zampell on December 3, 2004.

26. Copies of all documents in Zampell's possession that would indicate whether the circuit breaker for CT-101 was on or off at the time the fire occurred on December 3, 2004.

27. Copies of all written documents relative to any instructions to employees relative to the issuance of hot work permits prior to December 3, 2004.

28. Copies of all letters between CPS and Zampell regarding the progress of its work under the contract and/or lack of work force.

29. Copies of all incident reports obtained from any employee of Zampell who was working on December 3, 2004, that was taken within seven (7) days of the fire occurring on December 3, 2004.

30. Copies of all documents in Zampell's possession that would indicate whether an alarm went off or not when the fire occurred on December 3, 2004, which would have registered a high temperature emanating from CT-101.

31. Copies of all letters or written communication by and between CPS, Zampell, FPLE and the engineer on the Project relative to flammable material contained within the air inlet plenum structures, welding procedures, hot work permits and the operations manual for the intake air filter system prepared by the manufacturer.

32. Copies of all documents relative to discussions that occurred during pre-bid meetings between any of the parties to this law suit relative to flammable material within the air inlet structures, welding procedures to be utilized when installing the insulation on the air inlet plenum and any discussion relative to whether the air inlet structures contained evaporative cooling media.

33. Copies of the daily log reports prepared by Zampell from October through December 3, 2004 relative to this project.

34. Copies of all certificates evidencing that the individuals welding on December 3, 2004 were properly certified and/or licensed to perform welding work in the State of Rhode

Island and copies of all State and or Federal certificates evidencing that the welding apparatus and/or equipment was properly certified in accordance with industry standards.

35. Copies of all training certifications and/or licenses held by Bruce Crossman.

36. Copies of all Zampell's welding procedures for stainless steel and carbon steel that were in effect that were in effect in 2004.

37. Copies of Zampell's quality control manual that was in effect on December 3, 2004.

38. Copies of Zampell's safety policies in effect on December 3, 2004.

39. Copies of Zampell's minutes of all safety meetings that took place regarding the project.

CERTIFIED POWER SYSTEMS, INC.
By their Attorneys,

Girard R. Visconti, Esq. (#0566)
Jessica L. Papazian-Ross, Esq. (#3905)
***Visconti & Boren Ltd.***
55 Dorrance Street
Providence, RI 02903
Tel. No. (401) 331-3800
Fax No. (401) 421-9302

***Pro hac vice counsel***
Mark Robert Vespole
***Tressler, Soderstrom, Maloney & Priess***
Attorneys for CERTIFIED POWER SYSTEMS, INC., Defendant on Counterclaim/Third-Party Plaintiff

**CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that a copy of the foregoing has been furnished by U.S. Mail, postage prepaid, this 25 day of July, 2005 to:

John R. Mahoney, Esq.
Asquith & Mahoney, LLP
155 South Main Street
Providence, RI 02903

Joseph J. Reale, Jr., Esq.
30 Kennedy Plaza, Suite 400
Providence, RI 02903

Mark W. Freel, Esq.
Edwards & Angell LLP
2800 Financial Plaza
Providence, RI 02903