**EXHIBIT B**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

CERTIFIED POWER SYSTEMS, INC.,

Plaintiff,

v.

RHODE ISLAND STATE ENERGY STATUTORY TRUST 2000, FPLE RHODE ISLAND STATE ENERGY, L.P. and FPLE RHODE ISLAND STATE ENERGY GP, INC.,

Defendants,

v.

CERTIFIED POWER SYSTEMS, INC.,

Defendant on Counterclaim/
Third-Party Plaintiff,

v.

ZAMPELL REFRACTORIES, INC.,

Third-Party Defendant

**C.A. No. 05-066-ML**

**PLAINTIFF'S FIRST SET OF INTERROGATORIES PROPOUNDED ON THIRD PARTY DEFENDANT, ZAMPELL REFRACTORIES, INC.**

Please take notice that, in accordance with Rule 33 of the Federal Rules of Civil Procedure, Plaintiff, Defendant on the Counterclaim and Third-Party Plaintiff, **CERTIFIED POWER SYSTEMS, INC.** (hereinafter "CPS"), hereby requests that Third Party Defendant, **ZAMPELL REFRACTORIES, INC.** ("Zampell"), answer the following interrogatories, in writing and under oath, within thirty (30) days of the date of service hereof.

INSTRUCTIONS AND DEFINITIONS

1. Please provide sworn answers to these Interrogatories in the manner provided by Rule 33(b) of the Federal Rules of Civil Procedure. In responding to the interrogatories, you are to review and search all relevant files of appropriate entities and persons

2. If you object to any Interrogatory on the basis of a claim of privilege, answer the Interrogatory with such non-privileged information as is responsive, identify the nature of the information withheld as privileged, and specify the basis for the claim of privilege, including the source of the information, those privy to it, and the dates on which it was acquired.

3. These Interrogatories are continuing in nature, and require supplemental answers if you obtain further information between the time you serve answers and the time of the close of the discovery period in this matter. You shall serve supplemental answers promptly after receiving such further information.

4. As used in these Interrogatories, plural references include singular and singular references include plural. The terms "and" and "or" shall be construed disjunctively or conjunctively to make the request inclusive rather than exclusive.

5. As used in these Interrogatories, "person" means both individuals and entities.

6. "Third Party Defendant," "your," or "you" means Third Party Defendant, ZAMPELL REFRACTORIES INC., their predecessors, successors, subsidiaries, units, divisions, affiliates, joint ventures, parents, officers, directors, agents, employees and/or independent contractors (including without limitation, its attorneys, accountants, bankers, advisors, public relations firms, advertising firms, and marketing firms), and all persons acting or purporting to act on behalf of Third Party Defendant.

7. "Plaintiff/Defendant or the Counterclaim/Third-Party Plaintiff" refers to CERTIFIED POWER SYSTEMS, INC.

8. "Identify" means:

a) when used with reference to natural persons, to state the full name, employer, position, duties, and present or last known business address (including the position with which he or she was affiliated during the time period covered by the Interrogatory);

b) when used with reference to an organization, proprietorship, firm, corporation, association, or governmental agency or office, to state its name, legal status, the address and telephone number of its principal place of business, and the name title, and telephone number of the officer, employee, or agent most knowledgeable concerning the subject matter of the Interrogatory; and

c) when used with reference to a document, to state the author, date, signor(s), addressee(s), and recipients(s) of the document, as well as its present or last known location and custodian.

9. "Communicate" or "communication" means and includes every manner or means of transfer, exchange, or disclosure of information, fact, idea, or inquiry, whether orally, by document, or electronically, and whether face-to-face, by telephone, mail, email, telecopier, personal delivery, or otherwise.

10. "Documents" includes all written material or other tangible medium of reproduction of every kind or description, however produced or reproduced, including, without limitation, correspondence, memoranda, notes, recordings, letters, charges, graphs, charts, accountings, balance sheets, profit and loss statements, summaries, records of oral conversations, diaries, calendars, logs, analyses, projections, work papers, tape recordings, films, video tapes, plans, minutes or records of meetings, minutes or records of conferences, lists of persons attending meetings or conferences, reports and/or summaries of investigations, opinions or reports of consultants, evaluations, records, contracts, agreements, preliminary drafts, and

includes e-mails, computer reports, programs, discs and communications, however denominated by whomever prepared, to whomever addressed, and any other writing, graphic representation or memorialization that are in possession of the respondent as defined herein. Further, "documents" includes any copies of documents that are not identical duplicates or originals, including, but not limited to, all drafts of whatever date and copies with typed or handwritten notations.

"Documents" also includes any electronically stored data on magnetic or optical storage media as an "active" file or files (readily readable by one or more computer application software or forensics software); any "deleted" but recoverable electronic files on such media; any electronic file fragments (files that have been deleted and partially overwritten with new data); and slack (data fragments stored randomly from Random Access Memory on a hard drive during the normal operation of a computer [RAM slack] or residual data left on the hard drive after new data has overwritten some but not all of previously stored data). "Documents" also includes each and every file folder or other material in which the above items are stored, filed, or maintained, including computer or other electronic storage.

