UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CERTIFIED POWER SYSTEMS, INC. | : | |
| | : | |
| v. | : | |
| | : | |
| RHODE ISLAND STATE ENERGY STATUTORY TRUST 2000, FPLE RHODE ISLAND STATE ENERGY, L.P. and FPLE RHODE ISLAND STATE ENERGY GP, INC. | : | |
| | : | |
| v. | : | C.A. No. 05-066-ML |
| | : | |
| CERTIFIED POWER SYSTEMS, INC. | : | |
| | : | |
| v. | : | |
| | : | |
| ZAMPELL REFRACTORIES, INC. | : | |

**FPL DEFENDANTS' OBJECTION**
**TO PLAINTIFF CPS' MOTION TO SEVER FOURTH-PARTY COMPLAINTS**

Defendants Rhode Island State Energy Statutory Trust 2000, FPLE Rhode Island State Energy, L.P., and FPLE Rhode Island State Energy GP, Inc. (collectively, "FPLE") hereby object to Plaintiff Certified Power Systems, Inc.'s ("CPS") Motion to Sever Fourth-Party Complaints. In support thereof, and in support of FPLE's related motion for a protective order relative to the depositions of the Fourth-Party Defendants, FPLE has submitted a memorandum of law.

RHODE ISLAND STATE ENERGY STATUTORY TRUST 2000, FPLE RHODE ISLAND STATE ENERGY, L.P. and FPLE RHODE ISLAND STATE ENERGY GP, INC.

By their Attorneys,

Mark W. Freel (#4003)
Armando E. Batastini (#6016)
EDWARDS & ANGELL, LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611 (Fax)

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on the 23rd day of January 2005, I caused a true copy of the within Objection to Motion to Sever Fourth-Party Complaints to be served by telecopy and regular mail, postage prepaid, to the following counsel of record:

Girard R. Visconti, Esq.
Jessica L. Papazian-Ross, Esq.
Visconti & Boren Ltd.
55 Dorrance Street
Providence, RI 02903

Mark Robert Vespole, Esq.
Theresa E. Mullen, Esq.
Tressler, Soderstrom, Maloney & Priess
744 Broad Street, Suite 1510
Newark, NJ 07102

John R. Mahoney, Esq.
Asquith & Mahoney, LLP
155 South Main Street, 2nd Floor
Providence, RI 02903

Joseph J. Reale, Jr., Esq.
Joseph J. Reale, Jr., Ltd.
30 Kennedy Plaza, Suite 400
Providence, RI 02903

Warren D. Hutchison, Esq.
Donovan Hatem LLP
Two Seaport Lane
Boston, MA 02210

Marlene Jill

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CERTIFIED POWER SYSTEMS, INC. | : | |
| v. | : | |
| RHODE ISLAND STATE ENERGY STATUTORY TRUST 2000, FPLE RHODE ISLAND STATE ENERGY, L.P. and FPLE RHODE ISLAND STATE ENERGY GP, INC. | : | |
| v. | : | C.A. No. 05-066-ML |
| CERTIFIED POWER SYSTEMS, INC. | : | |
| v. | : | |
| ZAMPELL REFRACTORIES, INC. | : | |

**MEMORANDUM IN SUPPORT OF FPL DEFENDANTS' OBJECTION TO PLAINTIFF CPS' MOTION TO SEVER FOURTH-PARTY COMPLAINTS AND RELATED MOTION FOR PROTECTIVE ORDER**

Defendants Rhode Island State Energy Statutory Trust 2000, FPLE Rhode Island State Energy, L.P., and FPLE Rhode Island State Energy GP, Inc. (collectively, "FPLE") submit this memorandum in support of their objection to the motion to sever Fourth-Party Complaints submitted by Plaintiff Certified Power Systems, Inc. ("CPS"), and in further support of their related motion for a protective order concerning the depositions of the Fourth-Party Defendants.

**Background**

CPS, a general contractor with experience in the power plant industry, filed this lawsuit on or about February 18, 2005, seeking payment of approximately $2.1 million allegedly due and owing under the terms of a contract with FPLE. FPLE is the owner of a combustion turbine

power plant in Johnston, Rhode Island, known as the Rhode Island State Energy Center ("RISEC"). In the fall of 2004, CPS and FPLE entered into a contract (the "Contract") under which CPS agreed to perform construction services, including an upgrade of certain heating systems, and the installation of associated insulation, on the air intake system at the RISEC plant. The Contract was effective September 1, 2004. CPS subsequently subcontracted certain of its work, including the installation of insulation, to Third-Party Defendant Zampell Refractories, Inc. ("Zampell").

