UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CERTIFIED POWER SYSTEMS, INC.,<br>Plaintiff,<br><br>vs.<br><br>RHODE ISLAND STATE ENERGY STATUTORY TRUST 2000, FPLE RHODE ISLAND STATE ENERGY, L.P. and FPLE RHODE ISLAND STATE ENERGY GP, INC.,<br>Defendants,<br><br>vs.<br><br>CERTIFIED POWER SYSTEMS, INC.,<br>Defendant on Counterclaim/<br>Third-Party Plaintiff,<br><br>vs.<br><br>ZAMPELL REFRACTORIES, INC.,<br>Third-Party Defendant,<br><br>vs.<br><br>SARGENT & LUNDY, LLC and PREMIER ENGINEERING SERVICES, INC.,<br>Fourth-Party Defendants. | : | C.A. No. 05-066-ML |

**RISE DEFENDANTS' MOTION IN LIMINE PRECLUDING THE ADMISSION OF EXTRINSIC EVIDENCE SEEKING TO VARY PLAINTIFF'S CONTRACTUAL OBLIGATIONS**

Defendants Rhode Island State Energy Statutory Trust 2000, FPLE Rhode Island State Energy, L.P. and FPLE Rhode Island State Energy GP, Inc. (collectively, "RISE") submit this motion in limine to preclude the admission of any evidence by any party at trial concerning industry standards, or other codes or regulations, that are inconsistent with the clear and

unambiguous terms of the parties' contract. In support hereof, RISE submits the accompanying memorandum of law.

RHODE ISLAND STATE ENERGY
STATUTORY TRUST 2000, FPLE
RHODE ISLAND STATE ENERGY, L.P. and
FPLE RHODE ISLAND STATE ENERGY GP,
INC.

By their Attorneys,

/s/ Mark W. Freel

Mark W. Freel (#4003)
Armando E. Batastini (#6016)
EDWARDS ANGELL PALMER & DODGE LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611 (fax)

**CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of August, 2006, I caused a true copy of the foregoing to be served on the following counsel of record:

Girard R. Visconti, Esq.
Jessica L. Papazian-Ross, Esq.
Visconti & Boren Ltd.
55 Dorrance Street
Providence, RI 02903

Mark Robert Vespole, Esq.
Theresa E. Mullen, Esq.
Tressler, Soderstrom, Maloney & Priess
744 Broad Street, Suite 1510
Newark, NJ 07102

John R. Mahoney, Esq.
Asquith & Mahoney, LLP
155 South Main Street
Providence, RI 02903

Joseph J. Reale, Jr., Esq.
Joseph J. Reale, Jr., Ltd.
30 Kennedy Plaza, Suite 400
Providence, RI 02903

Stephen B. Lang, Esq.
Higgins, Cavanagh & Cooney, LLP
123 Dyer Street
Providence, RI 02903

Janet R. Davis, Esq.
Andrew M. Hutchison, Esq.
Georgene M. Wilson, Esq.
Meckler Bulger & Tilson, LLP
123 North Wacker Drive, Suite 1800
Chicago, IL 60606

/s/ Mark W. Freel

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CERTIFIED POWER SYSTEMS, INC.,<br>Plaintiff,<br><br>vs.<br><br>RHODE ISLAND STATE ENERGY STATUTORY TRUST 2000, FPLE RHODE ISLAND STATE ENERGY, L.P. and FPLE RHODE ISLAND STATE ENERGY GP, INC.,<br>Defendants,<br><br>vs.<br><br>CERTIFIED POWER SYSTEMS, INC.,<br>Defendant on Counterclaim/<br>Third-Party Plaintiff,<br><br>vs.<br><br>ZAMPELL REFRACTORIES, INC.,<br>Third-Party Defendant,<br><br>vs.<br><br>SARGENT & LUNDY, LLC and PREMIER ENGINEERING SERVICES, INC.,<br>Fourth-Party Defendants. | : | C.A. No. 05-066-ML |

**RISE DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION IN LIMINE PRECLUDING THE ADMISSION OF EXTRINSIC EVIDENCE SEEKING TO VARY PLAINTIFF'S CONTRACTUAL OBLIGATIONS**

Defendants Rhode Island State Energy Statutory Trust 2000, FPLE Rhode Island State Energy, L.P. and FPLE Rhode Island State Energy GP, Inc. (collectively, "RISE") submit this memorandum of law in support of their motion in limine to preclude the admission of any evidence by any party at trial concerning industry standards, or other codes or regulations, that are inconsistent with the clear and unambiguous terms of the parties' contract.



PRV_831735_1/MFREEL

**Introduction**

Pursuant to the terms and conditions of a very specific and detailed construction contract (the "Contract")[1] negotiated between sophisticated parties, RISE agreed to pay a substantial sum of money to Plaintiff Certified Power Systems, Inc. ("CPS") to make certain improvements to its power plant (the "Plant") in Johnston, Rhode Island. The Contract specifically outlined the duties of the parties and the inherent risks associated with such construction, which were accepted without reservation by CPS. During the course of carrying out its contractual obligations, CPS hired Third Party Defendant, Zampell Refractories, Inc. ("Zampell") to perform welding-related activities. The Contract specifically provided that all work performed by CPS' subcontractors would be governed by the same terms and conditions.

