UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CERTIFIED POWER SYSTEMS, INC.

VS.

RHODE ISLAND STATE ENERGY
STATUTORY TRUST 2000, FPLE RHODE
RHODE ISLAND STATE ENERGY GP, INC.

VS. C.A. NO.: 05-066-ML

CERTIFIED POWER SYSTEMS, INC.

VS.

ZAMPELL REFRACTORIES, INC.

VS.

SARGENT & LUNDY, LLC and
PREMIER ENGINEERING SERVICES, INC.

**ZAMPELL REFRACTORIES, INC.'s PRE-TRIAL MEMORANDUM**

Zampell Refractories, Inc. (hereinafter referred to as “Zampell”) is a third-party defendant. The plaintiff in this case is Certified Power Systems, Inc. (hereinafter referred to as “CPS”). The plaintiff filed a three count Complaint against the defendant, Rhode Island State Energy Statutory Trust 2000, FPLE Rhode Island State Energy GP, Inc. (hereinafter referred to as “FPLE”), alleging breach of contract damages and unjust enrichment relative to construction work performed in two (2) air intake filter units associated with combustion turbines located at the defendant's power plant in Johnston, Rhode Island.

A fire took place in air intake filter combustion turbine 101 (CT-101) on or about December 3, 2004. At the time that the fire took place, Zampell was performing welding operations on the outside wall of CT-101. It appears that heat generated from the welding

ignited what is referred to as evaporative cooler media that was located within approximately one-half inch or less from the underside of the wall that was being welded upon.

CPS was the general contractor on the job. CPS had a verbal agreement evidenced by a Purchase Order to retain Zampell as a subcontractor to do the welding work. Sargent & Lundy, LLC (hereinafter referred to as “S&L”) is an engineering company that contracted with the owner, FPLE, to provide engineering services and to assure the fact that there was an S&L representative located at the plant daily from September, 2004 up to and including the day of the fire.

CPS filed this lawsuit alleging that they were owed considerable sums of money for work done prior to the fire that the owner, FPLE, had not paid them. In response to the Complaint of CPS, FPLE filed a counterclaim against the plaintiff alleging breach of contract damages in Count I and damages sustained by the defendant owner as a result of the alleged negligence of CPS.

CPS filed a reply to the counterclaim and a Third-Party Complaint against Zampell. CPS' Third-Party Complaint was based on an allegation that in the event the third-party plaintiff is responsible to FPLE for part or all of this party's damages, the third-party plaintiff sought contribution and indemnification from Zampell. The indemnity claim arises from a verbal contract between CPS and Zampell as a result of which a Purchase Order was issued to Zampell by CPS regarding welding work to be performed by Zampell at the project. In fact, Zampell was performing welding work on the outside of combustion turbine 1 air inlet plenum at the time that the fire started.

The Second Count in the Third Party Complaint filed by CPS against Zampell alleged

that Zampell had a legal obligation to name CPS as an additional insured in an insurance policy that Zampell had in effect at the time of the fire with Liberty Mutual Insurance Company. Zampell has denied the allegations contained in the Third-Party Complaint filed against it. Zampell has filed a counterclaim against CPS for money owed to Zampell by CPS for work completed by the former party on the project pursuant to the Purchase Order. Zampell has only been paid $50,000.00 by CPS to date and is owed approximately $541,000.00 for labor and materials.

Zampell then filed a Fourth-Party Complaint against both S&L and Premier Engineering, Inc. (hereinafter referred to as "Premier Engineering"). Premier Engineering has gone bankrupt. Proceedings against them have been stayed. S&L has answered the Fourth-Party Complaint. The nature of the allegations against S&L are that they are responsible to Zampell, in the event that the fourth-party plaintiff is responsible to CPS, for contribution as it relates to the fire and resulting damages.

On or about October 1, 2004, Zampell and CPS entered into a binding and enforceable contract whereby Zampell would perform the services as described in the Purchase Order and, in consideration therefor, receive $575,000.00 under the payments described in the aforesaid Purchase Order.

