**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

CERTIFIED POWER SYSTEMS, INC.
*Plaintiff*

vs. C.A. No.: 05-066 ML

RHODE ISLAND STATE ENERGY
STATUTORY TRUST 2000, FPLE RHODE
ISLAND STATE ENERGY GP, INC.
*Defendants/Counter Claim Plaintiffs*

vs.

CERTIFIED POWER SYSTEMS, INC.
*Defendant on Counter Claim/*
*Third-Party Plaintiff*

vs.

ZAMPELL REFRACTORIES, INC.
*Third-Party Defendant/*
*Fourth-Party Plaintiff*

vs.

SARGENT & LUNDY, L.L.C. and
PREMIER ENGINEERING
*Fourth-Party Defendants*

**FOURTH-PARTY DEFENDANT SARGENT & LUNDY'S PRE-TRIAL MEMORANDUM**

This matter coming before the court for pretrial and pursuant to Federal Rules of Civil Procedure 16, Fourth-party defendant Sargent & Lundy, LLC, ("S&L") by its attorneys, Stephen B. Lang of Higgins, Cavanagh & Cooney, LLP and Janet R. Davis of Meckler Bulger & Tilson, LLP submits the following pretrial memorandum.

**1.(a) <u>S&L's Counterclaim Against CPS</u>**

S&L as counter-claim plaintiff, is asserting a counterclaim against Certified Powers Systems, Inc. ("CPS") seeking contractual indemnity. In support of its counterclaim S&L will prove through documentary evidence and the testimony of witnesses that CPS is liable to S&L for any and all costs, including defense costs and attorney's fees, S&L has incurred or will incur, and for any other liabilities including damages assessed against S&L, in this suit.

S&L will prove that in the contract CPS entered into with the FPL defendants CPS agreed to the following terms and conditions:

> **55.0 INDEMNITY**
> Supplier agrees to protect, defend, indemnify and hold Purchaser entities and Purchaser's Consulting Engineers free and unharmed from and against any liabilities whatsoever resulting from or in connection with this Contract or in connection with performance of the Work by Supplier, its employees or Subcontractors to the extent such liabilities are due to or caused by the negligence of Supplier.

The "Additional Definitions" in the CPS contract "Supplemental Conditions" states that:

> Wherever the term "Consulting Engineer" is used, it refers to Purchaser's Consulting Engineer, Sargent & Lundy L.L.C.

S&L tendered this suit to CPS pursuant to the indemnification clause and CPS has not disputed that the indemnification clause is valid and enforceable. Accordingly, S&L seeks enforcement of the indemnification clause of the CPS contract and seeks all costs and fees including attorney's fees and indemnification for any and all liabilities that S&L has incurred or will incur in this suit.

**1.(b) <u>S&L's Defenses to be Proven at Trial</u>**

Through the testimony of witnesses as well cross-examination of witnesses presented by others, S&L expects to prove the following:

- S&L's contract with FPL defined the scope of S&L's responsibilities for the project and limited S&L's responsibility to only those activities related to consulting engineer and design services, and equipment procurement assistance. S&L's scope of work did not include issues relating to safety, hazard identification or hot work.
- S&L's plans, specifications, and actions with reference to the project were appropriate and met S&L's contractual obligations and were in accordance with the relevant standard of care.
- S&L was not acting as FPL's representative for the hot work aspects of the project and S&L had no obligation to act as FPL's representative for purposes of authorization and supervision of hot work.
- S&L had no duty or obligation to inform CPS or Zampell of the presence, or flammability, of the evaporative cooling media in the air inlet housing, either prior to commencement of, or during the course of, work on the project.
- CPS knew, or should have known, of the presence and flammability of the evaporative cooling media, prior to the fire on December 3, 2004.

**WITNESS LIST**

S&L, pursuant to the Court's request, filed its expected witness list separately and by hand delivery.

