**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| CERTIFIED POWER SYSTEMS, INC.,<br><br>Plaintiff,<br>v.<br><br>RHODE ISLAND STATE ENERGY STATUTORY TRUST 2000, FPLE RHODE ISLAND STATE ENERGY, L.P. and FPLE RHODE ISLAND STATE ENERGY GP, INC.,<br><br>Defendants,<br>v.<br><br>CERTIFIED POWER SYSTEMS, INC.,<br><br>Defendant on Counterclaim/Third-Party Plaintiff,<br><br>v.<br><br>ZAMPELL REFRACTORIES, INC.,<br><br>Third-Party Defendant,<br>v.<br><br>SARGENT & LUNDY, LLC and PREMIER ENGINEERING SERVICES, INC.<br>Fourth-Party Defendant. | ) | **C.A. No. 05-066-ML** |

**PLAINTIFF/COUNTERCLAIM DEFENDANT/THIRD-PARTY PLAINTIFF, CERTIFIED POWER SYSTEMS, INC.'S MOTION *IN LIMINE* TO BAR THE EXPERT TESTIMONY OF ARA NALBANDIAN REGARDING THE CAUSE AND ORIGIN OF THE DECEMBER 3, 2004 FIRE**

Pursuant to Federal Rule of Evidence 401, 402, 403, 702 and 704, plaintiff/defendant on counterclaim/third-party plaintiff, Certified Power Systems Inc. ("CPS"), by its attorneys, Jessica L. Papazian-Ross of Visconti & Boren Limited and Mark Robert Vespole of Tressler, Soderstrom, Maloney & Priess, LLP, hereby moves the Court for an order *in limine* to bar the

expert testimony of Ara Nalbandian regarding the cause and origin of the December 3, 2004 fire. In support of this motion, CPS states:

RHODE ISLAND STATE ENERGY STATUTORY TRUST 2000, FPLE RHODE ISLAND STATE ENERGY, L.P. and FPLE RHODE ISLAND STATE ENERGY GP, INC., (hereinafter collectively referred to as "FPLE") seeks to rely upon the expert testimony of Ara Nalbandian of Thielsch Engineering with respect to the cause and origin of the fire on December 3, 2004. However, it is clear from Mr. Nalbandian's deposition testimony that he does not have the qualifications and expertise to render an opinion regarding the cause and origin of the fire, does not have a sufficient factual basis to support his opinions and is unable to testify based upon reasonable probability that the fire was caused by improper welding. Without a reliable foundation, the expert's testimony is of no value to the jury.

Thus, for the reasons set forth in the attached Memorandum of Law in support of this Motion, this Court should grant the Motion *in Limine* and bar the testimony of Ara Nalbandian and/or conduct a preliminary hearing to address the issues raised herein.

Plaintiff/Third-Party Counterclaim Defendant,
CERTIFIED POWER SYSTEMS, INC.
By its Attorneys,

/s/ Jessica L. Papazian-Ross
Jessica L. Papazian-Ross, Esq. (#3905)
***Visconti & Boren Ltd.***
55 Dorrance Street
Providence, RI 02903
Tel. No. (401) 331-3800
Fax No. (401) 421-9302
JLPR@viscontilaw.com

**Pro hac vice counsel**
Mark Robert Vespole
Tressler, Soderstrom, Maloney & Priess
744 Broad Street, Suite 1510
Newark, NJ 07102
Tel. No. (973) 848-2900
Fax No. (973) 623-0405

***CERTIFICATION OF SERVICE***

The undersigned hereby certifies that this document has been filed electronically on this 12th of September, 2006 and is available for viewing and downloading to the ECF registered counsel of records:
Via Electronic Service/ECF:

**Armando E. Batastini**
abastini@eapdlaw.com rjil@eapdlaw.com

**Janet R. Davis**
janet.davis@mbtlaw.com

**Mark W. Freel**
Mfreel@eapdlaw.com

**John R. Mahoney**
JackMahoney@amplawllp.com

**Matthew Thomas Oliverio**
mto@om-rilaw.com

**Joseph John Reale, Jr.**
realse@conversent.net

**Stephen B. Lang**
slang@hhc-law.com

The undersigned hereby certifies that on this 12th day of September, 2006 a true copy of the within document was forwarded via U.S. Mail, postage pre-paid, to the following counsel of record:
Via U.S. Mail, postage pre-paid:

