**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| CERTIFIED POWER SYSTEMS, INC.,<br><br>Plaintiff,<br>v.<br><br>RHODE ISLAND STATE ENERGY STATUTORY TRUST 2000, FPLE RHODE ISLAND STATE ENERGY, L.P. and FPLE RHODE ISLAND STATE ENERGY GP, INC.,<br><br>Defendants,<br>v.<br><br>CERTIFIED POWER SYSTEMS, INC.,<br><br>Defendant on Counterclaim/Third-Party Plaintiff,<br><br>v.<br><br>ZAMPELL REFRACTORIES, INC.,<br><br>Third-Party Defendant. | ) | **C.A. No. 05-066-ML** |

**<u>PLAINTIFF/COUNTERCLAIM DEFENDANT/THIRD-PARTY PLAINTIFF, CERTIFIED POWER SYSTEMS, INC.'S MOTION *IN LIMINE* TO BAR THE EXPERT TESTIMONY OF MICHAEL COONEY REGARDING THE CAUSE AND ORIGIN OF THE PLENUM FIRE AND ALL TESTIMONY REGARDING THE QUALITY OF THE WELDS ON THE PROJECT</u>**

Pursuant to Federal Rules of Evidence 401, 402, 403, 702 and 704, plaintiff/defendant on counterclaim/third-party plaintiff, Certified Power Systems Inc. ("CPS"), by its attorneys, Jessica L. Papazian-Ross of Visconti & Boren Limited and Mark Robert Vespole of Tressler, Soderstrom, Maloney & Priess, LLP, hereby moves the Court for an order *in limine* to bar the expert testimony of Michael Cooney regarding the cause and origin of the December 3, 2004 fire or regarding the quality of the welds on the project. In support of this motion, CPS states:

THODE ISLAND STATE ENERGY STATUTORY TRUST 2000, FPLE RHODE ISLAND STATE ENERGY, L.P. and FPLE ROHDE ISLAND STATE ENERGY GP, INC., (hereinafter collectively referred to as "FPLE") seek to rely upon the expert testimony of Michael Cooney of Thielsch Engineering with respect to the cause and origin of the fire on December 3, 2004. In addition, his testimony has touched upon his views regarding the quality of the welding on the plenum. However, it is clear from Mr. Cooney's testimony that he does not have the qualifications and expertise to render an opinion regarding the cause and origin of the fire, does not have a sufficient factual basis to support his opinions and is unable to testify based upon reasonable probability that the fire was caused by improper welding. Without a reliable foundation, the expert's testimony is of no value to the jury.

Thus, for the reasons set forth in the attached Memorandum of Law in support of this Motion, this Court should grant the Motion *in Limine* and bar the testimony of Michael Cooney and/or conduct a preliminary hearing to address the issues raised herein.

Plaintiff/Third-Party Counterclaim Defendant,
CERTIFIED POWER SYSTEMS, INC.
By its Attorneys,

/s/ Jessica L. Papazian-Ross
Jessica L. Papazian-Ross, Esq. (#3905)
***Visconti & Boren Ltd.***
55 Dorrance Street
Providence, RI 02903
Tel. No. (401) 331-3800
Fax No. (401) 421-9302
JLPR@viscontilaw.com

**Pro hac vice counsel**
Mark Robert Vespole
Tressler, Soderstrom, Maloney & Priess
744 Broad Street, Suite 1510
Newark, NJ 07102
Tel. No. (973) 848-2900
Fax No. (973) 623-0405

***CERTIFICATION OF SERVICE***

The undersigned hereby certifies that this document has been filed electronically on this 13th of September, 2006 and is available for viewing and downloading to the ECF registered counsel of records:
Via Electronic Service/ECF:

**Armando E. Batastini**
abastini@eapdlaw.com rjil@eapdlaw.com

**Janet R. Davis**
janet.davis@mbtlaw.com

**Mark W. Freel**
Mfreel@eapdlaw.com

**John R. Mahoney**
JackMahoney@amplawllp.com

**Matthew Thomas Oliverio**
mto@om-rilaw.com

**Joseph John Reale, Jr.**
realse@conversent.net

**Stephen B. Lang**
slang@hhc-law.com

The undersigned hereby certifies that on this 13th day of September, 2006 a true copy of the within document was forwarded via U.S. Mail, postage pre-paid, to the following counsel of record:
Via U.S. Mail, postage pre-paid:

