UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CERTIFIED POWER SYSTEMS, INC.,<br>Plaintiff, | : | |
| vs. | : | C.A. No. 05-066-ML |
| RHODE ISLAND STATE ENERGY STATUTORY TRUST 2000, FPLE RHODE ISLAND STATE ENERGY, L.P. and FPLE RHODE ISLAND STATE ENERGY GP, INC.,<br>Defendants, | : | |
| vs. | : | |
| CERTIFIED POWER SYSTEMS, INC.,<br>Defendant on Counterclaim/<br>Third-Party Plaintiff, | : | |
| vs. | : | |
| ZAMPELL REFRACTORIES, INC.,<br>Third-Party Defendant, | : | |
| vs. | : | |
| SARGENT & LUNDY, LLC and PREMIER ENGINEERING SERVICES, INC.,<br>Fourth-Party Defendants. | : | |

**RISE DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION IN LIMINE PRECLUDING THE ADMISSION OF EXTRINSIC EVIDENCE SEEKING TO VARY PLAINTIFF'S CONTRACTUAL OBLIGATIONS**

Defendants Rhode Island State Energy Statutory Trust 2000, FPLE Rhode Island State Energy, L.P., and FPLE Rhode Island State Energy GP, Inc. (sometimes collectively, "RISE") submit this reply brief in further support of their motion in limine to preclude the admission of extrinsic evidence seeking to vary the contractual obligations of Plaintiff Certified Power Systems, Inc. ("CPS").

## Discussion

Arguments made by CPS and by Third-Party Defendant Zampell Refractories, Inc. ("Zampell") in their objections to the instant motion demonstrate that both CPS and Zampell intend to introduce evidence of certain industry standards, or other codes or regulations, in order to vary the duties and obligations of the parties in ways that are inconsistent with the clear and unambiguous terms of the RISE-CPS Contract (the "Contract"). Specifically, CPS and Zampell propose to introduce certain sections of the NFPA in an effort to impose upon RISE an obligation to inform CPS and Zampell about site conditions at the Rhode Island State Energy Center, and otherwise supervise the work of CPS and Zampell relative to compliance with governing codes and standards. As briefed in full in RISE's original memorandum of law in support of the instant motion, the responsibility for understanding all relevant site conditions, and for compliance with all applicable codes, standards, and regulations, resided solely with CPS under the Contract. (See, e.g., Contract General Conditions §§ 4.1, 4.6, 58.1 & 63; RISE-CPS Job Specifications §§ 103.1 & 103.3).[1]

CPS's and Zampell's effort to alter the relevant contractual provisions is entirely at odds with the parol evidence rule. See, e.g., Dudzik v. Leesona Corp., 473 A.2d 762, 765 (R.I. 1984). In order to avoid the preclusive effect of that rule, CPS's and Zampell's Oppositions make three interrelated arguments: (1) RISE's obligations pursuant to OSHA, State Fire Code and NFPA standards are non-delegable; (2) those standards are implied terms of the Contract; and (3) those standards take priority over inconsistent or contrary contractual terms. All of these arguments ignore the fact that there is no prohibition on parties allocating, as between themselves, responsibility for adherence with safety codes and standards.

---

[1] As noted in RISE's original memorandum, RISE will be prepared to present the Court with excerpts of any and all relevant contract language at a hearing on this motion.

Case law makes clear that that the responsibility for safety regulations is generally delegable. See Wojcik v. 42nd Street Development Project, Inc., 386 F. Supp.2d 442, 454 n.13 (S.D.N.Y. 2005) ("OSHA standards are not the type of regulations that establish a nondelegable duty"); Fulgham v. Daniel J. Keating Co., 285 F.2d 525, 541-42 (D.N.J. 2003) (OSHA safe construction site standards are delegable); McClure v. Denham, 162 S.W.2d 346, 353 (Tex. Ct. App. 2005) (rejecting argument that OSHA standards are nondelegable); see also Yanez v. United States, 63 F.3d 870, 873 (9th Cir. 1995) ("California permits a principal to delegate its duty to provide a reasonably safe work place to its contractor's employees").

The delegation of responsibility for safety regulations is of particular import in the construction industry context. Logically, safety responsibility should rest with the contractors doing the work, as those parties are most familiar with the work and its peculiar hazards. In this case, CPS was solely responsible for the means and methods of the work at RISE, including welding. (See, e.g., RISE-CPS General Specifications § 01040, ¶ 102.1). Conversely, CPS's and Zampell's position leads to the nonsensical result that RISE could contract with CPS to retrofit the Rhode State Energy Center, but could not delegate the safety responsibilities that naturally accompany that work. On this point, the Pennsylvania Supreme Court has cogently observed:

> 'How can the other party control the contractor who is engaged to do the work and who presumably knows more about doing it than the man who by contract authorized him to do it? Responsibility goes with authority.' Thus, a []contractor who undertakes a task is in the best position to provide for the safe accomplishment thereof, and delegation of responsibility to that []contractor does not deviate from the [owner]'s duty.

Leonard v. Commonwealth of Pennsylvania, 771 A.2d 1238, 1242 (Pa. 2001) (quoting Hader v. Coplay Cement Mfg. Co., 189 A.2d 271, 277 (Pa. 1963)).

