# EXHIBIT B

| Effective Date: March 01, 2004 | Delivery and Work Authorization<br>Rhode Island State Energy Center<br>PO Box 19840<br>24 Shun Pike<br>Johnston, Rhode Island 02919<br>[401] 946-2883 | PURCHASE ORDER: 00ENG-0822A<br><br>DWA: EJR030104 |
|---|---|---|
| Expiration Date: March 31, 2005 | | |
| Sargent & Lundy LLC<br>55 Monroe Street<br>Chicago, Illinois 60603-5780<br>312-269-8731<br>Fax 312-269-1775 | | |

**USE/PURPOSE**
This Delivery and Work Authorization (DWA) between Rhode Island State Energy Center (RISEC or Owner) and Sargent and Lundy (Supplier) is to be used for specific Work as detailed in the "Description of Work" provided below:

**DESCRIPTION OF WORK**
This DWA is your authority to furnish the necessary engineering, design, procurement management and construction management services for the RISEC facility relating to the RISEC CT Inlet Icing Prevention project.

**SCOPE OF WORK**
The Work shall be performed according to the attached Appendix A - RISEC Combustion Turbine High Inlet Differential Pressure Prevention Project.

**SCHEDULE**
This Work shall be completed by Supplier according to the attached Appendix B - Project Schedule.

**TERMS AND CONDITIONS**
The Work is to be performed under the existing terms and conditions of the above referenced Purchase Order with the replacement of the following for Section 7, Insurance:

Before commencing work, the Engineer shall procure and maintain the following minimum insurance covering all operations to complete the Work

A Workers' Compensation Insurance for statutory obligations imposed by Workers' Compensation or Occupational Disease Laws, including, where applicable, the United States Longshoremen's and Harbor Workers' Act, the Federal Employers' Liability Act and the Jones Act. Employers' Liability Insurance shall be provided with a limit of One Hundred Thousand Dollars ($100,000) per accident.

B General Liability Insurance, including Broad Form Contractual Liability Coverage and Products/Completed Operations Liability Coverage, including coverage with minimum limits of One Million Dollars ($1,000,000) combined single limit per occurrence and in the aggregate for Bodily Injury and Property Damage Liability, which shall insure the performance of the contractual obligations assumed by Supplier under the Contract. The Products/Completed Operations Liability Insurance shall be provided for a period of at least one year after completion of the Work.

C Comprehensive Automobile Liability Insurance which shall apply to all owned, non-owned, leased and hired automobiles used by Supplier with minimum limits of liability as follows:
- Bodily Injury Liability and Property Damage Liability - One Million Dollars ($1,000,000) combined single limit per occurrence.
- Automobile Physical Damage - Insured for the replacement value of all vehicles leased or borrowed by Supplier from FPLE.

D FPLE shall be designated as an "additional insured", and the policies shall be primary to any insurance that may be maintained by or on behalf of FPLE.

E In the event that any policy furnished by Supplier provides for coverage on a "claims made" basis, the retroactive date of the policy shall be the same as the effective date of the Contract, or such other date, as to protect the interest of FPLE Entities. Furthermore, for all policies furnished on a "claims made" basis, Supplier's providing of such coverage shall survive the termination of the Contract and the expiration of any applicable warranty period, pursuant to Section 7.0, WARRANTY, until the expiration of the maximum statutory period of limitations in the State of Florida for actions based in contract or in tort. If coverage is on "occurrence" basis, Supplier shall maintain such insurance during the entire term of the Contract.

D In addition to the minimum coverage outlined above, the Supplier shall provide FPLE with certificates of Insurance for such insurance. In the event of a claim, the provisions of the various policies are subject to FPLE's approval, and upon request, Supplier shall make available certified copies of the various policies for inspection by FPLE's Risk Management Department. Any inspection of such policies shall not obligate FPLE to advise Supplier of any deficiencies in such policies, and such inspection shall not relieve Supplier from, or be deemed a waiver of, FPLE's right to insist on strict fulfillment of Supplier's obligations hereunder.

| Effective Date: March 01, 2004<br>Expiration Date: March 31, 2005 | **Delivery and Work Authorization**<br>Rhode Island State Energy Center<br>PO Box 19840<br>24 Shun Pike<br>Johnston, Rhode Island 02919<br>[401] 946-2883 | PURCHASE ORDER: 00ENG-0822A<br>DWA: EJR030104 |
|---|---|---|
| Sargent & Lundy LLC<br>55 Monroe Street<br>Chicago, Illinois 60603-5780<br>312-269-8731<br>Fax 312-269-1775 | | |

