## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CERTIFIED POWER SYSTEMS, INC., | ) |
| | ) |
| vs. | ) |
| | ) |
| RHODE ISLAND STATE ENERGY STATUTORY TRUST 2000, FPLE RHODE ISLAND STATE ENERGY GP, INC., | ) ) ) ) |
| | ) |
| vs. | ) |
| | ) |
| CERTIFIED POWER SYSTEMS, INC. | )    C.A. NO.: 05-066-ML |
| | ) |
| vs. | ) |
| | ) |
| ZAMPELL REFRACTORIES, INC. | ) |
| | ) |
| vs. | ) |
| | ) |
| SARGENT & LUNDY, LLC. | ) |

### **SARGENT & LUNDY, LLC'S MOTION *IN LIMINE* TO BAR THE EXPERT TESTIMONY OF MICHAEL B. PLUNKETT**

Pursuant to Federal Rule of Evidence 401, 402, 403, 702, and 703, fourth-party defendant Sargent & Lundy, LLC ("S&L"), by its attorneys, Stephen B. Lang of Higgins, Cavanagh & Cooney, LLP and Janet R. Davis of Meckler, Bulger & Tilson LLP, hereby moves the Court for an order *in limine* to bar the expert testimony of Michael B. Plunkett.[1] In support of this motion, S&L states as follows:

---

[1] Pursuant to agreement of the parties, Mr. Plunkett's deposition occurred on September 6, 2006. During his deposition the scope and basis of his opinions were explored. At his deposition, Mr. Plunkett stated that in addition to the bases of his opinions stated in his report he was also relying on Sections 3 and 8 of the American Society of Mechanical Engineers ("ASME") standards. ASME Sections 3 and 8 are part of multi-volume standards and Mr. Plunkett was unable to identify the specific portions upon which he relied. Counsel for S&L reserved the right to further examine Mr. Plunkett on ASME. After the deposition concluded, it was represented that Mr. Plunkett would issue a supplement to his report citing to specific ASME provisions. On September 18, 2006 S&L's counsel was informed that Mr. Plunkett was not issuing a supplement and that he was withdrawing his reliance on ASME. A copy of the correspondence from S&L's counsel confirming this fact is attached as Exhibit "A". Once this representation was made, a motion to *in limine* concerning Mr. Plunkett became ripe for presentation to the Court.

**I.    Introduction**

Fourth party plaintiff, Zampell Refractories, Inc. ("Zampell"), seeks to introduce the purported expert opinions of Michael B. Plunkett that S&L was "negligent" in performing its engineering services for the Rhode Island State Energy Commission ("RISEC") power plant. Mr. Plunkett's opinions lack sufficient foundation and he is no longer relying on ASME standards and he is not qualified to render opinions regarding the National Fire Protection Association ("NFPA") as applied in this case. Accordingly, Mr. Plunkett's opinions should be barred as they do not meet the requirements of Federal Rules of Evidence 702 and 703.

**II.    Argument**

The court has broad discretion in determining the qualification of an expert witness and the admissibility of expert testimony. Tokio Marine & Fire Ins. Co. v. Grove Mfg. Co., 958 F.2d 1169, 1173 (1st Cir. 1992) Federal Rule of Evidence 702 requires that a putative expert be qualified to testify by knowledge, skill, experience, training or education. Diefenbach v. Sheridan Transp., 229 F.3d 27, 30 (1st Cir. 2000). The expert should have achieved a meaningful threshold of expertise in the given area. Prado Alvarez v. R.J. Reynolds Tobacco Co., Inc., 405 F.3d 36, 40 (1st Cir. 2005).

