**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| CERTIFIED POWER SYSTEMS, INC.,<br><br>Plaintiff,<br>v.<br><br>RHODE ISLAND STATE ENERGY STATUTORY TRUST 2000, FPLE RHODE ISLAND STATE ENERGY, L.P. and FPLE RHODE ISLAND STATE ENERGY GP, INC.,<br><br>Defendants,<br>v.<br><br>CERTIFIED POWER SYSTEMS, INC.,<br><br>Defendant on Counterclaim/Third-Party Plaintiff,<br><br>v.<br><br>ZAMPELL REFRACTORIES, INC.,<br><br>Third-Party Defendant. | ) | **C.A. No. 05-066-ML** |

**PLAINTIFF/COUNTERCLAIM DEFENDANT/THIRD-PARTY PLAINTIFF, CERTIFIED POWER SYSTEMS, INC.'S MOTION *IN LIMINE* TO BAR THE EXPERT TESTIMONY OF FLORENCE CONE REGARDING THE CAUSE AND ORIGIN OF THE PLENUM FIRE AND ALL TESTIMONY REGARDING THE QUALITY OF THE WELDS ON THE PROJECT**

Pursuant to Federal Rules of Evidence 401, 402, 403, 702 and 704, plaintiff/defendant on counterclaim/third-party plaintiff, Certified Power Systems Inc. ("CPS"), by its attorneys, Jessica L. Papazian-Ross of Visconti & Boren Limited and Mark Robert Vespole of Tressler, Soderstrom, Maloney & Priess, LLP, hereby moves the Court for an order *in limine* to bar the expert testimony of Florence Cone regarding the cause and origin of the December 3, 2004, the

quality of the welding by Zampell on the project, and any causal connection between the welding and the fire. In support of this motion, CPS states:

RHODE ISLAND STATE ENERGY STATUTORY TRUST 2000, FPLE RHODE ISLAND STATE ENERGY, L.P. and FPLE RHODE ISLAND STATE ENERGY GP, INC., (hereinafter collectively referred to as "FPL") seeks to rely upon the expert testimony of Florence Cone of Thielsch Engineering with respect to the quality of the welding as it relates to the December 3, 2004 fire. However, it is clear from Cone's testimony that she does not have the qualifications and expertise to render an opinion that the fire was caused by improper welding. Without a reliable foundation, the expert's testimony is of no value to the jury.

Thus, for the reasons set forth in the attached Memorandum of Law in support of this Motion, this court should grant the Motion *in Limine* and bar the testimony of Florence Cone and/or conduct a preliminary hearing to address the issues raised herein.

CERTIFIED POWER SYSTEMS, INC.
By their Attorneys,

/s/ Jessica L. Papazian-Ross
Jessica L. Papazian-Ross, Esq. (#3905)
***Visconti & Boren Ltd***.
55 Dorrance Street
Providence, RI 02903
Tel. No. (401) 331-3800
Fax No. (401) 421-9302
JLPR@viscontilaw.com

*Pro hac vice counsel*
Mark Robert Vespole, Esq.
***Tressler, Soderstrom, Maloney & Priess, LLP***
744 Broad Street, Suite 1510
Newark, NJ 07102
Tel No. (973) 848-2900
Fax No. (973) 623-0405

# CERTIFICATION OF SERVICE

The undersigned hereby certifies that this document has been filed electronically on this 3rd day of October, 2006 and is available for viewing and downloading to the ECF registered counsel of records:

Via Electronic Service/ECF:

**Armando E. Batastini**
abastini@eapdlaw.com rjil@eapdlaw.com

**Janet R. Davis**
janet.davis@mbtlaw.com

**Mark W. Freel**
Mfreel@eapdlaw.com

**John R. Mahoney**
JackMahoney@amplawllp.com

**Matthew Thomas Oliverio**
mto@om-rilaw.com

**Joseph John Reale, Jr.**
realse@conversent.net

**Stephen B. Lang**
slang@hhc-law.com

The undersigned hereby certifies that on this 3rd day of October, 2006 a true copy of the within document was forwarded via U.S. Mail, postage pre-paid, to the following counsel of record:
Via U.S. Mail, postage pre-paid:

**Georgene M. Wilson**
**Andrew M. Hutchison**
Meckler Bulger & Tilson LLP
Suite 1800
123 North Wacker Drive
Chicago, IL 60606

**Mark Robert Vespole**
Tressler, Soderstrom, Maloney & Priess, LLP
744 Broad Street, Suite 1510
Newark, NJ 07102

/s/ Jessica L. Papazian-Ross
Jessica L. Papazian-Ross, Esq. (#3905)
***Visconti & Boren Ltd***.
55 Dorrance Street
Providence, RI 02903
Tel. No. (401) 331-3800
Fax No. (401) 421-9302
JLPR@viscontilaw.com

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| CERTIFIED POWER SYSTEMS, INC., Plaintiff, | ) | |
| v. | ) | |
| RHODE ISLAND STATE ENERGY STATUTORY TRUST 2000, FPLE RHODE ISLAND STATE ENERGY, L.P. and FPLE RHODE ISLAND STATE ENERGY GP, INC., | ) | **C.A. No. 05-066-ML** |
| Defendants, | ) | |
| v. | ) | |
| CERTIFIED POWER SYSTEMS, INC., | ) | |
| Defendant on Counterclaim/Third-Party Plaintiff, | ) | |
| v. | ) | |
| ZAMPELL REFRACTORIES, INC., | ) | |
| Third-Party Defendant. | ) | |

**CERTIFIED POWER SYSTEMS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE* TO BAR THE EXPERT TESTIMONY OF FLORENCE CONE**

**Florence Cone Lacks The Necessary Expertise to Offer an Opinion On The Welding Done By Zampell**

Florence Cone issued a report dated July 24, 2006 that offered opinions regarding the quality of the Zampell welds and an interpretation of various contracts provisions. In addition she offers opinions regarding what CPS and Zampell knew or should have know about the status of the evaporative cooling media. (A copy of the 7/24/06 report is annexed hereto as Exhibit A.)

However, Cone gives no indication that she has had any training or experience regarding welding that makes her qualified to render these opinions, nor is it proper for her to offer opinions regarding contract interpretation. Finally her opinions regarding what a party might know goes well beyond any expertise that she might have and falls more into the category of mind reading. In reviewing Cone's resume (a copy of Cone's resume is annexed hereto as Exhibit B) and deposition testimony, it is clear that her experience and education is in metallurgy and failure analysis and not in contract administration or law. Cone admits that she is not an expert in contract interpretation.

Among the conclusions reached by Ms. Cone in here report were the following

- The welding performed by Zampell did not comply with the requirements of the contract
- CPS and Zampell were aware that there was flammable material within the air inlet filter housing
- CPS and Zampell should have been aware that there was evaporative cooler media contained within the air inlet filter housing.
- CPS was informed that the evaporative cooler media was flammable
- CPS was solely responsible for the safety of its personnel , equipment , property and subcontractors.
- CPS was responsible for assessing the work scope to ensure that it could be performed in a safe manner and / or taking the necessary precautions to ensure that the work could be performed safely.
- CPS was solely responsible for their own safety and the safety of its subcontractors. (This would include welding safety.)

- FP&L did not have any responsibility for welding safety of CPS or its Subcontractors to CPS.

(Cone July 24, 2006 Report, pp. 21-23)

The above conclusions are not based on any scientific or engineering knowledge and are either Cone's interpretation of the FPL/CPS contract or the evidence. There is no specialized knowledge or training required to reach these conclusions, merely a review of the evidence. Clearly this will be within the province of the jury, and absent a showing that Cone has expertise in this area to assist the jury in understanding concepts that an average person would not comprehend without assistance, she should not be allowed to testify to these opinions and usurp the jury's function.

Moreover it is clear that Cone has no training in either contract interpretation or law that would allow here to offer these non-expert opinions. Cone testified:

> Q. So do you consider yourself an expert in the interpretation of contract documents as it pertains to construction projects, such as the one that's at issue in this case?
>
> A. No. I'm just saying that's been my experience. I'm not an expert in the interpretation of —I've reviewed a number of contract documents. I have an understanding of the way that they're set up and what your responsibilities as the contractor would be.