11. CPS incorporates herein by reference all definitions and instructions set forth in its First Request for Production of Documents to Third Party Defendant, ZAMPELL REFRACTORIES, INC.

12. "Occurrence" when used in these Interrogatories shall mean the fire that occurred at the "Project" on or about December 3, 2004, which is the subject of the Complaint and counterclaim in this matter.

13. "Project" when used in these Interrogatories shall mean the Rhode Island State Energy Center site at 24 Shun Pike Road in Johnston, Rhode Island and the work to be performed by plaintiff for defendants at the site in accordance with a September 1, 2004 Contract

between plaintiff and defendants which is the subject of the Complaint and counterclaim in this matter.

14. Except as otherwise indicated, these interrogatories relate to the period encompassing January 1, 2002 through the present ("Relevant Period").

INTERROGATORIES

1. State the name, address and job title of the person answering these interrogatories on behalf of Zampell, the number of years worked for Zampell and the names and positions of all individuals who provided information used in the preparation of these answers, indicating for each individual the answer for which he or she provided information.

2. State the name and address of each person who witnessed any allegation alleged in the pleadings and/or who has personal knowledge regarding any allegation alleged in the pleadings who is known to you, your attorney or any person acting on your behalf and if such person is related to you by blood or marriage who is known to you prior to the subject incident, please specify the person and their relationship.

3. State in full and complete detail your version of how the Occurrence that is the subject of the complaint and counterclaim occurred, including the date, time, exact location, cause and origin.

4. If you have retained an expert witness who will testify at trial, please state the following:

a. The name, business address, employer of each such expert, together with the title of his or her profession or specialty;
b. The educational background or qualifications of each such expert or specialist;
c. Subject matter upon which such expert is expected to testify;
d. Substance of the facts and opinions for each such expert or specialist; and
e. A summary of the grounds for the opinions of each such expert or specialist.

5. State the length of time Bruce Crossman has been employed by Zampell and state all welding certifications and/or licenses held by Bruce Crossman and state whether Bruce Crossman has ever been disciplined and/or given a warning regarding his welding procedures and/or welding practices while employed at Zampell and if so describe the date, substance of the warning and/or discipline and what the outcome was relative to each incident.

6. Describe in detail what Bruce Crossman was welding on December 3, 2004 when the fire occurred and indicate the make, model and serial number of the welding apparatus he was using, the temperature setting on the welding apparatus, what was to be accomplished that day on the project and how long Bruce Crossman had been working before the fire occurred.

7. Set forth all instructions given to employees at Zampell relative to non-structural welding as it pertains to the temperature setting to use for such welding, the type of welding apparatus to use and whether there should be any burn through marks resulting from the welding and for each such instruction state the date, the substance of the instruction, whether the instruction was verbal and/or in writing and the name of the person who has the most knowledge regarding the instruction.

8. State the name and address of the employees who performed welding work on CT-102 and indicate the date the welding work was performed, what was performed and state whether the circuit breaker for the pump's motor for CT-102 was on or off at the time the welding work was performed on CT-102 and indicate the basis for such knowledge.

9. State the name and addresses of those persons who have given you, your attorney or any person acting on your behalf, statements, reports or memoranda concerning any allegation alleged in the pleadings which have been reduced to writing, the date of each statement and the name and address of each person who took such statement and the name and address of the person who has possession of the statement.

10. Set forth whether or not you claim that the plaintiff CPS had notice of the condition or conditions which you claim caused the Occurrence which is set forth in the complaint and counterclaim. If so, please state in full and complete detail:

(a) A list of all conditions which you claim caused or contributed to the occurrence;
(b) All facts upon which you rely to establish that plaintiff CPS had notice of the conditions specified in answer to Interrogatory No. 10(a) above;
(c) All dates upon which plaintiff CPS received notice;
(d) The person or persons by whom notice was given;
(e) The manner in which notice was given;
(f) Please identify and annex copies of all letters, records, documents, memorandum, notes, correspondence, and any other writing that in anyway related to any notice given by defendant.

11. Set forth whether or not you claim that the defendants, Rhode Island State Energy Statutory Trust 2000, FPLE Rhode Island State Energy, L.P. and FPLE Rhode Island State Energy GP, Inc. (collectively "FPLE"), had notice of the condition or conditions which you claim caused the Occurrence which is set forth in the complaint and counterclaim. If so, please state in full and complete detail:

(a) A list of all conditions which you claim caused or contributed to the Occurrence;
(b) All facts upon which you rely to establish that defendants, FPLE, had notice of the conditions specified in answer to Interrogatory No. 11(a) above;
(c) All dates upon which defendants, FPLE, received notice;
(d) The person or persons by whom notice was given;
(e) The manner in which notice was given;
(f) Please identify and annex copies of all letters, records, documents, memorandum, notes, correspondence, and

12. Set for the each and every communication that occurred in any pre-bid meeting relative to the inlet air structure pertaining to any warnings regarding the flammability of materials during the welding process pertaining to air filters and evaporative cooling media and for each such communication, set forth the date of the communication, the substance of the communication and the name of each person who participated in the communication.