On December 3, 2004, while employees of Zampell were welding as part of the installation of insulation on the exterior surface of one of the air intake units at the RISEC plant, a fire started inside that unit. The fire caused substantial damage throughout that portion of the plant. An investigation by the Rhode Island State Fire Marshal resulted in a conclusion that the fire was most likely caused by Zampell's welding. Based upon the State Fire Marshal's report, and other expert investigation conducted by FPLE, it appears that certain flammable filter materials located on the inside of the air inlet unit were ignited when Zampell employees welded directly opposite those flammable materials on a stainless steel portion of the exterior surface of the structure. Accordingly, FPLE asserted a Counterclaim in this action, alleging, inter alia, that CPS was responsible for the acts and omissions of its subcontractor pursuant to the terms of the Contract between FPLE and CPS. CPS in turn brought a Third-Party Complaint against Zampell, which entered an appearance through counsel on May 13, 2005.

As of the time of the fire, the remaining contract balance due and payable by FPLE to CPS was approximately $2.2 million. FPLE ceased making any further payments at that time, but did engage CPS to perform certain services associated with an immediate repair. To that end, FPLE and CPS entered into a supplemental purchase order (the "Repair Contract") under which

FPLE agreed to pay CPS for repair services at the RISEC plant. Under the terms of that Repair Contract, FPLE agreed to pay CPS promptly, while also reserving any rights that it would have under the terms of the original Contract to hold CPS and/or its subcontractor responsible for damages caused by the fire. FPLE ultimately incurred damages of approximately $5.25 million for repairs necessitated by the fire, including approximately $2.3 million paid to CPS pursuant to the terms of the Repair Contract.[1] Because FPLE's damages far exceed the remaining unpaid balance under the terms of the original Contract, FPLE withheld payment of that amount and asserted its contractual right to a set-off.[2] Therefore, FPLE asserts and continues to believe that it is entitled to recovery of approximately $3.1 million over and above the approximately $2.1 million left unpaid on the original Contract, which FPLE has withheld from CPS pursuant to the set-off language.[3]

Under the terms of the original Contract, CPS was obligated to maintain certain insurance to cover its work at the RISEC plant. Although Zampell was not required to maintain any such insurance pursuant to the terms of any contract with CPS, it did maintain liability coverage. As a result of FPLE's Counterclaim against CPS, and CPS' resulting Third-Party Complaint against Zampell, both CPS and Zampell are being defended, in part, by insurance defense counsel in this litigation. FPLE, on the other hand, is self-insured for losses sustained on its properties. If FPLE

---

[1] A negligible balance in the amount of approximately $9,000 remains unpaid on the Repair Contract and is being held by FPLE pending the outcome of this litigation, particularly in light of pending contractual disputes between CPS and Zampell related to the Repair Contract.

[2] Pursuant to section 34.3 of the General Conditions incorporated in the original Contract between FPLE and CPS, "[FPLE] shall be entitled at all times to set-off any amount due from [CPS] or its affiliates to [FPLE] against any amount payable by [FPLE] to [CPS]."

[3] During the pendency of this litigation, and certain related mechanics liens actions in State Court, FPLE and CPS settled a claim by one "innocent" subcontractor in the amount of approximately $150,000. Pursuant to the terms of that settlement, FPLE made direct payment to that subcontractor in the aforementioned amount, and CPS agreed to accept a credit in that amount off its claim against FPLE. That reduced the remaining contract balance from the original Contract to its current amount of $2,185,186.20.

pursues a claim for its damages through its own self-insurance, FPLE will incur certain adverse economic consequences. Moreover, FPLE has no contractual obligation to make any such claims for damages caused by the acts and omissions of others. Therefore, FPLE has instead asserted its contractual right of set-off, and has insisted that CPS or Zampell, or their respective insurers, assume responsibility for any damages caused by the acts or omissions of those contractors, consistent with their contractual obligations.

On May 19, 2005, immediately following Zampell's first entry into the case, this Court issued its initial Pretrial Order, setting a discovery closure date of December 1, 2005. The parties also agreed to a voluntary mediation, and originally scheduled that mediation for a date in September 2005. Over the subsequent weeks, the parties propounded written discovery requests upon one another, and exchanged documents. The parties also exchanged initial export reports. The parties commenced depositions on November 7, 2005. In the meantime, following a chambers conference on October 3, 2005, the Court extended the discovery closure date by thirty (30) days, to December 31, 2005. The Court also postponed the mediation until a date in January 2006. Between November 7, 2005, and a conference call with the Court on January 4, 2006, the parties conducted approximately seven (7) full days of depositions of party witnesses.

On October 27, 2003, following some of the aforementioned discovery, counsel for Zampell filed a motion seeking leave to bring a Fourth-Party Complaint against Sargent & Lundy, L.L.C. ("S&L"), the architect and engineer that generated the job specifications and other design work for FPLE in connection with this job. That motion was granted by this Court on November 21, 2005, without objection from any party. The Fourth-Party Complaint against S&L was filed on or about December 8, 2005. Outside counsel for S&L filed its entry of appearance and an Answer on January 3, 2006.