A majority of Zampell's welding took place on two air inlet units at the Plant, which are huge air filter houses encased in carbon steel. CPS, being in full control of its own construction means and methods, failed to cause Zampell to take appropriate protective measures while welding. On December 3, 2004, Zampell's welding set fire to the Plant, causing damages in excess of $4.6 million. Notwithstanding contractual obligations to the contrary, it is anticipated that CPS and/or Zampell will attempt at trial to introduce extrinsic evidence of certain industry standards, or other extra-contractual standards, in order to shift onto RISE, as owner, an obligation to ensure that CPS and its subcontractors met their contractual obligations and performed their work safely.

[1] Because the contractual documents are voluminous and there does not appear to be a dispute regarding the contractual language, RISE has not submitted the Contract to the Court along with the instant motion. However, to the extent that the Court would like to review the Contract, RISE will provide the Court with a copy, or with excerpted portions, either at oral argument, at the upcoming pretrial conference, or earlier upon request.

Accordingly, RISE has filed this motion in limine to preclude the admission of any such extrinsic evidence that alters CPS' express contractual obligations in contravention of the parol evidence rule.

**Background**

In performing its duties under the Contract, CPS was in sole control of its subcontractors, and of the means and methods for accomplishing its work. At Article 54 of the General Conditions, the Contract provided that "[RISE] retains no control or direction over [CPS], its employees and Subcontractors, or over the detail, manner or methods of performance of the Work by [CPS], its employees and Subcontractors." Furthermore, the Contract specifically imposed on CPS the obligation to perform its work safely. More specifically, the General Conditions to the Contract imposed the following obligations on CPS:

> 21.1 [CPS] shall be solely responsible for the safety and health of its personnel and Subcontractors engaged in the execution of the Work, as well as for the protection of the improvements being erected and property of itself, its personnel or Subcontractors.
>
> * * *
>
> 21.3 [CPS] shall comply with all applicable laws pertaining to the health and safety of persons or property and protect them from damage, injury or loss. [CPS] shall erect and maintain, as required by existing conditions and progress of the Work, all safeguards for safety and protection, including, without limitations, posting danger signs and other warnings against hazards, enforcing applicable safety and health and fire regulations, and notifying [RISE] and users of adjacent utilities.
>
> * * *
>
> 21.9 Except as otherwise provided in this Contract, [CPS] shall be solely responsible for the design, construction, installation, use and adequacy of all temporary supports, shoring, bracing scaffolding, machinery or equipment, safety precautions or devices and similar items or devices used by [CPS] and Subcontractors during performance of the Work.

CPS also made the following representations to RISE in the Contract:

> 4.1 [CPS] hereby represents that it has, by careful examination, satisfied itself as to the nature and location of the Work . . . the character, quality and quantity of the materials to be encountered both above and below ground, environmental conditions

> including weather, the character of equipment and facilities needed preliminary to and during the prosecution of the Work. . . . . [CPS] shall have no claim for additional compensation or additional time based on a lack of knowledge of such conditions
>
> 4.6 All loss or damage to [CPS] arising out of the Work or from the action of the elements, or from any unforeseen circumstance in the prosecution of the Work including inefficiencies or claims of inefficiencies, shall be sustained and borne by [CPS] at its own cost and expense.

The job specifications incorporated in the Contract also required CPS to make a thorough field check of existing site conditions that might affect the safe execution of such work. Those specifications stated:

> 103.1 Prior to performing any Work, in any part of the Project Site, . . . [CPS] shall make a thorough field check at the Project Site for the purposes of verifying existing conditions that may affect the Work. [CPS] shall include a thorough investigation of the potential interferences and difficulties that it may encounter in the proper and complete execution of the Work, . . . . [CPS] shall advise [RISE] immediately of the discovery of any conditions, . . . that may affect the timely and safe execution of the Work.
>
> ***
>
> 103.3 Should [CPS] fail to perform any of the obligations set forth above, [CPS'] later plea of ignorance of existing or foreseeable conditions which create difficulties or hindrances in the execution of the Work will not be considered as an excuse for any failure on the part of the Contractor to fulfill in every detail the requirements of the Contract nor will such a plea be acceptable as the basis of a claim for additional compensation.

Those same job specifications addressed CPS' duty to assess the work scope to ensure it could be performed safely, and required CPS to take adequate precautions to perform the work safely. The Contract did not place upon RISE any corresponding obligations to ensure that CPS and/or its subcontractors were knowledgeable regarding field conditions and/or to ensure that CPS performed its work safely. Rather, CPS bore those obligations exclusively.

At trial, it is anticipated that CPS and Zampell will attempt to avoid these very specific contractual duties by alleging that under certain industry standards promulgated by the National Fire Protection Association ("NFPA"), and perhaps other code bodies, RISE, as owner, had an

affirmative duty to inform CPS of the existence of the flammable media that ignited on December 3, 2004. However, any such argument is entirely at odds with the clear and unambiguous terms of the Contract. The Contract places the responsibility of compliance with any relevant industry standards, or government statutes, codes or regulations, solely on CPS and its subcontractors.