The parties are to be bound by the terms and conditions of the Purchase Order which, in this case, constitutes a binding and enforceable contract. Crellin Technologies v. Equipment Lease Corp., 18 F.3d 1 (First Cir. 1994). The necessary consideration was exchanged between Zampell and CPS with regard to the scope of the work and the amount to be paid for Zampell's performance. McGrath v. RI Retirement Board, 88 F.3d 12 (First Cir. 1996).

Zampell performed its work in a satisfactory and workmanlike manner and should be compensated in full pursuant to the terms of the contract. Crellin Technologies v. Equipment Lease Corp., supra. Zampell will prove its damages to a reasonable degree of certainty, as the balance of the contract, less payments and less offsets. Zampell has taken all reasonable steps to mitigate any loss that occurred as a result of CPS' failure to pay the balance of monies due on the contract. National Chain Co. v. Campbell, 487 A.2d 132 (RI 1985).

CPS filed a Third-Party Complaint against Zampell. FPLE had filed a counterclaim against the third-party plaintiff as a result of which CPS filed the Third-Party Complaint seeking, in the first count of said Third-Party Complaint, contribution and indemnification for any sums of money which CPS may ultimately owe FPLE for the damages caused by the fire.

Proximate cause in negligence claims is composed of two elements, factual cause and legal cause. “But for” causation is factual causation: But for the defendant's conduct, the injury would not have occurred. Legal causation requires proof that an act or omission in natural, unbroken and continuous sequence produced the event or that the wrongful conduct was a substantial factor in bringing about the harm. DiPetrillo v. Dow Chemical Co., 729 A.2d 677 (RI 1994).

Whether the welding was negligently undertaken or not, is irrelevant in this case. Since proper welding and negligent welding would have ignited the evaporative cooler media, it is obviously the failure to moisten, isolate or remove the evaporative cooler media that was the proximate cause of this fire. The jury has to make a determination as to what party or parties, under all of the circumstances of this case, was responsible for taking precautionary measures with regard to the evaporative cooler media before the welding began.

CPS would be entitled to indemnification against Zampell if CPS can prove that they were exposed to liability by the wrongful act of Zampell in which CPS did not join. Hawkins v. Gadoury, 713 A.2d 799 (1998). The concept of indemnity is based upon the theory that one who has been exposed to liability solely as a result of the wrongful act of another should be able to recover from that party. Muldowney v. Weatherking Products, Inc., 509 A.2d 441 (RI 1986).

Under no circumstances would indemnity apply to this case as between CPS and Zampell because CPS cannot prove that it has no wrongful conduct if the claim it is making for indemnification against Zampell is based on Zampell's failure to remove the evaporative cooler media from the building. It was CPS who had all of the specifications regarding the project; CPS had been in the building prior to the fire, whereas Zampell had not been; CPS did receive documentation from a vendor in November, 2004 that issued some type of warning regarding filter and media flammability and Zampell did not participate in the walk-through prior to the fire.

CPS also seeks contribution from Zampell for any sums of money for which the former party is ultimately adjudged liable to FPLE. The joint tort feasor liability is governed by Rhode Island law, RIGL § 10-6-1, et seq. RIGL § 10-6-2 defines joint tort feasor as two or more people jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them. The third-party plaintiff's claim for contribution will only exist if the third-party plaintiff is responsible in tort for some or all of the damages sustained by FPLE as a result of the fire. In that case, under RIGL § 10-6-3, the relative degree of fault, if any, as between the third-party plaintiff and the third-party defendant can be considered by the jury. Each joint tort feasor is only responsible for its pro rata share of

the damages.

The same law with regard to joint tort feasor responsibility would apply to the Fourth-Party Complaint filed by Zampell against S&L. S&L prepared a document which described this party's responsibility at the construction site. One of the paragraphs that S&L prepared relates to its duty to assure the fact that contractors would comply with all applicable ordinances and regulations that would govern the contractors' work. It follows that S&L should have been aware of OSHA and NFPA standards requiring the removal of all flammable material on the other side of a wall where welding would occur. S&L failed to adhere to its own responsibility in this regard and certainly would be liable to Zampell for contribution in the event that Zampell is found responsible to the third-party plaintiff, CPS.