**2. MEMORANDUM OF SUPPORTING LAW**

**FACTS**

This matter arises out of fire damage to a power plant that was owned and operated by Rhode Island State Energy Statutory Trust 2000, FPLE Rhode Island State Energy, Inc. ("FPLE") located in Johnston, Rhode Island. At the time of the fire, a retrofit construction project was in progress. Sargent & Lundy ("S&L") was the consulting engineer for the project, Ed Alarcon of Premier Engineering[1] was FPLE's project manager, Certified Power Systems, Inc. ("CPS") was the general work contractor responsible for project construction and Zampell

[1] Premier Engineering has declared bankruptcy since the initiation of this suit and all claims pertaining to Premier have been severed.

Refractories, Inc. ("Zampell") was CPS' welding subcontractor responsible for the installation of insulation.

The fire occurred while an employee of Zampell was welding a system for the attachment of insulation onto an air inlet unit. The Zampell employee began to weld on a stainless steel panel behind which was located evaporative cooling media. The welding near the evaporative cooling media caused the media to ignite. The ensuing fire destroyed the air inlet unit.

FPLE and S&L had entered into a contract prior to commencement of this project. S&L's limited scope, under the contract, was to design and provide procurement services. Pursuant to the design aspect of the contract, S&L was to "render engineering and construction management services in accordance with generally accepted engineering practices using current recognized principles and practices." (S&L exhibit 27 Bates number FPL 002497 Section A). Specifically, S&L prepared plans and specifications, including specifications for the type of insulation to be used on the air inlet housing. S&L did not design or specify the insulation attachment system as this would constitute means and method of construction, and was outside the scope of the contract. In fact the contract specifically excluded means and methods of construction from S&L's scope of responsibility by stating that "[i]n no event shall [S&L] be responsible for construction means, methods, techniques, sequences, or procedures." (Id. Section B (sic)(emphasis added)). The means and methods of construction and safety, including hazard identification, was the sole responsibility of the contractor. S&L was not responsible for nor did it have "control or charge over the acts or omissions of the construction contractors." (Id. Section C 9(sic)). In addition the contract limited S&L's liability to reperformance of the services. (Id. Section A).

While S&L only had a contract with the FPLE, the contract between the FPLE and CPS included terms which require CPS to indemnify S&L for any damages assessed against S&L. Specifically, the contract stated that CPS "agreed to protect, defend, indemnify and hold [S&L] free and unharmed from and against any liabilities whatsoever resulting from or in connection with this Contract or in connection with performance of the Work by [CPS], its employees or Subcontractors."

**ISSUES**

The present legal issues arise from the original Complaint filed by the plaintiff, CPS against FPLE, for claims of breach of contract and unjust enrichment. CPS seeks to collect approximately the $2.1 million that FPLE held back from CPS after the fire. FPLE asserted counterclaims against CPS for breach of contract and negligence seeking compensation for damages caused by the fire.

Plaintiff, CPS then filed a third party complaint against Zampell for contribution and complete indemnification at common law and in contract for Zampell's subcontract welding work. Since CPS had withheld payment from Zampell, Zampell in turn filed a counterclaim against CPS for breach of contract and unjust enrichment. Zampell filed a fourth party Complaint seeking common law contribution and/or indemnification from S&L for any judgment entered against Zampell in favor of CPS. CPS also made a common law claim for indemnification and contribution against S&L and Premier Engineering for any judgment entered against CPS in favor of FPLE. Sargent & Lundy answered CPS's claims by asserting counterclaims for indemnification and contribution based in common law and contract. FPLE has not brought any claims against S&L, nor has S&L brought any claims against FPLE.

At trial the following issues will be raised: (1) S&L as the consulting engineer for the FPLE construction project, had no contractual duty to the general contractor, CPS its subcontractor, Zampell to advise of any flammable material located on the inside of the air inlet plenum on which Zampell was performing welding services on the exterior; (2) in performing engineering services, S&L exercised such care, skill and diligence as those engaged in that profession ordinarily exercise under like circumstances; (3) and the damages suffered by the complaining parties were not proximately caused by the conduct of S&L. Therefore, the claims for indemnification and/or contribution at common law and under the contract terms must be denied because S&L was not responsible for the means and methods of construction used by CPS and/or Zampell in performing the contracted work and owed no duty to advise either party of any flammable material inside the air inlet plenum.