**Georgene M. Wilson**
**Andrew M. Hutchison**
Meckler Bulger & Tilson LLP
Suite 1800
123 North Wacker Drive
Chicago, IL 60606

/s/ Jessica L. Papazian-Ross
Jessica L. Papazian-Ross, Esq. (#3905)
***Visconti & Boren Ltd*.**
55 Dorrance Street
Providence, RI 02903
Tel. No. (401) 331-3800
Fax No. (401) 421-9302
JLPR@viscontilaw.com

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| CERTIFIED POWER SYSTEMS, INC., Plaintiff, v. RHODE ISLAND STATE ENERGY STATUTORY TRUST 2000, FPLE RHODE ISLAND STATE ENERGY, L.P. and FPLE RHODE ISLAND STATE ENERGY GP, INC., Defendants, v. CERTIFIED POWER SYSTEMS, INC., Defendant on Counterclaim/Third-Party Plaintiff, v. ZAMPELL REFRACTORIES, INC., Third-Party Defendant, v. SARGENT & LUNDY, LLC and PREMIER ENGINEERING SERVICES, INC. Fourth-Party Defendant. | **C.A. No. 05-066-ML** |

**CERTIFIED POWER SYSTEMS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE* TO BAR THE EXPERT TESTIMONY OF ARA NALBANDIAN**

**Nalbandian Lacks The Necessary Expertise to Offer an Opinion on the Cause and Origin of the Plenum Fire**

Ara Nalbandian is a mechanical engineer who, along with two other Thielsch engineers, Michael Cooney and Robert Basile, co-authored Thielsch's January 18, 2005 expert report. (Copy of text only of Thielsch report is annexed as Exhibit A.) Mr. Nalbandian's qualifications

are reflected in his resume. (Copy of Nalbandian resume is annexed as Exhibit B.). The deposition testimony of Mr. Nalbandian demonstrated that he is not qualified by training or experience as an expert in determining the cause and origin of fires. While he has credentials as an engineer, the cause and origin of fires is not an engineering question. His training and practice is in the area of "mechanical materials and metallurgy." (Nalbandian Transcript, p. 4, lines 15-17.[1]) He further admits that throughout his career he has never worked as a welder. (Nalbandian Transcript, p. 5, lines 24, p. 6, lines 1-18.)

A look at the type of expertise that experts in the cause and origin of fires typically have, makes it clear that Mr. Nalbandian has no such training. In Ferrara & DiMercurio v. St. Paul Mercury Ins. Co., 240 F.3d 1, 8 (1st Cir. 2001) the Court of Appeals discussed the qualifications of a witness who was allowed by the trial court to testify as a cause and origin expert. The Ferrara court notes at page 8:

> Malcolm's qualifications as a fire analyst are, in fact, considerable. He has master and journeyman electrical licenses from Massachusetts and New Hampshire; he has been consulting as a fire investigator since 1963; and, in 1991, he was qualified as a Certified Fire Investigator by the International Association of Arson Investigators. Malcolm had been qualified twice before as an expert in this case to render an opinion regarding the electrical system's contribution to the fire aboard the vessel. After hearing Malcolm's testimony regarding his knowledge, skill, experience and training in fire analysis, Judge Harrington exercised sound discretion in concluding that Malcolm was qualified to render an expert opinion on cause and origin as well as on the vessel's electrical system. *See* Richmond Steel, 954 F.2d at 20.

Mr. Nalbandian does not profess to have any training, education or experience even remotely comparable to that described above. He has not worked in the field of fire investigation, has not been certified as a Fire Investigator, and has not taken any courses in cause and origin investigation. (Nalbandian Transcript, p. 96, lines 12-15.) He has never been qualified by a court to testify as a cause and origin expert. (Nalbandian Transcript, p. 88, lines 1-12.) He professes no

[1] The relevant pages of the June 22, 2006 Nalbandian deposition transcript are annexed as Exhibit C.

expertise in the interpretation of burn patterns, nor does he claim to have any on the job training with someone who does have such expertise.

The admission of Mr. Nalbandian's testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides in relevant part:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill experience, training, or education, may testify thereto in the form of an opinion or otherwise.