**Georgene M. Wilson**
**Andrew M. Hutchison**
Meckler Bulger & Tilson LLP
Suite 1800
123 North Wacker Drive
Chicago, IL 60606

/s/ Jessica L. Papazian-Ross
Jessica L. Papazian-Ross, Esq. (#3905)
***Visconti & Boren Ltd***.
55 Dorrance Street
Providence, RI 02903
Tel. No. (401) 331-3800
Fax No. (401) 421-9302
JLPR@viscontilaw.com

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| CERTIFIED POWER SYSTEMS, INC., Plaintiff, | ) | |
| v. | ) | |
| RHODE ISLAND STATE ENERGY STATUTORY TRUST 2000, FPLE RHODE ISLAND STATE ENERGY, L.P. and FPLE RHODE ISLAND STATE ENERGY GP, INC., Defendants, | ) | **C.A. No. 05-066-ML** |
| v. | ) | |
| CERTIFIED POWER SYSTEMS, INC., Defendant on Counterclaim/Third-Party Plaintiff, | ) | |
| v. | ) | |
| ZAMPELL REFRACTORIES, INC., Third-Party Defendant, | ) | |
| v. | ) | |
| SARGENT & LUNDY, LLC and PREMIER ENGINEERING SERVICES, INC. Fourth-Party Defendant. | ) | |

**CERTIFIED POWER SYSTEMS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE* TO BAR THE EXPERT TESTIMONY OF MICHAEL COONEY**

**Michael Cooney Lacks The Necessary Expertise to Offer an Opinion on the Cause and Origin of the Plenum Fire or the Quality of the Zampell Welds**

Michael Cooney is one of three authors of the Thielsch expert report of January 18, 2005 (annexed hereto as Exhibit A), although admittedly he only prepared pages 6 to 12 of the report, which deal with metallurgical analysis of the welds in question. Beyond that, Cooney

testified he reviewed the balance of the report and concurred with its findings. However, Mr. Cooney gives no indication that he has any training regarding the science of determining the cause and origin of fires so as to be qualified to agree or disagree with the findings. (A copy of Cooney's resume is annexed hereto as Exhibit B.) Moreover he admits that he is not an expert in welding and did not intend to offer an opinion on the welding done by Zampell. It has been represented by counsel for FPLE that Ara Nalbandian will be its cause and origin expert at trial.

A look at the type of expertise that experts in the cause and origin of fires typically have, makes it clear that Mr. Cooney has no such training. In Ferrara & DiMercurio v. St. Paul Mercury Ins. Co., 240 F.3d 1, 8 (1st Cir. 2001) the Court of Appeals discussed the qualifications of a witness who was allowed by the trial court to testify as a cause and origin expert. The Ferrara court notes at page 8:

> Malcolm's qualifications as a fire analyst are, in fact, considerable. He has master and journeyman electrical licenses from Massachusetts and New Hampshire; he has been consulting as a fire investigator since 1963; and, in 1991, he was qualified as a Certified Fire Investigator by the International Association of Arson Investigators. Malcolm had been qualified twice before as an expert in this case to render an opinion regarding the electrical system's contribution to the fire aboard the vessel. After hearing Malcolm's testimony regarding his knowledge, skill, experience and training in fire analysis, Judge Harrington exercised sound discretion in concluding that Malcolm was qualified to render an expert opinion on cause and origin as well as on the vessel's electrical system. *See* Richmond Steel, 954 F.2d at 20.

In reviewing the Thielsch report and Mr. Cooney's resume and deposition, there is no indication that he has any training comparable to the training described in Ferrara. There is no indication that he has worked in the field of fire investigation or that he has been certified as a Fire Investigator or has taken any courses in cause and origin investigation.

The admission of Mr. Cooney's testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides in relevant part:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill experience, training, or education, may testify thereto in the form of an opinion or otherwise.

This Court as well as the First Circuit has long recognized that it is the Court's role to act as gatekeeper and admit only expert evidence that rests on a reliable foundation and is relevant to the particular facts of the case. See, Hall v. Eklof Marine Corporation, 399 F.Supp.2d 369, 381 (D.R.I. 2004); Cipollone v. Yale Industrial Products, Inc., 202 F.3d 376, 380 (1st Cir. 2000). Likewise, the Rhode Island Supreme Court has held that expert testimony must be reliable and the opinions must be predicated on facts legally sufficient to support the conclusions. In Kurczy v. St. Joseph Veterans Association, Inc., the court stated:

> "Before admitting expert testimony, the trial justice must evaluate whether the testimony that a party seeks to present to the jury is `relevant, within the witness' expertise, and based on an adequate factual foundation." Id. at 940.