In concert with this well-considered rule, parties may apportion the responsibility and risks for safety among themselves. See Pawlitzke v. Donald B. Murphy Contractors, Inc., No. 93-35707, 1994 WL 721855, at *5 (9th Cir. Dec. 29, 1994). RISE and CPS consequently agreed that CPS was solely responsible for educating itself regarding all relevant site conditions, and for complying with all applicable codes, standards, and regulations. There is no law in Rhode Island or elsewhere that renders illegal or unenforceable the contractual delegation of responsibility for safety compliance as between a property owner and a contractor. Moreover, the OSHA and NFPA provisions at issue do not contain any such prohibition.

CPS and Zampell attempt to avoid these realities by citing Rhode Island cases discussing an exception to the general rule that a principal is not vicariously liable for the negligent acts of an independent contractor. (See CPS Opposition at 5; Zampell Opposition at 2). Specifically, that exception holds that principals cannot avoid liability to third parties by delegating obligations imposed by law to independent contractors. See Webbier v. Thoroughbred Racing Protective Bureau, Inc., 254 A.2d 285 (R.I. 1969); Blount v. Tow Fong, et al., 138 A. 52 (R.I. 1927). These cases, however, are inapposite in this context, as they only discuss a principal's liability to third parties, and do not discuss or prohibit the delegation of safety responsibilities to contractors. As discussed above, delegation of safety responsibilities to a contractor is both enforceable and logical, given that a contractor is in the best position to appreciate and guard against potential hazards unique to that contractor's work. See Leonard, 771 A.2d at 1242.

The enforcement of contractual delegation of safety compliance also fulfills two important policy considerations. First, enforcement of those provisions tracks the important policy of holding parties to their contractual commitments. See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625 (1985) (policy in favor of enforcing private

contracts). Also, it creates an incentive for contractors to obey governing safety standards. Stated differently, a judicial determination that delegation of safety duties to contractors is unenforceable would create a strong disincentive, allowing contractors to escape responsibility for non-compliance and removing a strong legal and economic motivation.

Finally, CPS and Zampell also ignore the fact that CPS contractually waived any defense regarding CPS's ignorance of existing site conditions:

> Should [CPS] fail to perform any of the obligations set forth above, [CPS'] later plea of ignorance of existing or foreseeable conditions which create difficulties or hindrances in the execution of the Work will not be considered as an excuse for any failure on the part of the Contractor to fulfill in every detail the requirements of the Contract . . ..

(See RISE-CPS Job Specifications § 103.3). Nonetheless, CPS now alleges that RISE had a duty to inform it about certain site conditions, namely the existence and location of evaporative cooling media. CPS and Zampell therefore propose to introduce extrinsic evidence of industry or other standards to prove that RISE had an extra-contractual obligation to educate CPS regarding site conditions. However, even if those standards could be considered an implied term in the Contract (which they are not), CPS contractually waived its right to raise RISE's alleged failure on this point as a defense. CPS should not be allowed to escape that clear waiver through the introduction of parol evidence.

## Conclusion

There is nothing illegal or unenforceable about an agreed-upon contractual term that requires a contractor to be responsible for safety related to that contractor's work. Consequently, the provisions of the Contract whereby CPS agreed to become knowledgeable regarding all relevant site conditions, and to comply with all applicable safety standards, are binding upon the parties. Zampell and CPS therefore may not introduce parol evidence of standards, codes, or

regulations to alter the duties and obligations of the parties in ways that are inconsistent with the clear and unambiguous terms of the Contract.

RHODE ISLAND STATE ENERGY
STATUTORY TRUST 2000, FPLE
RHODE ISLAND STATE ENERGY, L.P. and
FPLE RHODE ISLAND STATE ENERGY GP,
INC.

By their Attorneys,

/s/ Mark W. Freel

Mark W. Freel (#4003)
Armando E. Batastini (#6016)
EDWARDS ANGELL PALMER & DODGE LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611 (fax)

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on the 14th day of September, 2006, I caused a true copy of the within Reply Brief to be served on the following counsel of record:

Girard R. Visconti, Esq.
Jessica L. Papazian-Ross, Esq.
Visconti & Boren Ltd.
55 Dorrance Street
Providence, RI 02903

Mark Robert Vespole, Esq.
Theresa E. Mullen, Esq.
Tressler, Soderstrom, Maloney & Priess
744 Broad Street, Suite 1510
Newark, NJ 07102

John R. Mahoney, Esq.
Asquith & Mahoney, LLP
155 South Main Street
Providence, RI 02903

Joseph J. Reale, Jr., Esq.
Joseph J. Reale, Jr., Ltd.
30 Kennedy Plaza, Suite 400
Providence, RI 02903

Stephen B. Lang, Esq.
Higgins, Cavanagh & Cooney, LLP
123 Dyer Street
Providence, RI 02903

Janet R. Davis, Esq.
Andrew M. Hutchison, Esq.
Georgene M. Wilson, Esq.
Meckler Bulger & Tilson, LLP
123 North Wacker Drive, Suite 1800
Chicago, IL 60606

/s/ Mark W. Freel