E Should FPLE so request, Supplier shall promptly provide evidence of the minimum coverage by providing an ACORD or other certificate of insurance acceptable to FPLE. Neither Supplier's failure to provide evidence of minimum coverage of insurance following FPLE's request, nor FPLE's decision to not make such request, shall release Supplier from its obligation to maintain the minimum coverage provided for in this Section 7.0.

F Insurance specified in this Section 7.0 shall not be canceled without thirty (30) calendar days advance Notice to FPLE's Risk Management Department.

**CONSTRUCTION MANAGEMENT TERMS AND CONDITIONS**

With regard to the Construction Management portion of the Scope of Work the additional terms the following supplementary terms apply:

Construction Management Terms & Conditions

A. Supplier shall render engineering and construction management services in accordance with generally accepted engineering practices using current recognized engineering principles and practices. Except as provided in the Liquidated Damages provisions of this DWA, Supplier makes no warranty, either express or implied.

B. Suppliers sole obligation for any failure to perform our services in accordance with the generally accepted practices, whether in tort or in contract, shall be to reperform those services, so long as such failure is reported in writing to us within a reasonable time following the discovery thereof, but in no event later than one year from the date on which such services were performed. After said one year, Supplier shall have no remaining obligation to reperform any services or otherwise compensate FPLE.

B. Supplier will not direct or employ any construction labor and are not to be considered as a general contractor, but rather as RISEC's representative on site with only the authority to act in RISEC's behalf in matters relating to construction management. In no event shall Supplier be responsible for construction means, methods, techniques, sequences, or procedures.

C. Supplier will not be responsible for or have control or charge over the acts or omissions of the construction contractors, nor shall our presence on site in any way be interpreted as having the authority to provide instruction to the contractor or to stop work by the construction contractor for any reason.

D. Job safety is a contractual responsibility of the individual construction contractors and Supplier's representation on site will in no way diminish or eliminate that responsibility. Should Supplier see actual or potential safety hazards during our regular observation of the work, it shall advise RISEC's safety administrator. Supplier's failure to note such hazards shall not act to transfer safety responsibility from the construction contractors. It is understood that the project's safety program and first-aid facilities will be developed and administered by others. Supplier shall not be responsible for administration of any safety precautions or programs in connection with the work.

E. In the event that Supplier, or any affiliate, employee, agent, subcontractor or supplier, furnish any advice or assistance which is not required pursuant to this DWA, other than advice or assistance given concerning matters within the scope of this DWA, the furnishing of such advice or assistance will not subject Supplier to any liability whether in contract, guarantee, indemnity, warranty, tort, including negligence, strict liability or otherwise.

**LIQUIDATED DAMAGES AND BONUS**

**GENERAL:**

Supplier's failure to comply with the schedule and/or the performance requirements on this DWA will result in RISEC incurring damages in amounts difficult to ascertain with certainty. It is agreed therefore that the liquidated damages specified herein represent a

| Effective Date: March 01, 2004 | Delivery and Work Authorization<br>Rhode Island State Energy Center<br>PO Box 19840<br>24 Shun Pike<br>Johnston, Rhode Island 02919<br>[401] 946-2883 | PURCHASE ORDER: 00ENG-0822A<br><br>DWA: EJR030104 |
|---|---|---|
| Expiration Date: March 31, 2005 | | |
| Sargent & Lundy LLC<br>55 Monroe Street<br>Chicago, Illinois 60603-5780<br>312-269-8731<br>Fax 312-269-1775 | | |

reasonable amount to compensate Owner for Supplier's failure to perform and are not to be construed as a penalty. Consequently, Owner will not be required to prove that it has incurred actual damages

Payment of one type of liquidated damages for Supplier's failure to comply with a specified requirement shall not relieve the Supplier from its liability to pay liquidated damages for Supplier's failure to comply with other specified requirements, provided, in each case, such liquidated damages shall be the Purchaser's sole and exclusive remedy and Supplier's only obligation for the Supplier's failure to comply with the particular specified requirements, except for any express remedies or obligations in the Standard Conditions, including but not limited to RISEC's right to terminate in the event of default of Supplier.