An expert opinion must also be supported by sufficient foundation. Brown v. Parker-Hannifin Corp., 919 F.2d 308, 310 (5th Cir. 1990). An opinion based on an insufficient factual foundation is nothing more than inadmissible speculation. Guillory v. Domtar Industries, Inc., 95 F.3d 1320 (5th Cir. 1996). It is the court's responsibility to determine if the expert opinion is sufficiently supported by the analysis and facts so as to be admissible. Lust v. Merrel Dow Pharmaceuticals, Inc., 89 F.3d 594 (9th Cir. 1996).

### A. Mr. Plunkett's Five Opinions Regarding S&L's Engineering Services Under ASME and NFPA Standards and Codes Should Be Barred

Mr. Plunkett's report offered five opinions regarding S&L's performance of engineering services for the RISEC plant. Those opinions are as follows:

1. S & L had the technical responsibility to insure that the project components were designed and safely installed. S & L did not take adequate measures to insure the welding of sub-girts was performed in a safe manner.

2. S & L was FPLE's engineer of record on the site and should have had full knowledge of all the codes and technical requirements, including the NFPA to complete their scope of work for FPLE. S & L did not follow the critical requirements of the NFPA and take precautions to prevent ignition of combustibles on the other side of the vessel wall.

3. S & L had full knowledge of the danger of welding on this project and acknowledged that fact several times during their depositions. S & L was negligent in their professional duty in not securing adequate safety measures to insure that some type of flame retardant barrier was used behind the steel plates to prevent the ignition of the evaporative media.

4. S & L and FPLE were deficient in failing to giving Zampell instructions as to the existence, location and the flammability of the evaporative cooling media that existed during the welding process. It was S & L's responsibility to insure that Zampell was made aware of any safety hazards that existed on the other side of the wall on which they were welding before welding begin.

5. S & L was negligent in their responsibility to fully comprehend the technical scope of the project since they admittedly acknowledged that they failed to recognize that the media inside the plenum was flammable. S & L was FPLE's engineer of record (Purchase Order 00-ENG-0822A, Section "design" Item 1) therefore it was their responsibility to understand all the technical and safety requirements on the project. It was not Zampell's responsibility to insure that suitable safety measures were taken to protect against a fire during the welding of sub-girts.

A copy of Mr. Plunkett's report is attached as Exhibit "B." See p. 4.

Although Mr. Plunkett's conclusions are offered as "expert opinions," it is now clear that these opinions are baseless and lack foundation. Accordingly, Mr. Plunkett's opinions should be disregarded and he should be barred from so testifying at trial.

### 1. Mr. Plunkett Abandoned Reliance Upon ASME Which Renders His Opinions Baseless Conclusions

At his deposition, Mr. Plunkett testified that he based his opinions on alleged breaches by S&L of professional codes and standards that purportedly govern S&L's conduct for the RISEC project. Portions of Mr. Plunkett's deposition transcript are attached as Exhibit "C." See p. 39. Mr. Plunkett testified as follows when asked to identify the codes and standards that are the basis for his opinions against S&L:

> Q: And when you say codes and standards, you're referring to specifically what?
> A: The ASME codes, National Fire Protection Code. Primarily those.
> 
> ***
> 
> Q: What portions of ASME are you referring to and why are they relevant?
> A: ASME Section 8 and ASME Section 3.
> 
> ***
> 
> Q: [W]hat portions of Section 3 of ASME which you already indicated relate to nuclear power plants you feel are applicable to this project [sic]?
> A: I would have to go back and look at those. Primarily, ASME Section 8 refers to fossil power plants.
> Q: And what portions of Section 8 of ASME are you relying on to form your opinions in this case?
> A: Again, I'd have to go back and look at Section 8 and look at those specific areas within the code. Again, Section 8 is about seven or eight volumes thick.
> 
> ***
> 
> Q: Why does the American Society of Mechanical Engineers code apply to Sargent & Lundy in this case?
> A. Well, to design any design, any power plant, you're going to go back to ASME. It's the rules and regulations for building a fossil power plant. Section 8 gives you all of the rules and regulations in reference to design manufacturing and inspection of power plants. That's the rule. That's the design rule everyone uses for power plants.
> (Ex. C, pp. 40-41, 65-67, 81-82.)