(Cone Transcript, p. 96, lines 23-24, p. 97, lines 1-8.[1])

Cone candidly admitted that she has never offered an opinion in any other case in which she discussed a contract and an owners' relief from a code obligation by virtue of the contractual language. Cone testified:

> Q. Have you ever given an opinion in any other case in which you have discussed a contract or an owner's relief from a code obligation by virtue of contractual language?

[1] The relevant pages of the August 24, 2006 Cone deposition transcript are annexed as Exhibit C.

A. No, sir.

(Cone Transcript, p. 98, lines 12-16.)

Based on these credentials it is clear that Cone should not be allowed to offer her interpretation of either the contract or her opinion as to what may or may not have been known to CPS and Zampell employees. The admission of Ms. Cone's testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides in relevant part:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill experience, training, or education, may testify thereto in the form of an opinion or otherwise.

This court, as well as the First Circuit, has long recognized that it is the court's role to act as gatekeeper and admit only expert evidence that rests on a reliable foundation and is relevant to the particular facts of the case. See, Hall v. Eklof Marine Corporation, 399 F.Supp. 2d 369, 381 (D.R.I. 2004); Cipollone v. Yale Industrial Products, Inc., 202 F.3d 376, 380 (1st Cir. 2000). Likewise, the Rhode Island Supreme Court has held that expert testimony must be reliable and the opinions must be predicated on facts legally sufficient to support the conclusions. In Kurczy v. St. Joseph Veterans Association, Inc., the court stated:

> "Before admitting expert testimony, the trial justice must evaluate whether the testimony that a party seeks to present to the jury is `relevant, within the witness' expertise, and based on an adequate factual foundation." Id. at 940.

An expert must show a "threshold" competency, as the court held in Levin v. Dalva Brothers, Inc., 459 F.3d 68, 77 (C.A.1, 2006):

> Among other requirements, Fed.R.Evid. 702 mandates that a putative expert be qualified to testify by knowledge, skill, experience, training or education. *See* Diefenbach v. Sheridan Transp., 229 F.3d 27, 30 (1st Cir. 2000). Under this rule, a testifying expert "should have achieved a meaningful threshold of expertise" in the given area. Prado Alvarez v. R.J. Reynolds

> Tobacco Co., Inc., 405 F.3d 36, 40 (1st Cir. 2005). That "a witness qualifies as an expert with respect to certain matters or areas of knowledge, [does not mean] that he or she is qualified to express expert opinions as to other fields." *Nimely v. City of New York*, 414 F.3d 381, 399 n. 13 (2d Cir.2005).

It should first be noted that Cone is not a licensed professional engineer.

Q. Do you have any professional designations?

A. What do you mean by that?

Q. "Professional engineer" is one of them, I guess.

A. No, sir. I'm not a professional engineer. I do have ASNT Level II inspector qualifications for liquid penetrant and magnetic particle examination.

(Cone Transcript, p. 7, lines 10-16.)

Cone testified that she has done actual welding on 10 to 15 occasions to "see what it was like."

Q. I take it you've never actually done welding yourself, or have you?

A. I have.

Q. Did you ever receive any welding qualifications?

A. No, sir.

Q. In what capacity have you done welding?

A. Just to see what it was like.

Q. And could you quantify the number of occasions that you've done that?

A. Probably on 10 or 15 different occasions. I've tried welding with sub arc equipment. I've tried welding with stick equipment. I've tried welding with gas metal arc welding equipment, as well as welding with flux cored.

(Cone Transcript, pp. 16-17, lines 24, 1-13)

For the foregoing reasons it is respectfully submitted that Florence Cone not be allowed to testify as to the quality of the Zampell welds, provide opinions on the interpretation of the

contracts between the parties or testify about her opinions of what Zampell and CPS knew or should have known prior to the December 3, 2004 fire.