13. Please identify and describe in full and complete detail all communications between and among plaintiff, defendants and Zampell prior to the Occurrence regarding the existence of air filters or evaporation cooling media inside of the air inlet plenum and the fact they were flammable, including the time, date, place, the participants and substance of any such discussions, and identify and provide any and all supporting documents.

14. Set forth whether Zampell was aware of the operation and maintenance manual prepared by the manufacturer relative to the intake air filter system and if so state how Zampell came upon such knowledge, the date and whether Zampell was provided with a copy of the operation and maintenance manual and if so, state the date and state whether Zampell ever gave the manual to CPS and/or discussed the contents of the manual with CPS and if so describe in detail.

15. State the purpose behind the hot work permit that was issued for the welding operation performed on the inlet air structure, who was involved in issuing the hot work permit, what was discussed regarding flammable materials, what was discussed regarding evaporative cooling media, what was discussed regarding air filters and state whether the operation and maintenance manual for the intake air filter system was discussed and referred to when the hot work permit was issued for welding on either CT-101 or CT-102.

16. Set forth all conversations between Zampell and Sargent & Lundy relative to flammable material contained within the air inlet structure indicating the date of the communication, the substance of the communication and all parties involved in the communication.

17. State all conversations between defendants and Sargent & Lundy on the project relative to welding the iron brackets to the stainless steel plenum wall to hold the insulation in place versus any other method of installation such as by screwing the attachments to the structure, why welding was selected, who made the decision to weld the brackets to the structure and state whether Sargent & Lundy inquired as to whether there was any flammable material contained within the inlet air filter system when the method of attaching the insulation to the air inlet structure was being designed.

18. Set forth each and every fact upon which you claim CPS breached its contract with Zampell as alleged in the counterclaim as well as all facts supporting Zampell's claim for unjust enrichment.

19. State whether there has been any change in Zampell's welding policies, procedures and/or methods since the fire occurred on December 3, 2004 pertaining to the use of a welding apparatus to affix an iron or steel bracket to the outer sheeting to secure the insulation to the plenum structure and if so describe in detail the date and the substance of the change that was made and who authorized the change from Zampell.

20. State whether plaintiff deviated from the plans and specifications for this project regarding the insulation work on CT-101 and if so explain in detail and state whether the deviation resulted in the fire that occurred on December 3, 2004.

21. State whether there was any air and/or water flowing through the ducts in the air inlet plenum at CT-101 and CT-102 when the iron brackets were being installed on the stainless steel plenum walls of the structure and indicate the basis for such knowledge.

22. State how many bids Zampell submitted on this project, the price difference between Zampell's bids and whether Zampell selected the insulation that was going to be used on CT-101 and CT-102 and if so state the type of insulation selected, the flashpoint temperature of the insulation and state whether Sargent & Lundy approved of the insulation material and if so the date of such approval.

23. Set forth and itemize each claim for damages you are alleging in this law suit against CPS.

24. Prior to December 3, 2004 state whether Zampell had ever performed welding work on an inlet air plenum at a power plant that contained evaporative cooling media and if so state the date the work was performed, the name and address of the owner of the power plant and the name and address of the general contractor on the project.

25. Prior to December 3, 2004 state whether Zampell had ever performed any repair work on CT-101 and/or CT-102 at FPLE's power plant and if so state the date the work was performed, the type of work that was performed and the name of the employees who performed the work.

CERTIFIED POWER SYSTEMS, INC.
By their Attorneys,

Girard R. Visconti, Esq. (#0566)
Jessica L. Papazian-Ross, Esq. (#3905)
***Visconti & Boren Ltd.***
55 Dorrance Street
Providence, RI 02903
Tel. No. (401) 331-3800
Fax No. (401) 421-9302

***Pro hac vice counsel***
Mark Robert Vespole
***Tressler, Soderstrom, Maloney & Priess***
Attorneys for CERTIFIED POWER SYSTEMS, INC., Defendant on Counterclaim/Third-Party Plaintiff

# CERTIFICATION

The undersigned hereby certifies that a true copy of the within document was sent, via First Class Mail, postage pre-paid, on this 29th of July, 2005 to the following:

John R. Mahoney, Esq.
Asquith & Mahoney, LLP
155 South Main Street
Providence, RI 02903

Joseph J. Reale, Jr., Esq.
30 Kennedy Plaza, Suite 400
Providence, RI 02903

Mark W. Freel, Esq.
Edwards & Angell LLP
2800 Financial Plaza
Providence, RI 02903

Cheryl Hannad