In the meantime, presumably as a result of information obtained through further discovery, Zampell filed another motion for leave to assert yet another Fourth-Party Complaint on December 20, 2005. In this instance, Zampell sought leave to assert a claim against Premier Engineering Services, Inc. ("Premier"), an independent contractor that acted as FPLE's project manager with regard to the administration of the Contract between FPLE and CPS. This Court granted Zampell's motion to bring a second Fourth-Party Complaint during a conference call held on January 4, 2006. The new Fourth-Party Complaint has been filed, but, as of this writing, Premier has not yet entered an appearance through counsel. Since the conference call with this Court on January 4, 2006, the parties have held one additional deposition of a party witness,[4] and two additional depositions of FPLE witnesses are scheduled for January 24 and 26.

As a result of the conference call with this Court on January 4, 2006, the parties cancelled the mediation previously scheduled for January 24, and agreed to explore a new mediation date. To date, it has not been possible to agree upon a new date, or to select a new mediator. This Court also extended the discovery closure date for another forty-five (45) days, through and including February 14, 2006. Pretrial memoranda are currently due on or about March 14, 2006, with trial contemplated sometime thereafter.[5]

CPS has now filed the instant motion to sever the Fourth-Party Complaints against S&L and Premier pursuant to Fed.R.Civ.P 42(b). In large measure, CPS relies upon statements concerning its allegedly negative financial condition, and the status of its pending line of credit

---

[4] A second day of deposition testimony scheduled for January 6, 2006 was indefinitely postponed because an important FPLE witness, the General Manager of the RISEC plant in Johnston, RI, suffered a very serious injury that will make him unavailable as a witness in this case for at least another thirty (30) days, if not more.

[5] In the meantime, counsel for Zampell has filed a motion for court excuse in connection with a family vacation planned for March 9-March 21, 2006, and the undersigned counsel for FPLE has also filed a motion for court excuse in connection a family vacation scheduled for March 31 through April 10, 2006.

with lenders, in arguing that the claims pending between and among CPS, FPLE and Zampell must go forward to trial immediately, with Zampell's claims against S&L and Premier to be resolved separately, at some subsequent date. In an affidavit submitted in support of its motion to sever, CPS raises the specter that its lender could force CPS into bankruptcy under the terms of its existing loan agreements.

At the same time that CPS is making these arguments, however, it is also insisting that the parties cooperate in factual discovery of multiple witnesses from Fourth-Party Defendants S&L and Premier prior to the expiration of the current discovery closure date on February 14, 2006. In both instances, those depositions might have to occur out of state. CPS has unilaterally noticed depositions of three (3) S&L witnesses to occur on February 7-9, in Providence. Because S&L is located out of state (in Chicago), S&L may well demand that any such depositions occur where these witnesses normally reside or do business, pursuant to the Federal Rules of Civil Procedure. The undersigned counsel for FPLE respectfully submits that it will be extremely difficult, if not impossible, to complete any and all pending discovery, including the depositions of experts and of witnesses associated with the Fourth-Party Defendants, prior to February 14, 2006, and that CPS has not asserted adequate grounds to rush this case forward to a trial in March or April of 2006, given the complexity and nature of this dispute among multiple parties.[6] At a minimum, CPS cannot "have it both ways," by seeking to sever the Fourth-Party Complaints while also seeking to conduct full discovery of those parties on such an expedited basis.

FPLE also respectfully submits that CPS' current financial situation is not solely attributable to FPLE, and presumably results from a variety of other factors for which the parties

[6] CPS has also noticed depositions of additional FPLE witnesses, bringing the total of FPLE witnesses from whom it is seeking testimony to at least six (6).

in this litigation are not responsible. In fact, since January 1, 2004, FPLE has paid CPS a total of approximately $6 million under the terms of the several contracts between FPLE and CPS, including this Contract and the Repair Contract. (See Affidavit of Ron Reagan ("Reagan Aff."), attached hereto as Exhibit A, at ¶ 6.) That includes over $1 million paid to CPS during the latter half of 2005 for other, unrelated work, and approximately $2.3 million paid to CPS for the repair work at the plant. (See Reagan Aff. at ¶¶ 3-5.) Thus, FPLE has certainly made substantial payments to CPS for other work performed during that timeframe, including payments made to CPS in good faith even after the subject fire. In connection with the $2.1 million currently held by FPLE on the original Contract, FPLE has simply asserted its clear contractual right of set-off until such time as any issues related to responsibility for the fire are fully addressed.