Specifically, Section 58.1 of the General Conditions For Contract Work states that "[CPS] warrants that the Work furnished under this Contract shall be … in conformance with all applicable laws, regulations and codes …." Section 63 of the General Conditions likewise states that "[CPS] shall perform all work in accordance with all applicable codes, standards, regulations, orders and standards of federal, state, regional, local and municipal governmental agencies and all standards, rules, regulations and orders issued by such agencies." The Contract does not place any corresponding responsibility on RISE, as owner, with respect to any such standards, codes or regulations.

**Argument**

"[W]ell-settled precepts of contract law establish that courts should not look outside the four corners of a contract if the terms of the contract are clear and unambiguous." See Rhode Island Hospital v. Kapner, Wolfberg & Assoc., 2000 WL 815873, at *5 (R.I. Super. June 1, 2000). When a written contract is clear and unambiguous on its face, the terms of the agreement must be construed from the language within the contract. See Dudzik v. Leesona Corp., 473 A.2d 762, 765 (R.I. 1984). Courts are therefore not at liberty to insert or disregard words in a contract. Id. Consistent with these principles, the parol evidence rule renders inadmissible extrinsic evidence for the purpose of contradicting, altering, adding to or varying the terms of a

fully integrated written contract that is neither incomplete nor unambiguous. Golden Gate Corp., 199 A.2d at 589.

In contravention of this well-established rule, CPS and/or Zampell hope to introduce extrinsic evidence of certain industry standards or regulations for the purpose of placing obligations on RISE that are greater than, and at direct variance with, those specifically set forth in the Contract. CPS and Zampell will argue that RISE had a duty to ensure that their work was done in accordance with the referenced standards and regulations. However, the Contract does not place any such obligations on RISE, but rather places the duty to ensure compliance with standards and regulations squarely and exclusively on CPS and its subcontractors. Neither CPS nor Zampell can show any contractual language that places any such burdens on RISE. Instead, this is simply an after-the-fact effort by those parties to avoid the clear and unambiguous obligations placed on them by the Contract. This Court should therefore preclude the admission of any evidence by CPS and/or Zampell that alters their express contractual obligations regarding compliance with industry standards, including, but not limited to, any language concerning alleged owner responsibilities from the NFPA or other comparable codes or regulations.

CPS' contention that RISE had a duty to disclose a pre-existing site condition is contrary to the clear and unambiguous terms of the Contract. CPS was solely responsible for the means and methods of performing its work, and agreed to be solely responsible for executing its work safely. CPS also represented and warranted that it was familiar with the job site conditions, and had an affirmative duty prior to performing its work to make a thorough field check of the existing site conditions that might affect the safe execution of such work. More importantly, in direct contradiction to the position to be taken at trial by CPS, the Contract specifically states

that "a plea of ignorance of existing … conditions will not be considered an excuse" for CPS (emphasis added).

**Conclusion**

The Contract contained a clear allocation of responsibilities, including those regarding adherence with codes and standards, for which the parties bargained and by which they agreed to be bound. This Court should not permit CPS and Zampell to revise or modify that allocation of responsibilities retroactively. For reasons set forth herein, and to be further addressed at oral argument, this Court should preclude CPS and/or Zampell from introducing any evidence at trial of any industry standards, or other codes or regulations, that place any duties or obligations upon RISE that are inconsistent with the parties' Contract, or that otherwise vary or alter the parties' respective obligations under that Contract.

RHODE ISLAND STATE ENERGY STATUTORY TRUST 2000, FPLE RHODE ISLAND STATE ENERGY, L.P. and FPLE RHODE ISLAND STATE ENERGY GP, INC.

By their Attorneys,

/s/ Mark W. Freel

Mark W. Freel (#4003)
Armando E. Batastini (#6016)
EDWARDS ANGELL PALMER & DODGE LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611 (fax)

**CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of August, 2006, I caused a true copy of the foregoing to be served on the following counsel of record:

Girard R. Visconti, Esq.
Jessica L. Papazian-Ross, Esq.
Visconti & Boren Ltd.
55 Dorrance Street
Providence, RI 02903

Mark Robert Vespole, Esq.
Theresa E. Mullen, Esq.
Tressler, Soderstrom, Maloney & Priess
744 Broad Street, Suite 1510
Newark, NJ 07102

John R. Mahoney, Esq.
Asquith & Mahoney, LLP
155 South Main Street
Providence, RI 02903

Joseph J. Reale, Jr., Esq.
Joseph J. Reale, Jr., Ltd.
30 Kennedy Plaza, Suite 400
Providence, RI 02903

Stephen B. Lang, Esq.
Higgins, Cavanagh & Cooney, LLP
123 Dyer Street
Providence, RI 02903

Janet R. Davis, Esq.
Andrew M. Hutchison, Esq.
Georgene M. Wilson, Esq.
Meckler Bulger & Tilson, LLP
123 North Wacker Drive, Suite 1800
Chicago, IL 60606

/s/ Mark W. Freel