Premier Engineering was hired by FPLE to act as its agent with regard to the day to day construction project. Mr. Ed Alarcon was the principal officer and sole employee of Premier Engineering. FPLE and Ed Alarcon, on behalf of Premier Engineering, did not enter into a written contract with regard to Premier Engineering's services. Notwithstanding this fact, Ed Alarcon was paid to be in attendance at the construction site on a daily basis and to oversee the construction project. Premier Engineering was the agent of FPLE and any negligence attributable to Mr. Alarcon as it relates to failure to remove the evaporative cooler media is imputed to FPLE. The elements that must be shown in order for an agency relationship to exist under Rhode Island law are 1.) a manifestation by the principal that the agent will act for him; 2.) acceptance by the agent of the undertaking; and 3.) an agreement between the parties that the principal will be in control of the undertaking. Powers v. Coccia, 861 A.2d 466.

The OSHA regulations have both the force of Federal and State law. RIGL § 28-20-

24(c)(d). The OSHA regulations incorporate NFPA 51(B). 29CFR1910.252(a)(1). The OSHA regulations clearly required FPLE to be responsible for the awareness and protection of any flammable material inside the air inlet structure before welding took place. FPLE failed in complying with their responsibility and violated the Rhode Island law in this regard. A violation of a statute or ordinance if a proximate cause of damage may be considered by a jury as prima facie evidence of negligence. Czernik v. Heroux, 711 A.2d 641 (RI 1998).

After the fire occurred, CPS requested that Zampell place CPS' name on a Certificate of Insurance issued by Liberty Mutual Insurance Company. Liberty Mutual Insurance Company issued such a certificate. CPS now claims that by virtue of this fact, that Zampell was required to provide insurance for CPS through Liberty Mutual Insurance Company that would apply to the fire. This argument by CPS fails for two (2) reasons. First, the insurance certificate was issued after the fire and had absolutely no retro-active effect. Second, the issuance of the certificate was provided for no consideration and, consequently, CPS has no contractual rights as a basis for the claim.

ZAMPELL REFRACTORIES, INC.

BY ITS ATTORNEY,

/s/ JOHN R. MAHONEY, ESQ.
JOHN R. MAHONEY, ESQ. - #1940
ASQUITH & MAHONEY, LLP
155 SOUTH MAIN STREET, 2nd FLOOR
PROVIDENCE, RI 02903
(401) 331-5353 - Telephone
(401) 331-7373 - Fax
JackMahoney@amlawllp.com

CERTIFICATION

I hereby certify that on the 31st day of August, 2006 electronically filed and mailed a true copy of the within to Joseph J. Reale, Jr., Esq., 30 Kennedy Plaza, Suite 400, Providence, RI 02903; Mark W. Freel, Esq., Edwards & Angell, LLP, 2800 Financial Plaza, Providence, RI 02903; Jessica Papazian-Ross, Esq., Visconti & Boren, 55 Dorrance Street, Providence, RI 02903; Mark Robert Vespole, Esq., Theresa E. Mullen, Tressler, Soderstrom, Maloney & Priess, 744 Broad Street, 14th Floor, Newark, NJ 07102-3812; Warren D. Hutchison, Esq., Donovan Hatem, LLP, Two Seaport Lane, Boston, MA 02210; Matthew T. Oliverio, Esq., Oliverio & Marcaccio, LLP, 55 Dorrance Street, Suite 400, Providence, RI 02903; Stephen B. Lang, Esq., Higgins, Cavanagh & Cooney, LLP, 123 Dyer Street, Providence, RI 02903 and to Janet R. Davis, Esq., Meckler, Bulger & Tilson, LLP, 123 N. Wacker Drive, Suite 1800, Chicago, IL 60606.

/s/ JOHN R. MAHONEY, ESQ.
JOHN R. MAHONEY, ESQ. - #1940
ASQUITH & MAHONEY, LLP
155 SOUTH MAIN STREET, 2nd FLOOR
PROVIDENCE, RI 02903
(401) 331-5353 - Telephone
(401) 331-7373 - Fax
JackMahoney@amlawllp.com