**LEGAL ARGUMENT**

I. The claims of CPS and Zampell against S&L for indemnity and contribution are dependent upon the language of the contract entered into by S&L and FPLE.

A right to indemnity, while generally contractual in nature, may be based in common law. Wilson v. Krasnoff, 560 A.2d 335, 341 (R.I. 1989). As neither CPS nor Zampell had a contract with S&L, the indemnity claims must be based in common law if at all. Such an equitable right exists "when one has been held liable solely because of the wrongful act of another." Id. A party must establish three elements to sustain its claim for equitable indemnity. Since CPS seeks indemnity from S&L for any judgment entered against it in favor of FPLE, CPS must prove that 1) it is liable to FPLE; 2) S&L is liable to FPLE; and 3) CPS is blameless. Id. Similarly, since Zampell seeks indemnity from S&L for its possible liability to CPS, Zampell

must prove 1) that it is liable to CPS; 2) that S&L is liable to CPS; and 3) that Zampell is blameless. Id.

CPS and Zampell have also brought claims against S&L for contribution. CPS seeks contribution from S&L for any judgment entered against it in favor of FPLE, and Zampell seeks contribution for any judgment entered against it in favor of CPS. "Contribution is unavailable unless the injured person has a right of action in tort against both the party seeking contribution and the party from whom contribution is sought." Boucher v. McGovern, 639 A.2d 1369, 1374 (R.I. 1994). Accordingly, for CPS to sustain its claim for contribution it must prove that both it and S&L are liable to FPLE. Zampell must prove that both it and S&L are liable to CPS to sustain its claim against S&L for contribution. S&L respectfully suggests that they will be unable to do so.

Both CPS's and Zampell's claims for indemnification and contribution from S&L are dependent upon S&L's contractual relationship with FPLE. "Contract interpretation is a question of law." 1800 Smith St Assoc, L.P. v. Gencarelli 888 A.2d 42, 52 (R.I. 2005). "When the terms are clear and unambiguous, then the court should apply them as written." A.F. Lusi Constr. Inc. v. Peerless Ins. Co., 847 A.2d 254, 258 (2004). In making this determination the court views "the agreements in their entirety and give[s] the contractual language its 'plain, ordinary and usual meaning.'" Id.(quoting W.P. Assoc. v. Forcier, Inc., 637 A.2d 353, 356 (R.I. 1994). Agreements are ambiguous only when they are "reasonably and clearly susceptible to more than one rational interpretation." A.F. Lusi Constr. Inc., 847 A.2d at 258.

II. The language of the contract entered into by S&L and the FPLE is clear and unambiguous.

The clear and unambiguous language of the contract terms explicitly outlines that S&L did not owe a contractual duty to supervise and/or assume responsibility for the performance of the construction contractors involved in the retrofit project at the Johnston power plant. Sargent & Lundy's contract with FPLE clearly states that S&L "shall render engineering and construction management services in accordance with generally accepted engineering practices using current recognized principles and practices." (S&L exhibit 27 Bates number FPL002497 section A). In addition the contract states that S&L:

> will not direct or employ any construction labor and are not to be considered as a general contractor, but rather as RISEC's representative on site with only the authority to act in RISEC's behalf in matters relating to construction management. In no event shall [S&L] be responsible for construction means, methods, techniques, sequences, or procedures.

(S&L exhibit 27 Bates number FPL002497 section B[sic](emphasis added). In addition the contract stated that S&L

> will not be responsible for or have control or charge over the acts or omissions of the construction contractors, nor shall our presence on site in any way be interpreted as having the authority to provide instruction to the contractor or to stop work by the construction contractor for any reason.