This Court as well as the First Circuit has long recognized its role to act as gatekeeper and admit only expert evidence that rests on a reliable foundation and is relevant to the particular facts of the case. See, Hall v. Eklof Marine Corporation, 399 F.Supp.2d 369, 381 (D.R.I. 2004); Cipollone v. Yale Industrial Products, Inc., 202 F.3d 376, 380 (1st Cir. 2000). Likewise, the Rhode Island Supreme Court has held that expert testimony must be reliable and the opinions must be predicated on facts legally sufficient to support the conclusions. In Kurczy v. St. Joseph Veterans Association, Inc., the court stated:

> "Before admitting expert testimony, the trial justice must evaluate whether the testimony that a party seeks to present to the jury is `relevant, within the witness' expertise, and based on an adequate factual foundation." Id. at 940.

An expert must show a "threshold" competency, as the court held in Levin v. Dalva Brothers, Inc., _F.3d_, 2006 WL 2348547, 7 (1st Cir. 2006):

> Among other requirements, Fed. R. Evid. 702 mandates that a putative expert be qualified to testify by knowledge, skill, experience, training or education. *See* Diefenbach v. Sheridan Transp., 229 F.3d 27, 30 (1st Cir. 2000). Under this rule, a testifying expert "should have achieved a meaningful threshold of expertise" in the given area. Prado Alvarez v. R.J. Reynolds Tobacco Co., Inc., 405 F.3d 36, 40 (1st Cir. 2005). That "a witness qualifies as an expert with respect to certain matters or areas of knowledge, [does not mean] that he or she is qualified to express expert opinions as to other fields." Nimely v. City of New York, 414 F.3d 381, 399 n. 13 (2d Cir. 2005).

In order to claim competence in the area of the cause, origin and investigation of fires, there needs to be some showing that the expert has had some training in the principals of fire investigation. There is no indication in either the January 18, 2005 Thielsch report (Exhibit A) or Mr. Nalbandian's resume (Exhibit B) that this is the case. He does not opine in terms of burn patterns or other similar observations that would be relied on by a cause and origin expert. In fact, the only item that he points to as evidence that the C3 weld caused the fire is the fact that smoke was seen coming from the plenum about 10 to 20 minutes after the C3 weld was completed. Clearly this logic, among other things, does not allow for possibilities that the fire had been smoldering for a longer time.

The type of facts upon which a cause and origin expert typically relies were detailed by the Court of Appeals for the First Circuit in U.S. v. Diaz, 300 F.3d 66, 76 (1st Cir. 2002) when the court discussed the expertise of the government's expert:

> Moreover, Dorsey and Haynes explained in detail the methods and principles they employed in determining the cause and origin of fires, emphasizing the significance of various burn patterns. They articulated their bases for eliminating alternative explanations for the fire. We note that other courts have allowed the use of similar cause-and-origin testimony. *See*, *e.g.*, Travelers Prop. & Casualty Corp. v. General Electric Co., 150 F.Supp.2d 360, 366 (D. Conn. 2001) (challenged expert testimony found to be "product of reliable principles and methods" where cause-and-origin opinion based upon analysis of burn patterns); Abu-Hashish v. Scottsdale Ins. Co., 88 F.Supp.2d 906 (N.D.Ill. 2000). Cf. United States v. Ruiz, 105 F.3d 1492, 1497 (1st Cir. 1997) (noting significance of burn-pattern testimony in ruling on sufficiency of evidence to support arson conviction).

This lack of any such "reliable principles" illustrates the fatal deficiencies in FPLE's proffer of Nalbandian as an expert in the cause and origin of fires.

**The Thielsch Report Fails To Set Forth A Sufficient Factual Basis Regarding The Cause And Origin Of The Plenum Fire**

It is Nalbandian's theory that the fire started when Zampell was welding on the outside of the stainless steel portion of the air inlet plenum and ignited the evaporative cooling media that was located inside the plenum. Central to this theory is Nalbandian's belief that the evaporative cooling material was flush against the inside of the stainless steel portion of the plenum wall in the area of the C3 weld. However, Nalbandian admitted that he did not know if the media was actually flush against the stainless steel wall of the plenum as he assumes in his opinion. (Nalbandian Transcript, p. 27, lines 13-18.) In fact, he did not know whether the evaporative media extended beyond the channel inside of the plenum that was designed to hold the media and acted as a barrier between the exterior stainless steel and the evaporative cooling media. (Nalbandian Transcript, p. 34, lines 17-19, pp. 109-111.)