An expert must show a "threshold" competency, as the court held in Levin v. Dalva Brothers, Inc., __F.3d__, 2006 WL 2348547, 7 (C.A.1, 2006)

> Among other requirements, Fed.R.Evid. 702 mandates that a putative expert be qualified to testify by knowledge, skill, experience, training or education. *See* Diefenbach v. Sheridan Transp., 229 F.3d 27, 30 (1st Cir. 2000). Under this rule, a testifying expert "should have achieved a meaningful threshold of expertise" in the given area. Prado Alvarez v. R.J. Reynolds Tobacco Co., Inc., 405 F.3d 36, 40 (1st Cir. 2005). That "a witness qualifies as an expert with respect to certain matters or areas of knowledge, [does not mean] that he or she is qualified to express expert opinions as to other fields." *Nimely v. City of New York*, 414 F.3d 381, 399 n. 13 (2d Cir.2005).

One would expect that in order to claim competence in the area of cause and origin investigation there would be some showing that the expert has had some training in the principals of fire investigation. There is no indication in either the Thielsch report, Cooney's

resume or his deposition that any of the customary investigative inquiries were made by Cooney with respect to cause and origin of the December 3, 2004 fire. The report does not address in any significant detail the issue of burn patterns or other similar observations that would be relied on by a cause and origin expert. In fact, the only evidence that the report points to as evidence that the C3 weld caused the fire is the fact that smoke was seen coming from the plenum 10 to 20 minutes after the C3 weld was done. Clearly this logic does not allow for possibilities that the fire had been smoldering for a longer time but it was not until the smoke became visible, that there was an awareness of the fire.

The type of facts that a cause and origin expert would rely on were detailed by the Court of Appeals for the First Circuit in U.S. v. Diaz, 300 F.3d 66, 76 (C.A.1, 2002) when the court discussed the expertise of the State's expert:

> Moreover, Dorsey and Haynes explained in detail the methods and principles they employed in determining the cause and origin of fires, emphasizing the significance of various burn patterns. They articulated their bases for eliminating alternative explanations for the fire. We note that other courts have allowed the use of similar cause-and-origin testimony. *See, e.g., Travelers Prop. & Casualty Corp. v. General Electric Co.,* 150 F.Supp.2d 360, 366 (D.Conn.2001) (challenged expert testimony found to be "product of reliable principles and methods" where cause-and-origin opinion based upon analysis of burn patterns); *Abu-Hashish v. Scottsdale Ins. Co.,* 88 F.Supp.2d 906 (N.D.Ill.2000). *Cf. United States v. Ruiz,* 105 F.3d 1492, 1497 (1st Cir.1997) (noting significance of burn-pattern testimony in ruling on sufficiency of evidence to support arson conviction).

This lack of reliance on any such "reliable principals" illustrates the fatal deficiencies in FPL's offering Cooney's testimony as an expert on the cause and origin of this fire.

In addition, Mr. Cooney admits that he is not an expert on welding and testified that he did not give an opinion in this matter with regard to the welding. (Cooney Transcript, p. 27,

lines 7-17.[1]) Therefore his testimony regarding the C3 weld should not be allowed or, at the very least, restricted to his metallurgical analysis.

**The Thielsch Report Fails To Set Forth A Sufficient Factual Basis Regarding The Cause And Origin Of The Plenum Fire**

In the Thielsch report it is opined that the fire started as a result of an improper weld on the outside of the plenum wall which ignited the evaporative media on the inside of the wall. Central to this theory is the belief that the evaporative cooling material was flush against the plenum wall in the area of the C3 weld. However, Mr. Cooney admits that you could not tell how far the media extended by walking through the plenum. (Cooney Transcript, p. 73, lines 21-23.) Moreover, his co-author, Ara Nalbandian admitted that he did not know if the media was actually flush against the stainless steel wall of the plenum as he assumes in his opinion. (Nalbandian Transcript, p. 27, lines 13-18.[2]) In fact, he did not know whether the evaporative media extended beyond the channel inside of the plenum that was designed to hold the media (Nalbandian Transcript, p. 34, lines 17-19, pp. 109-111). Similarly, Mr. Cooney testified that he could not tell by a visual inspection of the plenum whether the evaporative cooling media material ran beyond the top of the plenum channel (Cooney Transcript, p. 48, lines 17-21). He further admitted that he did not do any analysis as to whether a proper weld could have caused this fire. (Cooney Transcript, p. 66, lines 6-9).