In the event that Owner becomes entitled to the liquidated damages under this DWA, RISEC may deduct the amount of liquidated damages from any money due or which may become due Supplier under the DWA. Should any liquidated damages be in excess of the remaining unpaid balance for services otherwise payable under the DWA, Supplier shall pay to RISEC any amounts within thirty (30) days after receipt of RISEC's invoice.

**DEFINITIONS AND AMOUNTS:**

**Substantial Completion** – Substantial Completion of the project is achieved when the engineering solution, has been designed, constructed, installed, calibrated, commissioned, and is ready to be placed into normal plant operation. This includes that all controls have been established and functional tested within the Ovation and Turbine OEM control systems, as applicable.

Scheduled Substantial Completion date of the project is December 1, 2004.

Not withstanding the provisions of Section 17.0, Force Majeure, of the applicable Standard Terms and Conditions for Services, in the event Supplier does not achieve Substantial Completion Date by December 15, 2004, Supplier shall pay to Owner $1,500.00, as liquidated and agreed damages and not as a penalty for each day or portion thereof.

Supplier's total maximum aggregate liability for such liquidated damages under this DWA shall be limited to $40,000. Payment of liquidated damages for delay by Supplier shall constitute the sole remedy of FPL and exclusive liability of the Supplier for late Substantial Completion, provided however, if Supplier still has failed to achieve Substantial Completion after the limits of the liquidated damages are reached, such failure shall constitute a potential material default by Supplier of its obligations under the DWA and shall render the DWA terminable for cause by RISEC pursuant to Section 21of the Standard Terms and Conditions for Services. RISEC may withhold payment of invoicing under this DWA for assessed liquidated damages.

In the event Supplier achieves Substantial Completion prior to Substantial Completion prior to December 15, 2004, RISEC will pay to Supplier $1,500.00 per each calendar day or portion of a calendar day thereof. Aggregate maximum amount of this bonus is $40,000.00.

**Demonstrated Project Performance** – Substantial Completion and completion of mutually agreed Performance Test, including engineering evaluation with acceptable results

**OUT-OF-SCOPE WORK INSTRUCTIONS**
Changes in the scope of this Contract will be performed only upon receipt of an authorized DWA Supplement issued by RISEC.

**COMPANY REPRESENTATIVE**
All work is subject to the approval and acceptance of Mr. Craig Arcari or Mr. Peter Holzapfel who are the RISEC Company Representatives, telephone number 401-946-2883 extension 233, or their designee.

Supplier's representative for this Contract is Mr. Anthony Lunardini, telephone 312-269-8731, facsimile 312 269-1775.

| Effective Date: March 01, 2004 | **Delivery and Work Authorization**<br>Rhode Island State Energy Center<br>PO Box 19840<br>24 Shun Pike<br>Johnston, Rhode Island 02919<br>[401] 946-2883 | PURCHASE ORDER: 00ENG-0822A<br><br>DWA: EJR030104 |
|---|---|---|
| Expiration Date: March 31, 2005 | | |
| **Sargent & Lundy LLC**<br>**55 Monroe Street**<br>**Chicago, Illinois 60603-5780**<br>**312-269-8731**<br>**Fax 312-269-1775** | | |

**RATES AND "NOT TO EXCEED"**

Applicable rates for services performed are those as forth in the Purchase Order. Not-to-Exceed amount for this DWA is $954,000. A ten percent (10%) performance retainer shall apply and may be invoiced by the Supplier upon Demonstrated Project Performance.

**INVOICING**

Mail invoice to:
Rhode Island State Energy Center
PO Box 19840
24 Shun Pike
Johnston, RI 02919
Attention: Ms. Latsaney Arounlangsy

**ACKNOWLEDGEMENT**

You are required to sign Contract / Purchase Document prior to beginning work. Failure to return this Document could result in payment of invoices being delayed.

***The duly authorized representatives of the parties hereto have executed this purchase order agreement effective the date noted above.***

**RHODE ISLAND STATE ENERGY STATUTORY TRUST 2000 a Connecticut Statutory Trust.**

By: FPLE RHODE ISLAND STATE ENERGY, L.P.
as Agent pursuant to that certain Amended and Restated Agency Agreement dated as of June 26, 2002 between said Agent and RhodeIsland State Energy Statutory Trust 2000, as successor in interest by merger to Rhode Island State Energy Partners, L.P. (formerly known as Reliant Energy Hope, L.P.)