Because, according to Mr. Plunkett, ASME constitutes the rules governing an engineer's responsibilities for the design and construction of a power plant, all five of his opinions must be based on ASME. By abandoning his reliance on ASME, Mr.

4

Plunkett has eliminated the foundation for all of his opinions. Accordingly, all of his opinions should be barred as they have no foundation.

That Mr. Plunkett's opinions are based on ASME is evident from the following specific testimony:

> Q: Okay. Let's go on then to the next page of your report which list your five opinions. Starting with number one, anything we haven't already discussed upon which you relied in forming number one?
> A: Again, not to repeat myself, but Sargent & Lundy had the professional responsibility to ensure that the design was properly done, including the quality verification of their design, and <u>they should have relied upon the codes and regulations that the plant was plant was being designed to</u>.
> 
> ***
> 
> Q: Are you saying that this could not be done safely under the design as it was tendered to the contractor?
> A: I'm saying that if Sargent & Lundy had to perform their professional duties in the manners of the codes and regulations then this design would be properly done, correct. And I'm saying that both the codes and standards that they had available to them and their purchase order that they had available to them made it clear that they were responsible for the design integrity of the full design, and that means not only the design but the final product. And they had the responsibility for the quality verification of that design.
> 
> ***
> 
> Q. And is it your opinion that industry custom and practice, which I believe in the first item you discussed which was the standard of care, that it is the standard practice in the industry for the design engineer to be responsible for the safe performance of the contractor of work on a power plant?
> A: It is the responsibility of the project engineer, in this case, Sargent & Lundy, to ensure that their design and the constructability of that design is done in accordance with all the codes and the regulations.
> 
> (Ex. C, pp. 46-48, 52, emphasis added.)

Mr. Plunkett also specifically testified that he relied on the codes, which according to his definition includes ASME, as support for his second opinion. (Ex. C, p. 54.) He has opined that the NFPA is applicable to S&L because S&L is part of "management." But, as the following testimony makes clear, Mr. Plunkett's inclusion of S&L in "management" under the NFPA is based on his interpretation of ASME:

| | | |
|---|---|---|
| Q: | | And is it your interpretation of the NFPA sections which you have cited here that management includes Sargent & Lundy? |
| A: | | Absolutely. |
| Q: | | Based on what? |
| A: | | Based upon they were the project engineer on site and they were representing Florida Power & Light. They were the professional engineer responsible for -- ...Sargent & Lundy was the professional engineer on site, and under the purchase order and the professional regulations and codes there were ultimately responsible for their modifications and that included the installation of their design. |
| Q. | | Let me ask you my question again. What in NFPA tells you that Sargent & Lundy is management under this section [51B] which you've cited? |
| A. | | The National Fire Protection Code doesn't define who is management, who isn't management. I mean, if you go back to the ASME codes, I'm sure you'll find words to that effect, but the National Fire Protection Code just gives rules and regulations associated with fire protection. They don't define who is management, who is not management. |

***

| | | |
|---|---|---|
| Q: | | [R]eferring to your prior answer where you said that what makes Sargent & Lundy management is professional regulations and codes. You've also mentioned professional regulations and codes earlier. So I want to know what professional regulations you're talking about? |
| A: | | Again, ASME, Society of Mechanical Engineers, and National Fire Protection Code. |

(Ex. C, pp 68-69.)

According to Mr. Plunkett, ASME constitutes the codes and regulations governing an engineer's responsibilities for the design and construction of a power plant and he testified that he relied upon ASME in forming his opinions. Thus, ASME is clearly the foundation upon which Mr. Plunkett's opinions rest. However, Zampell has now represented that Mr. Plunkett has abandoned his reliance upon ASME. (Ex. A.) Since all five of Mr. Plunkett's opinions were based upon ASME and he has abandoned all reliance on ASME, all of Mr. Plunkett's opinions lack foundation and should therefore be disregarded and his testimony barred.