**Cone's Opinions Regarding The NFPA And OSHA Standards Should Be Excluded**

On September 29, 2006, this court held that testimony will not be allowed at trial regarding OSHA and NFPA standards, and that these standards could not be commented upon by experts for CPS and Zampell. While CPS argued against and disagrees with Court's ruling, to the extent that references to NFPA and OSHA standard have been excluded from evidence by virtue of the Court's September 29, 2006 ruling on FPL's motion to exclude extrinsic evidence, any testimony by Florence Cone interpreting OSHA and NFPA should also be excluded.

In American Title Ins. Co. v. East West Financial Corp., 817 F.Supp. 251, 257 (D.R.I.,1993), rev. other grounds at American Title Ins. Co. v. East West Financial, 16 F.3d 449 (1st Cir. 1994), Judge Torres held:

> On the contrary, relitigating those matters would be inconsistent with the "law of the case" doctrine and the objectives of judicial economy and finality that it serves. Under the "law of the case" doctrine, a decision on an issue of law made at one stage of a case is viewed as a binding precedent that must be followed at later stages of that case. See Moore, supra at ¶ 0.404[1]. When the decision is one made by a higher court, a lower court has no authority to revisit the issue. See Moore, supra at ¶ 0.404[1]. When the decision is one made by the same court or a co-ordinate court, the court in which the case is pending has the power to reconsider the decision but should exercise that power only if there are extraordinary circumstances that, otherwise, would cause a serious injustice. Bell, supra, at 251; United States v. Rivera-Martinez, 931 F.2d 148, 151 (1st Cir.1991), cert. denied, 502 U.S. 862, 112 S.Ct. 184, 116 L.Ed.2d 145 (1991). See Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 814-15, 108 S.Ct. 2166, 2177, 100 L.Ed.2d 811 (1988) (law of the case doctrine applies with the same force to the decisions of coordinate court as it does to a court's own decisions).

The distinction between an expert being allowed to testify regarding facts and an expert being allowed to interpret the law was considered by the Court in Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 99 -101 (1st Cir. 1997), wherein the court held:

> Because the jury does not decide such pure questions of law, such testimony is not helpful to the jury and so does not fall within the literal terms of Fed.R.Evid. 702, which allows expert testimony "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue..." As the D.C. Circuit noted, "Expert testimony that consists of legal conclusions cannot properly assist the trier of fact in either respect..." Burkhart, 112 F.3d at 1212; *see also* Aguilar, 966 F.2d at 447 (expert legal opinion does not assist the factfinder under Rule 702). This is because the judge's expert knowledge of the law makes any such assistance at best cumulative, and at worst prejudicial. *See* Burkhart, 112 F.3d at 1213 ("Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards."); 7 Wigmore on Evidence § 1952 (Chadbourne rev. 1978) ("It is not the common knowledge of the jury which renders the witness' opinion unnecessary, but the special legal knowledge of the judge.") [6] [7]
>
> Similarly, Fed.R.Evid. 704(a), which removes the common-law bar on "otherwise admissible" testimony that "embraces an ultimate issue to be decided by the trier of fact," does not vitiate the rule against expert opinion on questions of law. The common law did not allow an expert witness to inform the jury of his or her factual conclusion concerning the "ultimate issue" in the case, because this was thought to invade the province of the jury. The abolition in Rule 704(a) of this "ultimate issue" rule allows the expert witness to offer his or her factual conclusion in order to aid the jury, which properly can choose to accept or reject it. However, questions of law are not "to be decided by the trier of fact"; rather it is for the judge, not the lawyers or the witnesses, to inform the jury of the law applicable in the case and to decide any purely legal issue.

Therefore, the opinions of Florence Cone, to the extent they seek to provide a legal opinion, must not be allowed.

**The Opinions Of Florence Cone**
**Must Be Barred Because They Do Not Rise To The Necessary Level**
**Of Certainty That Is Required Under The Law Of Rhode Island**

In order for expert testimony to be admissible, it must be grounded in terms of reasonable probability. An expert cannot testify to mere possibilities. The Cone report in general and Cone's testimony in particular cannot meet the standard of "reasonable probability." Florence Cone's opinions are not couched in terms of reasonable engineering certainty. She offers a series of conclusions but none of these opinions meet the standard set forth under Rhode Island Law to a reasonable degree of engineering certainty. In fact she cannot opine, with any degree of certainty whether her criticisms of Zampell welding were a *sin qua non* with respect to the fire. She cannot state to a reasonable degree of engineering or scientific certainty whether the fire would have occurred regardless of the quality of the Zampell welds. Cone testified:

> Q. Do you have an opinion as to whether or not without these criticisms of the welds that Zampell did that we've just been talking about, there otherwise would have been ignition of evaporative cooling media or other material as a result of the welding process?
> (objection omitted)
>
> A. There may have been.