For the foregoing reasons, and for reasons set forth below, FPLE objects to the instant motion to sever, and instead urges this Court to schedule this case for trial on a date in the near future when the claims against Fourth-Party Defendants S&L and Premier can be simultaneously adjudicated, and after all necessary discovery, including the depositions of experts and of the Fourth-Party Defendants.

## Discussion

Pursuant to Fed.R.Civ.P. 42(b), this Court should only sever or separate the Fourth-Party Complaints "in furtherance of convenience" or "when separate trials will be conducive to expedition and economy." Neither of those purposes would be served by the severance sought by CPS in this instance. Rather, severing the Fourth-Party Complaints against S&L and Premier will only result in unnecessary duplication of effort, and could prejudice FPLE, among others, in connection with any effort to go forward with a trial on limited facts and claims sooner than is reasonably necessary.

In depositions and discovery over recent weeks, including as recently as a deposition held just last week, certain critical factual issues have arisen, including factual issues that necessarily involve or implicate the acts or omissions of the Fourth-Party Defendants. There are factual issues concerning the import or application of the job specifications promulgated for this job by S&L, and issues concerning the manner in which those job specifications were communicated, if at all, by CPS to Zampell. There are also factual issues concerning the manner in which Zampell conducted and performed its welding, relative to the job specifications, and the manner in which Zampell proposed to attach insulation to the exterior of the air intake units. All of these issues, and many others, must be addressed in additional discovery, including depositions of witnesses from S&L and Premier, as well as the multiple expert witnesses retained by the existing parties. Before depositions of S&L or Premier can go forward, the parties must obtain documents from those parties. As of this date, no one has received any such documents.

Despite the foregoing, CPS insists that this case must go forward to trial in March of this year,[7] and purports to tie up counsel on numerous dates between now and February 14 conducting a flurry of eleventh-hour depositions, including depositions of all experts retained by the parties, multiple depositions of S&L, multiple depositions of FPLE witnesses, and presumably even depositions of Premier, which has not yet even entered an appearance in the case. As noted above, CPS cannot "have it both ways," asking this Court to sever the Fourth-Party Complaints, while still reserving the right to conduct full discovery of those Fourth-Party Defendants. Among other things, this could subject those parties, and others, to multiple depositions on the reasonable assumption that S&L and/or Premier ultimately produce

---

[7] Given that this Court has now set a deadline for the submission of pretrial memoranda of March 14, and given certain other scheduling realities discussed in the conference call with this Court on January 4, it now appears that trial is not likely to occur any sooner than April, presumably after April 10.

documents or provide additional discovery responses at a later stage of a severed case. This simply does not make sense, and is certainly not "in furtherance of convenience" or "conducive to expedition and economy," consistent with the standards of Rule 42(b). See, e.g., Franchi Construction Co., Inc. v. Combined Ins. Co. of America, 580 F.2d 1 (1978).[8]

**Conclusion**

Accordingly, FPLE requests that this Court grant the following relief:

(a) Deny CPS' motion to sever, and issue a new Pretrial Order setting reasonable dates by which all parties, including the Fourth-Party Defendants, can complete factual and expert discovery and conduct a trial on all claims, involving all parties, simultaneously; and/or

(b) Issue a Protective Order precluding CPS from conducting any depositions of witnesses from Fourth-Party Defendants S&L and/or Premier prior to the current discovery closure date of February 14, 2005.

RHODE ISLAND STATE ENERGY
STATUTORY TRUST 2000, FPLE
RHODE ISLAND STATE ENERGY, L.P.
and FPLE RHODE ISLAND STATE
ENERGY GP, INC.

By their Attorneys,

Mark W. Freel (#4003)
Armando E. Batastini (#6016)
EDWARDS & ANGELL, LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611 (Fax)

---

[8] FPLE also incorporates by reference the arguments made by Zampell in its objection to CPS' motion to sever.

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on the 23rd day of January 2005, I caused a true copy of the within Memorandum in Support of Objection to Motion to Sever Fourth-Party Complaints to be served by telecopy and regular mail, postage prepaid, to the following counsel of record:

Girard R. Visconti, Esq.
Jessica L. Papazian-Ross, Esq.
Visconti & Boren Ltd.
55 Dorrance Street
Providence, RI 02903

Mark Robert Vespole, Esq.
Theresa E. Mullen, Esq.
Tressler, Soderstrom, Maloney & Priess
744 Broad Street, Suite 1510
Newark, NJ 07102

John R. Mahoney, Esq.
Asquith & Mahoney, LLP
155 South Main Street, 2nd Floor
Providence, RI 02903

Joseph J. Reale, Jr., Esq.
Joseph J. Reale, Jr., Ltd.
30 Kennedy Plaza, Suite 400
Providence, RI 02903

Warren D. Hutchison, Esq.
Donovan Hatem LLP
Two Seaport Lane
Boston, MA 02210