(Id. at page 2 Section C [sic](emphasis added)). Appendix A to the contract articulated the Scope of Work which states that S&L's scope "will include engineering services to perform plant modifications….The engineering services to be provided will be design, procurement assistance, quality assurance and quality verification, project management and construction management." (S&L exhibit 27 Bates number FPL 002501). Sargent & Lundy's on site responsibilities for construction management were limited to "provid[ing] filed engineering services for modifications as required, and provide filed engineering services to assist with construction oversight." (Id.). Finally, the contract states that S&L's "sole obligation for any failure to perform our services in accordance with the generally accepted practices, whether in

tort or contract, shall be to reperform those services." (S&L exhibit 27 Bates number FPL002497 section B).

III. <u>The claims against S&L for indemnity and contribution must fail as S&L cannot be held liable to the FPLE nor CPS.</u>

It is clear from the language of the agreement between S&L and FPLE that S&L did not have any contractual obligation to FPLE for the means and methods of the construction. In fact, the contract clearly states that S&L will not be responsible for the acts and omissions of contractors. Accordingly, S&L owed no duty to FPLE with respect to the means and methods of the construction, including the method of attaching the insulation to the building and the welding. Additionally, it is clear that even if S&L were liable to FPLE for some breach, the only obligation S&L would incur in the reperformance of their services. S&L would not be financially responsible.

Since S&L cannot be liable to FPLE for the damage resulting from the means and methods of construction and such liability is an element of both CPS's indemnity and contribution claim, it follows that CPS can not sustain indemnity or contribution claims against S&L.

S&L did not owe a duty to CPS, and S&L met its obligations under its contract with FPLE. Therefore S&L cannot be found to be liable to CPS. Thus, Zampell can not prove that S&L is liable to CPS and therefore Zampell cannot sustain its claim for indemnity and contribution against S&L.

IV. <u>S&L did not deviate from the standard of care that applies to engineers in like circumstances.</u>

At common law there is a duty to "exercise reasonable care for the safety of others" while performing work under contracts. Pastorelli v. Associated Engineers, Inc., 176 F.Supp. 159, 163 (D. R.I. 1959). Engineers are held to a standard of care, skill and diligence as people engaged in the engineering profession ordinarily exercise in like circumstances. Id. at 166. Both CPS and Zampell have essentially claimed that S&L breached this standard of care. In any negligence action the plaintiff must prove by a preponderance of the evidence that the defendant deviated from the standard care. Riley v. Stone, 900 A.2d 1087, 1094 (R.I. 2006). Rhode Island law requires "expert testimony to establish deviation from the standard of care when the lack of care is not so evident as to be obvious to a lay person." Foly v. St. Joseph's Health Servs., 899 A.2d 1271, 1277 (R.I. 2006).

While, engineers have a "duty to exercise reasonable care," to see that contractors perform their work properly, engineers are "not an insurer that the contractors would perform their work properly in all respects." Id. Unlike the case at bar, in Pastorelli, the contract that the engineer entered into with the property owner specifically required the engineer to "supervise the contractor's work though out the job." Id. The Court stated that the engineer did possess, at all times, "the ultimate control to approve or reject all work done by the contractor and by the subcontractors." Id. at 166. The Court found that the work performed by the subcontractor was not in accordance with generally accepted practice. Because the engineer had agreed to supervise the contractor's and subcontractor's work and because the subcontractor did not follow generally accepted practices, the engineer was found to have failed to use due care in carrying out the general supervision required by the contract and therefore was found negligent. Id.;see also McDonnell v. Wasenmiller, 74 F.2d 320 (8th Cir. 1934) (according to the contract terms

engineers had the duty to supervise the plan and design of the conduit work, engineers also assumed the duty to inspect the work on the conduit line by personally inspecting it).