In addition, Nalbandian opines that at the weld designated as C3, there was a "burn through" that ignited the media (Nalbandian Transcript, p. 67, lines 1-4), and that the media could ignite at a temperature of 350 degrees. (Nalbandian Transcript, p. 68, lines 13-18.) Despite this theory, no one at Thielsch ever investigated to determine whether the heat created by the weld could have ignited the evaporative cooling media, given the relative proximity of the weld to the media. (Nalbandian Transcript, p. 69, lines 7-14, p. 70, lines 6-17.)

To be admissible, not only must an opinion come from an expert with the proper qualifications but it must also be based on fact. As the Rhode Island Supreme Court stated in Kurczy v. St. Joseph Veterans Assn., 820 A.2d 929, 940 (R.I. 2003):

> Here, the trial justice ruled that Dr. DuVally's proffered testimony concerning the asserted mechanism of Lucas's injuries was "absolutely unsupported by any evidence in this case whether contained in the medical records, depositions or in-court testimony." To be admissible, "an expert's opinion must be predicated upon facts legally sufficient to form a basis for his

> conclusion." Raimbeault, 772 A.2d at 1062 (quoting Rodriquez, 706 A.2d at 924.)

Based upon the testimony of Mr. Nalbandian, his opinions regarding the cause and origin of the fire are not based on fact but rather on assumptions with respect to the location of the evaporative media. Moreover, facts that might logically allow one to opine as to the cause and origin are not included in the Thielsch report.

**The Cause And Origin Opinions Of Ara Nalbandian Must Be Barred Because They Do Not Rise To The Necessary Level Of Reasonable Probability**

In order for expert testimony to be admissible, the testimony must be set forth in terms of reasonable probability. An expert cannot testify to mere possibilities as is done by the Thielsch experts. While the January 18, 2005 Thielsch report sets forth its conclusions with a high confidence, it is clear from the testimony that it cannot meet the standard of "reasonable probability."

Michael Cooney testified that even if the welding performed by Zampell was done properly, it would still be possible that the evaporative cooling materials would have caught on fire. (Cooney Transcript, p. 90, lines 1-10.[2]) Moreover, as set forth above, neither Cooney nor Nalbandian could state with any degree of certainty, let alone to the requisite degree of "reasonable probability," whether the evaporative cooling media reached the area of the C3 weld. Clearly, if FPLE's experts cannot testify specifically about either the proximity of the evaporative cooling media to the location of the C3 weld or whether a properly executed weld at the C3 location would not have produced sufficient heat to ignite the evaporative cooling media, FPLE's experts cannot testify that it is reasonably probable that the welding caused the fire.

[2] The relevant pages of the July 12, 2006 Cooney deposition transcript are annexed as Exhibit D.

In DaSilva v. American Brands, Inc., 845 F.2d 356, 361 (1st Cir. 1988), the First Circuit set forth the requirement that opinions be offered in terms of "reasonable probability." The court stated:

> Dr. Robbins was subjected to extensive, exhaustive and, at times, quite antagonistic cross-examination. While at times he did not choose the precisely proper wording for his responses, those responses generally reflected a conclusion based on a reasonable degree of medical certainty. As an expert, he was not required to fully explain with certainty the origin of every injury suffered by the victim. Rather, he could express his conclusions in terms of reasonable probabilities, based on his expertise applied to the facts available to him.

Similarly in Data General Corp. v. Grumman Systems Support Corp., 36 F.3d 1147, 1170 –1171 (1st Cir. 1994), the court in deciding a patent infringement case considered the standard of "reasonable probability" in terms of tort damages. The court held:

> In defining that burden, it is useful to borrow familiar tort law principles of causation and damages. See Deltak, Inc. v. Advanced Sys., Inc., 574 F.Supp. 400, 403 (N.D.Ill.1983) *1171 (Posner, J., sitting by designation) (referring to "normal tort damages principles" in discussion of copyright damages), vacated on other grounds, 767 F.2d 357 (7th Cir. 1985); 3 Nimmer § 14.02[A], at 14-11, 14-20 to 14-21 n. 49.8 (alluding to notions of "but for" and proximate causation). Thus, the plaintiff should first establish that the infringement was the cause-in-fact of its loss by showing with reasonable probability that, but for the defendant's infringement, the plaintiff would not have suffered the loss. See, e.g., Robert R. Jones Assocs. v. Nino Homes, 858 F.2d 274, 281 (6th Cir. 1988); 3 Nimmer, § 14.02[A], at 14-9; cf. Harper & Row, 471 U.S. at 567, 105 S.Ct. at 2234 (noting that in rebuttal defendant may "show that this damage would have occurred [anyway] had there been no taking of copyrighted expression"); Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476, 507, 84 S.Ct. 1526, 1543, 12 L.Ed.2d 457 (1964) (Emphasis added)

The Supreme Court of Rhode Island applied the same standard in Sweet v. Hemingway Transport, Inc., 114 R.I. 348, 355, 333 A.2d 411, 415 (R.I. 1975), wherein the court held:

> It is well settled here in this state that when the only evidence offered to establish causal relationship between one person's

> activities and another's injuries is the testimony of a medical expert, such evidence must speak in terms of 'probabilities' rather than 'possibilities.' Suffoletta v. Ricci Drain Laying Co., 113 R.I. 114, 319 A.2d 19 (1974); Taglianetti v. Jo-Dee Corp., 103 R.I. 552, 239 A.2d 192 (1968); Woods v. Safeway System, Inc., 101 R.I. 343, 223 A.2d 347 (1966). Expert testimony, if it is to have any evidentiary value, must state with some degree of positiveness that a given state of affairs is the result of a given cause. Absolute certainty, of course, is not required. In those cases where expert testimony is relied on to show that out of several potential causes a given result came from one specific cause the expert must report that the result in question 'most probably' came from the cause alleged. Tabuteau v. London Guar. & Accident Co., 351 Pa. 183, 40 A.2d 396 (1945).

Based on the fact that the Thielsch opinions with respect to cause and origin of the December 3, 2004 fire do not meet the "reasonable probability" standard, they must not be presented to the jury.

WHEREFORE, plaintiff/defendant on counterclaim/third-party plaintiff, Certified Power Systems Inc., seeks an order *in limine* barring the testimony of Ara Nalbandian with respect to either the cause and origin of the plenum fire.

CERTIFIED POWER SYSTEMS, INC.
By their Attorneys,

/s/ Jessica L. Papazian-Ross

Jessica L. Papazian-Ross, Esq. (#3905)
***Visconti & Boren Ltd***.
55 Dorrance Street
Providence, RI 02903
Tel. No. (401) 331-3800
Fax No. (401) 421-9302
JLPR@viscontilaw.com

*Pro hac vice counsel*
Mark Robert Vespole, Esq.
***Tressler, Soderstrom, Maloney & Priess, LLP***
744 Broad Street, Suite 1510
Newark, NJ 07102
Tel No. (973) 848-2900
Fax No. (973) 623-0405

CERTIFICATION OF SERVICE

The undersigned hereby certifies that this document has been filed electronically on this 12th of September, 2006 and is available for viewing and downloading to the ECF registered counsel of records:
Via Electronic Service/ECF:

**Armando E. Batastini**
abastini@eapdlaw.com rjil@eapdlaw.com

**Janet R. Davis**
janet.davis@mbtlaw.com

**Mark W. Freel**
Mfreel@eapdlaw.com

**John R. Mahoney**
JackMahoney@amplawllp.com

**Matthew Thomas Oliverio**
mto@om-rilaw.com

**Joseph John Reale, Jr.**
realse@conversent.net

**Stephen B. Lang**
slang@hhc-law.com

The undersigned hereby certifies that on this 12th day of September, 2006 a true copy of the within document was forwarded via U.S. Mail, postage pre-paid, to the following counsel of record:
Via U.S. Mail, postage pre-paid:

**Georgene M. Wilson**
**Andrew M. Hutchison**
Meckler Bulger & Tilson LLP
Suite 1800
123 North Wacker Drive
Chicago, IL 60606

/s/ Jessica L. Papazian-Ross
Jessica L. Papazian-Ross, Esq. (#3905)
***Visconti & Boren Ltd*.**
55 Dorrance Street
Providence, RI 02903
Tel. No. (401) 331-3800
Fax No. (401) 421-9302
JLPR@viscontilaw.com