Similarly Mr. Nalbandian opines that at a weld designated as C3, there was a "burn through" that ignited the media (Nalbandian Transcript, page 67, lines 1-4), and that the media could ignite at a temperature of 350 degrees. (Nalbandian Transcript, p. 68, lines 13-18.) Despite this theory, no one at Thielsch ever investigated to determine whether the heat generated by the weld could have ignited the evaporative cooling media, given the proximity of the welding to the media. (Nalbandian Transcript, page 69, lines 7-14, page 70, lines 6-17.)

---

[1] The relevant pages of the July 12, 2006 Cooney deposition transcript are annexed hereto as Exhibit C.
[2] The relevant pages of the June 22, 2006 Nalbandian deposition transcript are annexed hereto as Exhibit D.

Not only must an expert opinion come from an expert with the proper qualifications but it must also be based on fact. As the Rhode Island Supreme Court stated in Kurczy v. St. Joseph Veterans Assn., 820 A.2d 929, 940 (R.I. 2003):

> Here, the trial justice ruled that Dr. DuVally's proffered testimony concerning the asserted mechanism of Lucas's injuries was "absolutely unsupported by any evidence in this case whether contained in the medical records, depositions or in-court testimony." To be admissible, "an expert's opinion must be predicated upon facts legally sufficient to form a basis for his conclusion." Raimbeault, 772 A.2d at 1062 (quoting Rodriquez, 706 A.2d at 924.)

Thielsch's conclusion that the fire was caused by a burn through igniting the evaporative media is based on the unsupported assumption that the evaporative cooling media that was in place on December 3, 2004 continued above the steel channel and was flush against the interior of the plenum at the point of the C3 weld. However, that assumption is nothing more than speculation and conjecture, and was never verified by anyone at Thielsch.

**The Cause And Origin Opinions Of Michael Cooney Must Be Barred Because They Do Not Rise To The Necessary Level Of Certainty That Is Required Under The Law Of Rhode Island**

In order for expert testimony to be admissible, it must be grounded in terms of reasonable probability. An expert cannot testify to mere possibilities, as is done by the Thielsch experts. The Thielsch report in general and Cooney's testimony in particular cannot meet the standard of "reasonable probability."

Michael Cooney testified that even if the Zampell welding had been done properly, it would still be possible for the evaporative cooling media to ignite. (Cooney Transcript, p. 90, lines 1-10). Moreover, as set forth above, neither Cooney nor Nalbandian knew with any degree of certainty, let alone to a degree of "reasonable probability," about the proximity between the evaporative cooling media and the C3 weld, or the amount of heat generated by a properly executed weld. With these undisputed facts, Cooney is not in a position to give an

opinion that the welding, or any of the alleged deficiencies in Zampell's welds, based upon his metallurgical analysis, were a proximate cause of the fire.

In DaSilva v. American Brands, Inc., 845 F.2d 356, 361 (C.A.1, 1988) the First Circuit Court of Appeals set forth the requirement that opinions be offered in terms of "reasonable probability." The court stated:

> The record does not support this contention. Dr. Robbins was subjected to extensive, exhaustive and, at times, quite antagonistic cross-examination. While at times he did not choose the precisely proper wording for his responses, those responses generally reflected a conclusion based on a reasonable degree of medical certainty. As an expert, he was not required to fully explain with certainty the origin of every injury suffered by the victim. Rather, he could express his conclusions in terms of reasonable probabilities, based on his expertise applied to the facts available to him.

Similarly in Data General Corp. v. Grumman Systems Support Corp., 36 F.3d 1147, 1170–1171 (C.A.1, 1994) the court in deciding a patent infringement case considered the standard of "reasonable probability" in terms of tort damages. The court held:

> In defining that burden, it is useful to borrow familiar tort law principles of causation and damages. See Deltak, Inc. v. Advanced Sys., Inc., 574 F.Supp. 400, 403 (N.D.Ill.1983) *1171 (Posner, J., sitting by designation) (referring to "normal tort damages principles" in discussion of copyright damages), vacated on other grounds, 767 F.2d 357 (7th Cir. 1985); 3 Nimmer § 14.02[A], at 14-11, 14-20 to 14-21 n. 49.8 (alluding to notions of "but for" and proximate causation). Thus, the plaintiff should first establish that the infringement was the cause-in-fact of its loss by showing with reasonable probability that, but for the defendant's infringement, the plaintiff would not have suffered the loss. See, e.g., Robert R. Jones Assocs. v. Nino Homes, 858 F.2d 274, 281 (6th Cir. 1988); 3 Nimmer, § 14.02[A], at 14-9; cf. Harper & Row, 471 U.S. at 567, 105 S.Ct. at 2234 (noting that in rebuttal defendant may "show that this damage would have occurred [anyway] had there been no taking of copyrighted expression"); Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476, 507, 84 S.Ct. 1526, 1543, 12 L.Ed.2d 457 (1964) (Emphasis added)

The Supreme Court of Rhode Island similarly defined the standard in Sweet v. Hemingway Transport, Inc., 114 R.I. 348, 355, 333 A.2d 411, 415 (R.I. 1975), wherein the court held:

> It is well settled here in this state that when the only evidence offered to establish causal relationship between one person's activities and another's injuries is the testimony of a medical expert, such evidence must speak in terms of 'probabilities' rather than 'possibilities.' Suffoletta v. Ricci Drain Laying Co., 113 R.I. 114, 319 A.2d 19 (1974); Taglianetti v. Jo-Dee Corp., 103 R.I. 552, 239 A.2d 192 (1968); Woods v. Safeway System, Inc., 101 R.I. 343, 223 A.2d 347 (1966). Expert testimony, if it is to have any evidentiary value, must state with some degree of positiveness that a given state of affairs is the result of a given cause. Absolute certainty, of course, is not required. In those cases where expert testimony is relied on to show that out of several potential causes a given result came from one specific cause the expert must report that the result in question 'most probably' came from the cause alleged. Tabuteau v. London Guar. & Accident Co., 351 Pa. 183, 40 A.2d 396 (1945).

Based on the forgoing it is clear that since Cooney is unable to offer his opinion to a reasonable degree of probability, his opinions regarding both the cause and origin of the fire and the causal connection between the Zampell welds and the ignition of the evaporative cooling media, cannot go to the jury.

WHEREFORE, plaintiff/defendant on counterclaim/third-party plaintiff, Certified Power Systems Inc., seeks an order *in limine* barring the testimony of Michael Cooney, with respect to either the cause and origin of the plenum fire and all testimony regarding any causal connection between the welding and the December 3, 2004 fire.

CERTIFIED POWER SYSTEMS, INC.
By their Attorneys,

/s/ Jessica L. Papazian-Ross

Jessica L. Papazian-Ross, Esq. (#3905)
***Visconti & Boren Ltd***.
55 Dorrance Street
Providence, RI 02903
Tel. No. (401) 331-3800
Fax No. (401) 421-9302
JLPR@viscontilaw.com

*Pro hac vice counsel*
Mark Robert Vespole, Esq.
***Tressler, Soderstrom, Maloney & Priess, LLP***
744 Broad Street, Suite 1510
Newark, NJ 07102
Tel No. (973) 848-2900
Fax No. (973) 623-0405

***CERTIFICATION OF SERVICE***

The undersigned hereby certifies that this document has been filed electronically on this 13th of September, 2006 and is available for viewing and downloading to the ECF registered counsel of records:

Via Electronic Service/ECF:

**Armando E. Batastini**
abastini@eapdlaw.com rjil@eapdlaw.com

**Janet R. Davis**
janet.davis@mbtlaw.com

**Mark W. Freel**
Mfreel@eapdlaw.com

**John R. Mahoney**
JackMahoney@amplawllp.com

**Matthew Thomas Oliverio**
mto@om-rilaw.com

**Joseph John Reale, Jr.**
realse@conversent.net

**Stephen B. Lang**
slang@hhc-law.com

The undersigned hereby certifies that on this 13th day of September, 2006 a true copy of the within document was forwarded via U.S. Mail, postage pre-paid, to the following counsel of record:
Via U.S. Mail, postage pre-paid:

**Georgene M. Wilson**
**Andrew M. Hutchison**
Meckler Bulger & Tilson LLP
Suite 1800
123 North Wacker Drive
Chicago, IL 60606

/s/ Jessica L. Papazian-Ross
Jessica L. Papazian-Ross, Esq. (#3905)
***Visconti & Boren Ltd***.
55 Dorrance Street
Providence, RI 02903
Tel. No. (401) 331-3800
Fax No. (401) 421-9302
JLPR@viscontilaw.com