**SARGENT & LUNDY, LLC**

By: Robert E Hulette
Title: Sr. V.P. Date: May 11, 2004

By: FPLE RHODE ISLAND STATE ENERGY GP, INC.
Its General Partner

By: James Keene
Title: Vice President Ops Date: May 10th 2004

| Effective Date:<br>March 01, 2004 | **Delivery and Work Authorization**<br>**Rhode Island State Energy Center**<br>**PO Box 19840**<br>**24 Shun Pike**<br>**Johnston, Rhode Island 02919**<br>**[401] 946-2883** | **PURCHASE ORDER: 00ENG-0822A**<br><br>**DWA: EJR030104** |
|---|---|---|
| Expiration Date:<br>March 31, 2005 | | |
| **Sargent & Lundy LLC**<br>**55 Monroe Street**<br>**Chicago, Illinois 60603-5780**<br>**312-269-8731**<br>**Fax 312-269-1775** | | |

Attachments:

Appendix A - RISEC Combustion Turbine High Inlet Differential Pressure Prevention Project.
Appendix B - Project Schedule

cc: Edward Alarcon
Craig Arcari
Latsaney Arounlangsy
Carine Bullock
Bob Burgess
Pete Holzapfel
W T Smith

4/23/04
Revision 6

# APPENDIX A

## RISEC COMBUSTION TURBINE HIGH INLET DIFFERENTIAL PRESSURE PREVENTION PROJECT

Scope of Work

**Introduction**

The Combustion Turbine Generators (CTG) at the Florida Power & Light Energy (FPLE) Rhode Island State Energy Center (RISEC) facility have experienced high inlet differential pressure at the air inlet filtering media during lower ambient temperatures, rendering the units inoperable. This high inlet differential pressure condition can be attributed to snowfall collecting on the inlet filtering media and/or cooling tower plume freezing the inlet filtering media. An engineering solution to this problem is required to be designed, purchased, installed and fully functional not later than December 1, 2004.

**Scope of Work**

The scope of work will include engineering services to perform plant modifications at the FPLE RISEC facility to remedy the existing problem of CTG high inlet differential pressure condition during ambient conditions experienced at and below freezing. The engineering services to be provided will be design, procurement assistance, quality assurance and quality verification, project management and construction management.

**Design**

Currently, there are two options being developed in parallel by FPLE:

1. Design an inlet plenum building with inlet heating capability to meet the conditions of the attached design basis document. This design concept will prevent ice and snow buildup on the inlet face. The Engineer is expected to be the Engineer of Record on this project and will be responsible for verification that the proposed design will remedy the CT high inlet differential pressure problem under all design conditions. If it is proven that the proposed design is not an acceptable option, than the Engineer is responsible for developing a new design approved by FPLE to remedy the high inlet differential pressure problem.

2. Modify the existing cooling towers or install additional cooling towers with plume abatement. This design concept will prevent plume from entering the

CTG inlet but does not address snow accumulation. This option is currently under development by Marley Cooling Technologies, Inc. The Engineer is expected to consider the merits of this option and provide a recommendation on whether cooling tower modifications or replacements are necessary to achieve a remedy to the CT inlet icing observed due to the cooling tower plume ingestion.

The Engineer is to provide verification that the requirements of the CTG OEM, Siemens Westinghouse Power Corporation (SWPC) and the existing inlet plenum designer, Pneumafil, are met in the sizing of the inlet plenum building and heat exchanger. The Engineer shall also review the present sizing of the existing inlet plenum, evaporative cooler, flow distribution, gradients as represented in the Pneumafil test data and analytical modeling, and evaluate the need for modifications. FPLE will coordinate communication between the Engineer and these suppliers.

The Engineer is to provide verification that the building design meets the design requirements of the original building. All available design drawings from the original building as requested by the Engineer will be provided by FPLE accordingly. Any necessary modifications to the existing building structure or foundations, or new foundations required must be incorporated into the Engineer's design. Any required relocation of existing building HVAC fans and/or ducting will be evaluated and designed by the Engineer.