### 2. Mr. Plunkett Is Not Qualified to Render Opinions Against S&L Based Upon NFPA 51B

Furthermore, Mr. Plunkett can not offer opinions against S&L based on the NFPA because he has no experience with the application of NFPA during field operations that involve welding and the issuance of hot work permits. His only involvement with the NFPA relates to the design of fire protection systems. (Ex. C, pp. 77-78.) Clearly the design of fire protection systems is not at issue in this case. Thus, Mr. Plunkett is also unqualified to offer opinions against S&L based on NFPA 51B.

### 3. There Is No Factual Basis for Opinions Supported by NFPA

In addition to the arguments that have been previously raised, Mr. Plunkett's third opinion also fails because it is wholly unsupported. Mr. Plunkett third opinion asserts that S&L was negligent in failing to specify a flame retardant barrier for use by the contractor during welding operations. However, his opinion lacks any factual basis indicating that use of a flame retardant barrier would have prevented the fire during welding. Without such facts, Mr. Plunkett's third opinion is nothing more than speculation. Indeed, that his opinion is pure speculation is proven by the following testimony:

> Q: All right. You have an opinion that some type of flame retardant barrier should have been used, but you don't know what it could have been and you haven't analyzed that?
> A: I haven't analyzed exactly what type of barrier they should have used, no. And typically in the power plant business, they use a number of barriers to isolate heat from a source.
> Q: But as you sit here today, you can't tell me what of those that are used might have worked in this instance?
> A: As I sit here today, I can't tell you that, no.
> \*\*\*
> Q: Mr. Plunkett just back to number three, your opinion number three for a moment. On what were you relying when you gave your opinion in number three that some type of flame retardant barrier should have been used behind the steel plates?
> A: Primarily, two things; the testimony of Sargent & Lundy and the response of Sargent & Lundy in reference to marking up

>   documents referring to the flammable material. And in addition to that, the National Fire Protection Code.
>
> \*\*\*
>
> Q: Show me in the NFPA where it says what flammable barrier would work in this situation?
> A: The codes do not specify what material you should use. The codes specify that you have to meet a requirement. You have to supply flame retardant material. Codes do not say you have to use this item or that item. Codes just say you need to put a flame retardant material to isolate the heat source from a flammable material.
> Q: And at the time that you prepared this report, you did not have knowledge of any flame retardant barrier specifically that would have worked in this situation to prevent this fire?
> A: There are a number of flame retardant materials used in the industry. If you'd like me to look at those, I'd be happy to.
> Q: I'm not the one that's giving you your scope of work. I'm asking you if at the time you wrote this report you knew of some flame retardant barrier that could have been inserted in this situation to prevent the fire?
> A: All the time I wrote the report, I knew there was a number of flame retardant materials being used on power plants. As to a specific one that could be used in this instant, no.
>
> (Ex. C, pp.57-58, 63-65.)

Mr. Plunkett can not identify what type of barrier S&L should have specified. Furthermore, he did not conduct any tests or perform any analysis to determine whether a flame resistant barrier would have been effective to prevent the fire. As Zampell asserts in its motion *in limine* seeking to bar FPLE's experts, when there is an absence of competent proof in support of an expert opinion the opinion is nothing more than guess, speculation and conjecture. Document 144, p. 3. Mr. Plunkett has not presented any competent proof in support of his opinion on the use of a flame retardant barrier and for this additional reason, his third opinion should be barred.