(Cone Transcript, p. 77, lines 21-24; p. 78, lines 1-7.)

The questioning continued.

> Q. Just so I'm clear, you don't have an opinion in this case as to whether or not if the welds were done properly, without all the criticism and problems that you've pointed out, there would have been a fire or not?
>
> Mr. FREEL: Objection. You may answer
>
> A. My response would be that the quality of the welds, the extent of the burn through, the location of the welds significantly increased the potential for ignition of the evaporative cooling media.

Q. That wasn't my question. My question is can you give an opinion in this case as to whether or not if the welds were done properly in accordance with all the codes and without any of the criticisms that you've mentioned, there still would have been a fire or not?

A. There may not, there may have.

Q. So you don't know.

A. Don't know.

(Cone Transcript p. 79, lines 11-24; p. 80, lines 1-9)

In fact Ms. Cone again testified that she does not know whether a properly done weld would have caused the fire. Specifically she stated:

Q. And earlier I know Mr. Vespole asked you questions about whether you had an opinion as to whether welding that was properly undertaken in this instance would have ignited the evaporative cooler media; your answer to that question is you do not know.

A. My answer to that question is it would depend.

Q Depend on what?

A. A variety of different factors.

Q. What are they?

A. It would depend where the weld was in relationship to the evaporative cooling media…

(Cone Transcript p. 153 line 24, p. 154, lines 1-11.)

She continued:

A. The question is if the weld had been properly undertaken—

Q. At C-3?

A. --would a fire have resulted, I do not know. It may, it may not have. If your question is did the temperature at C-3, if the weld had been properly undertaken and the fact that the stainless steel transition section is approximately less than an eighth of an inch thick reach 350 degrees Fahrenheit, yes.

(Cone Transcript, p. 155, lines 1-18.)

In DaSilva v. American Brands, Inc., 845 F.2d 356, 361 (1st Cir. 1988) the First Circuit Court of Appeals set forth the requirement that opinions be offered in terms of "reasonable probability." The court stated:

> The record does not support this contention. Dr. Robbins was subjected to extensive, exhaustive and, at times, quite antagonistic cross-examination. While at times he did not choose the precisely proper wording for his responses, those responses generally reflected a conclusion based on a reasonable degree of medical certainty. As an expert, he was not required to fully explain with certainty the origin of every injury suffered by the victim. Rather, he could express his conclusions in terms of reasonable probabilities, based on his expertise applied to the facts available to him.

Similarly in Data General Corp. v. Grumman Systems Support Corp., 36 F.3d 1147, 1170–1171 (1st Cir. 1994) the court in deciding a patent infringement case considered the standard of "reasonable probability" in terms of tort damages. The court held:

> In defining that burden, it is useful to borrow familiar tort law principles of causation and damages. See Deltak, Inc. v. Advanced Sys., Inc., 574 F.Supp. 400, 403 (N.D.Ill.1983) *1171 (Posner, J., sitting by designation) (referring to "normal tort damages principles" in discussion of copyright damages), vacated on other grounds, 767 F.2d 357 (7th Cir. 1985); 3 Nimmer § 14.02[A], at 14-11, 14-20 to 14-21 n. 49.8 (alluding to notions of "but for" and proximate causation). Thus, the plaintiff should first establish that the infringement was the cause-in-fact of its loss by showing with reasonable probability that, but for the defendant's infringement, the plaintiff would not have suffered the loss. See, e.g., Robert R. Jones Assocs. v. Nino Homes, 858 F.2d 274, 281 (6th Cir. 1988); 3 Nimmer, § 14.02[A], at 14-9; cf. Harper & Row, 471 U.S. at 567, 105 S.Ct. at 2234 (noting that in rebuttal defendant may "show that this damage would have occurred [anyway] had there been no taking of copyrighted expression"); Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476, 507, 84 S.Ct. 1526, 1543, 12 L.Ed.2d 457 (1964). (Emphasis added)