In the present case, however, the clear and unambiguous contract language did not impose a duty on S&L to supervise or inspect any work done by the contractors/sub-contractors. In fact the contract language states just the opposite. S&L was "not [to] be responsible for or have control or charge over the acts or omissions of the construction contractors." Sargent & Lundy was hired to "render engineering and construction management services in accordance with generally accepted engineering practices using current recognized engineering principles and practices" only. (See Delivery and Work Authorization for Sargent & Lundy, L.L.C.). As consulting engineering for the project, S&L did not even have the "authority to provide instruction to the contractor." (Id.). As professional engineers, S&L was simply required to act with the skill, care and diligence as others in their profession would in similar circumstances. S&L's only responsibility was to act as construction manager which was defined in the contract as "develop and manage the project design, procurement, and construction schedule." (S&L exhibit 27 Bates number FPL 002501).

Given the language of the contract, which defined what function S&L was to have and what function it was not to have, it is clear that S&L acted with the reasonable skill, care and diligence as others in their profession would. S&L did not deviate from its duties under the contract and therefore did not deviate from the standard of care.

V. Sargent & Lundy's claim for contractual indemnity survives.

"When the terms are clear and unambiguous, then the court should apply them as written." A.F. Lusi Constr. Inc., 847 A.2d at 258. As the contract agreed to between CPS and the FPLE clearly and unambiguously requires CPS to indemnify S&L "against any liabilities

whatsoever resulting from or in connection with this Contract or in connection with performance of the Work by [CPS], its employees or Subcontractors" S&L's claim for indemnity must prevail.

**3. TRIAL EXHIBITS**

Pursuant to the Court's request, the list of trial exhibits will be filed separately and hand delivered to the appropriate parties.

**4. JURY INSTRUCTIONS**

Pursuant to the Court's request, the jury instructions will be filed separately and hand delivered to the appropriate parties.

**5. LENGTH OF TRIAL**

It is anticipated that the trial of this matter will last 2 to 3 weeks.

SARGENT & LUNDY, L.L.C.

By its Attorneys,

/s/ ______________________

Stephen B. Lang (#0145)
Higgins, Cavanagh & Cooney, LLP
123 Dyer Street
Providence, RI 02903
Tel: 401-272-3500
Fax: 401-273-8780
slang@hcc-law.com

Janet R. Davis, Esq.
Georgene Wilson, Esq.
Andrew M. Hutchinson, Esq.
Meckler Bulger & Tilson, LLP
123 North Wacker Drive, Suite 1800
Chicago, IL 60606
Tel: 312-474-7947
Fax: 312-474-7898
janet.davis@mbtlaw.com
georgene.wilson@mbtlaw.com

**CERTIFICATION**

I hereby certify that a true copy of the within was filed electronically and it is available for viewing and downloading from the ECF system. The following counsel of record received notice of the filing of this document electronically from the United States District Court for the District of Rhode Island:

Co-Counsel for Plaintiff
Jessica Papazian-Ross, Esq.
Visconti & Boren Limited
Providence Square Building
55 Dorrance Street
Providence, RI 02903
jlpr@viscontilaw.com

Counsel for Trust 2000, FPLE
Mark W. Freel, Esq.
Armando E. Batastini, Esq.
Edwards & Angell
2800 Financial Plaza
Providence, RI 02903
MFreel@eapdlaw.com

Co-Counsel for Zampell
John R. Mahoney, Esq.
Asquith Mahoney, LLP
155 South Main Street
2nd Floor
Providence, RI 02903
JackMahoney@amlawllp.com

Co-Counsel for Zampell
Joseph J. Reale, Jr., Esq.
30 Kennedy Plaza
Suite 400
Providence, RI 02903
reale@conversent.net

I also certify that a true copy of the foregoing (along with a copy of the ECF receipt), was mailed, postage pre-paid, to:

Co-Counsel for Plaintiff
Mark Robert Vespole, Esq.
Theresa M. Mullen, Esq.
Tressler, Soderstrom Maloney & Priess
744 Broad Street, Suite 1510
Newark, NJ 07102

/s/______________________________
Stephen B. Lang