All design efforts to date on the inlet plenum building performed by FPLE and their contractors, will be turned over to the Engineer for their use in development of the design. The Engineer shall verify all preliminary design drawings, calculations, etc.

CFD models of the plume and the inlet building have been awarded to Marley Cooling Technologies and Fluent, Inc. respectively. The intent of each model is as follows:

1. Marley Cooling Technologies Inc. model will simulate the plume and develop inlet design conditions for the modified inlet plenum.

2. Fluent Inc. model will be developed to model the air flow from the outside of the inlet plenum, through the modified inlet plenum, and into the combustion turbine filter housing at various operating scenarios.

The Engineer shall have a physical flow model performed upon completion of the final design.

These model suppliers have been agreed to be mutually acceptable to FPLE and the Engineer. The Engineer will verify the design conditions to be modeled and work with both model contractors to ensure consistency and compliance to the design basis document. The Engineer will work directly with these modeling contractors to obtain needed information to size the building and heat exchanger. The Engineer shall insure that the heat exchanger is sized appropriately for a future CTG inlet air

**chilling system and reflected accordingly in the CFD model. The final results of the modeling efforts will serve as the method of design verification.**

**The Engineer shall evaluate the steam supply available from the HRSG's, to determine the optimum location to extract steam for supply to the heat exchanger system. The design criteria is outlined in the design basis document. The Engineer shall coordinate with the Steam Turbine OEM, General Electric (GE), to insure an optimum use of steam to minimize the impact on plant performance. A Gate Cycle model of the plant shall be performed to identify/confirm the impact of the steam extraction from the HRSG. FPLE will provide the Gate Cycle model on the existing plant cycle to the Engineer. The Engineer will review and modify the Gate Cycle model as required to include the appropriate steam extraction for heating.**

**The Engineer shall design the control system modifications and interfaces required to accommodate all options. The controls shall be incorporated into the existing plant Emerson Ovation and CTG Teleperm Digital control systems, with any upgrades or modifications required to incorporate those changes. The Engineer shall design the control system modifications in accordance with FPLE standard control specifications, supplied with this scope document.**

**The final design must insure that the icing condition is not transported from the filter house to the duct, plenum or the CTG inlet bellmouth. Icing conditions at the bellmouth that could possibly result in catastrophic failure of the CTG compressor must be avoided under all conditions. The control system must utilize instrumentation and logic to determine if icing conditions are imminent and take appropriate action.**

**Equipment, Services and Material Procurement**

**The Engineer shall provide procurement services that include the following:**

1. **Procurement Plan: A procurement document consistent with the overall project schedule showing all items to be purchased. The Procurement plan shall consider all options.**
2. **Equipment Specifications: Specifications for all material and equipment including vendor recommended spare parts. Unless otherwise mutually agreed by RISEC, material and equipment shall be furnished through competitive bidding through fixed price agreements.**
3. **Construction Specifications: Construction specifications as mutually agreed upon by FPLE.**
4. **Bidders List: Potential bidders lists for each equipment and construction procurement. FPLE will provide our bidders list for Engineers consideration.**
5. **Request for Proposals: Solicit bid(s) using FPLE's commercial terms and conditions.**

6. **Bid Evaluation: Prepare a technical and economic evaluation in the form of a spreadsheet of vendor proposals and submit final results to FPLE with appropriate support documentation as required. Resolution of commercial exceptions shall be coordinated through FPLE**
7. **Purchase Order Draft: Upon FPLE's concurrence with the vendor selection and adequate resolution of commercial terms and conditions, Engineer shall draft the Purchase Order and send to RISEC for issue. Draft purchase order shall incorporate all appropriate design, construction, and delivery requirements.**
8. **Delivery Status and Expediting: Monitor and expedite the status of all material and construction purchase orders including the performance of required surveillance and shop inspections.**

**The Engineer is expected to manage schedule and quality assurance of the suppliers.**

**The Engineer shall investigate all fabrication options to ensure schedule compliance.**

**Construction Management**

**The Engineer will develop and manage the project design, procurement, and construction schedule in support of system readiness before December 1, 2004. The schedule shall be submitted within one (1) week of the date of the notice to proceed. The project schedule shall be updated at a minimum on a semi monthly basis. The construction management effort will include, at a minimum: development of a construction workscope, erection specifications, issue requests for proposals, evaluation of construction bids, resolution of all commercial terms and conditions issues to FPLE's satisfaction, draft purchase orders, provide field engineering services for modifications as required, and provide field engineering services to assist with construction oversight. FPLE reserves right to supplement lists of recommended bidders, and will issue the purchase orders from the RISEC site.**