### 4. **Mr. Plunkett's Opinions Are Not Based Upon Facts**

Furthermore, Mr. Plunkett's opinions as a whole lack the necessary factual foundation. Mr. Plunkett lists the materials that he reviewed and upon which he based his opinions in the first part of his report and on "Attachment A" thereof. Notably absent from the materials are the depositions of Ed Alarcon of Premier

8

Engineering who was FPLE's on-site representative, the depositions of the FPLE employees involved in the hot work permit process and the depositions of the CPS and Zampell employees who were responsible for, and performing the work on, the RISEC project.[2] The CPS/FPLE contract is also absent from Mr. Plunkett's list of materials that he reviewed and he conceded that he could not recall the obligations CPS had undertaken in its contract. (Ex. C, pp. 25-27.)

Mr. Plunkett testified that he did not feel the depositions of the FPLE, CPS or Zampell witnesses were "relevant" to his opinions despite the fact that these were the people engaged in the activities about which Mr. Plunkett renders his opinions. While it is obvious that Mr. Plunkett could not decide what is "relevant" to his opinions without reading the materials, the fact remains that he did not read them. Therefore, Mr. Plunkett's opinions do not have sufficient factual foundation.

**III.   Conclusion**

Mr. Plunkett's opinions do not meet the admissibility standard set forth in Federal Rules of Evidence 702 and 703. To allow Mr. Plunkett to testify to these opinions would be prejudicial to S&L as his opinions are nothing more than guess, speculation and conjecture.

---

[2] There were 16 fact witness depositions taken including 4 depositions of Sargent & Lundy employees. These depositions do not include the expert witnesses or deposition of the state fire marshall. Of these 16 depositions, many of which lasted more than one day, Mr. Plunkett reviewed only the 3 deposition transcripts of S&L engineers, Anthony Lunardini, Lyle Gastineau and Joseph Lula.

WHEREFORE, fourth-party defendant Sargent & Lundy, LLC seeks the entry of an order *in limine* barring the expert testimony of Michael B. Plunkett.

SARGENT & LUNDY, L.L.C.

By its Attorneys,

/s/  Stephen B. Lang
Stephen B. Lang (#0145)
Higgins, Cavanagh & Cooney, LLP
123 Dyer Street
Providence, RI  02903
Tel:  401-272-3500
Fax:  401-273-8780
slang@hcc-law.com

- and –

Janet R. Davis, Esq.
Georgene Wilson, Esq.
Andrew M. Hutchinson, Esq.
Meckler Bulger & Tilson, LLP
123 North Wacker Drive, Suite 1800
Chicago, IL  60606
Tel:  312-474-7947
Fax:  312-474-7898
janet.davis@mbtlaw.com
georgene.wilson@mbtlaw.com

**CERTIFICATION**

      I hereby certify that a true copy of the within was filed electronically and it is available for viewing and downloading from the ECF system.  The following counsel of record received notice of the filing of this document electronically from the United States District Court for the District of Rhode Island:

Co-Counsel for Plaintiff
Jessica Papazian-Ross, Esq.
Visconti & Boren Limited
Providence Square Building
55 Dorrance Street
Providence, RI  02903
jlpr@viscontilaw.com

Co-Counsel for Zampell
John R. Mahoney, Esq.
Asquith Mahoney, LLP
155 South Main Street
2nd Floor
Providence, RI  02903
JackMahoney@amlawllp.com

Counsel for Trust 2000, FPLE
Mark W. Freel, Esq.
Armando E. Batastini, Esq.
Edwards & Angell
2800 Financial Plaza
Providence, RI  02903
MFreel@eapdlaw.com

Co-Counsel for Zampell
Joseph J. Reale, Jr., Esq.
30 Kennedy Plaza
Suite 400
Providence, RI  02903
reale@conversent.net

      I also certify that a true copy of the foregoing (along with a copy of the ECF receipt), was mailed, postage pre-paid, to:

Co-Counsel for Plaintiff
Mark Robert Vespole, Esq.
Theresa M. Mullen, Esq.
Tressler, Soderstrom Maloney & Priess
744 Broad Street, Suite 1510
Newark, NJ  07102
mvespole@tsmp.com

      /s/ _____
      Stephen B. Lang