The Supreme Court of Rhode Island similarly defined the standard in Sweet v. Hemingway Transport, Inc., 114 R.I. 348, 355, 333 A.2d 411, 415 (R.I. 1975), wherein the court held:

> It is well settled here in this state that when the only evidence offered to establish causal relationship between one person's activities and another's injuries is the testimony of a medical expert, such evidence must speak in terms of 'probabilities' rather than 'possibilities.' Suffoletta v. Ricci Drain Laying Co., 113 R.I. 114, 319 A.2d 19 (1974); Taglianetti v. Jo-Dee Corp., 103 R.I. 552, 239 A.2d 192 (1968); Woods v. Safeway System, Inc., 101 R.I. 343, 223 A.2d 347 (1966). Expert testimony, if it is to have any evidentiary value, must state with some degree of positiveness that a given state of affairs is the result of a given cause. Absolute certainty, of course, is not required. In those cases where expert testimony is relied on to show that out of several potential causes a given result came from one specific cause the expert must report that the result in question 'most probably' came from the cause alleged. Tabuteau v. London Guar. & Accident Co., 351 Pa. 183, 40 A.2d 396 (1945).

Based on the forgoing it is clear that since Cone is unable to provide opinions to a reasonable degree of engineering probability, her opinions regarding causal connection between the Zampell welds and the ignition of the evaporative cooling media as well as the quality if the Zampell welds are not admissible.

WHEREFORE, plaintiff/defendant on counterclaim/third-party plaintiff, Certified Power Systems Inc., for the reasons set forth above seeks an order *in limine* barring the testimony of Florence Cone with respect to the December 3, 2004.

CERTIFIED POWER SYSTEMS, INC.
By their Attorneys,

/s/ Jessica L. Papazian-Ross
Jessica L. Papazian-Ross, Esq. (#3905)
***Visconti & Boren Ltd***.
55 Dorrance Street
Providence, RI 02903
Tel. No. (401) 331-3800
Fax No. (401) 421-9302

JLPR@viscontilaw.com

*Pro hac vice counsel*
Mark Robert Vespole, Esq.
***Tressler, Soderstrom, Maloney & Priess, LLP***
744 Broad Street, Suite 1510
Newark, NJ 07102
Tel No. (973) 848-2900
Fax No. (973) 623-0405

NEWARK-#21024-v1

***CERTIFICATION OF SERVICE***

The undersigned hereby certifies that this document has been filed electronically on this 3rd day of October, 2006 and is available for viewing and downloading to the ECF registered counsel of records:

Via Electronic Service/ECF:

**Armando E. Batastini**
abastini@eapdlaw.com rjil@eapdlaw.com

**Janet R. Davis**
janet.davis@mbtlaw.com

**Mark W. Freel**
Mfreel@eapdlaw.com

**John R. Mahoney**
JackMahoney@amplawllp.com

**Matthew Thomas Oliverio**
mto@om-rilaw.com

**Joseph John Reale, Jr.**
realse@conversent.net

**Stephen B. Lang**
slang@hhc-law.com

The undersigned hereby certifies that on this 3rd day of October, 2006 a true copy of the within document was forwarded via U.S. Mail, postage pre-paid, to the following counsel of record:
Via U.S. Mail, postage pre-paid:

**Georgene M. Wilson**
**Andrew M. Hutchison**
Meckler Bulger & Tilson LLP
Suite 1800
123 North Wacker Drive
Chicago, IL 60606

**Mark Robert Vespole**
Tressler, Soderstrom, Maloney & Priess, LLP
744 Broad Street, Suite 1510
Newark, NJ 07102

/s/ Jessica L. Papazian-Ross
Jessica L. Papazian-Ross, Esq. (#3905)
***Visconti & Boren Ltd***.
55 Dorrance Street
Providence, RI 02903
Tel. No. (401) 331-3800
Fax No. (401) 421-9302
JLPR@viscontilaw.com