**The Engineer shall consider all fabrication options to insure schedule compliance.**

**The Engineer shall provide a competent field management staff at the RISEC site as required insuring construction is performed in accordance with the Engineers obligations. FPLE shall have the right to review the experience, qualifications, and certification record of key personnel prior to their assignment to the Work.**

**The Engineer's field management shall represent the Engineer and shall be a duly authorized agent of the Engineer. Key field management shall not be replaced without prior notice to RISEC. In the event of reassignment of key personnel, the Engineer shall provide an overlap of personnel for a period of time sufficient that no impact to the Work occurs. All costs for such overlap shall be borne by the Engineer and shall not be reimbursable.**

The Engineer shall be responsible for the health and safety of its field management engaged in the execution of the Work and shall comply with all laws pertaining to health and safety of its personnel and property and to protect it from damage injury or loss.

Quality Assurance

The engineer will define the critical attributes during procurement, manufacturing, and construction to ensure the quality of the final product. A project Inspection and Test Plan (ITP) will be developed and submitted to FPLE for review. The engineering will work with FPLE personnel to implement this inspection and test plan during manufacturing, construction and commissioning of the equipment required to implement the engineered solution. Procurement specifications will include requirements to suppliers for documentation and records to ensure the quality of the delivered product.

Performance and Functional Testing

A functional testing scope and performance test procedure will be developed by the Engineer to demonstrate the adequacy of the installed modifications to resolve the icing problems under the design basis conditions in the design basis document. A methodology and procedure for the functional test will be developed and submitted by the Engineer for review by FPLE. The Engineer will coordinate the conduct of the performance test and provide evaluation of the results.

Scope of Work Basis

The following Purchase Orders will be prepared and issued by supplier
Air Heating Coil (Glycol)
Steam to Glycol Heat Exchanger
Glycol Circulating Pumps
Control Valves
Structural Steel Fabrication and Deliver
General Work Contractor
Air Flow Scale model

The following will be provided by the General Contractor from Bills of Material and Specifications prepared by supplier (Specifications will be based on existing RISEC specifications.)
Pipe
Pipe Supports
Pipe Insulation
Manual Valves
Glycol
Other Specialties
Doors
Siding & Roofs

**Louver modifications**
**Electrical equipment**

**Assumptions:**

1. **The steam to glycol heater will be located in the Steam Turbine Building near the steam take off from cold reheat at grade elevation (Mezzanine would also be acceptable.) ( no exceptional water induction measures needed)**
2. **The Glycol piping will be routed from the steam turbine building to the air heater along Column Row F on the existing roof (El 377'-10") behind the existing air inlet filters.**
3. **A suitable connection is available on the condenser for the return condensate from the steam to glycol heater.**
4. **The Glycol Expansion Tank will be implemented by a pipe routed along Column Row F inside the new enclosure near elevation 425'-0"**
5. **Building arrangement is as sent to Fluent for air modeling on 3/25/04**
6. **Diagrammatic conduit routing (non-dimensioned)**
7. **Power is available from the existing steam turbine building MCCs**
8. **Space is available in the steam turbine building MCCs for the required starters (a new MCC section is not required)**
9. **No modifications are required to the outdoor 4kV switchgear building, UAT or GSU**
10. **No underground duct runs require modification**
11. **Existing lighting feeds can accept the new lighting**
12. **All new electrical loads are 480Vac or lower. (no 4160Vac loads)**
13. **No HVAC in the new enclosure**
14. **No communication or security system modifications.**
15. **No new electrical physical drawings for existing areas. Existing drawings will be electronically revised. New electrical physical drawings for the new enclosure are included**
16. **Cable tabulation will be manual (Excel Spreadsheet).**
17. **S&L will design the control logic diagrams. FPL will configure the DCS/TCS modifications, any required DCS hardware changes and will design/implement the needed OpCon graphic displays.**
18. **The DCS has adequate spare I/O and spare processor capacity to handle new logic.**
19. **Meteorological data is available to the DCS as input to the new glycol heater control system.**