**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| CERTIFIED POWER SYSTEMS, INC., Plaintiff, | ) | |
| v. | ) | |
| RHODE ISLAND STATE ENERGY STATUTORY TRUST 2000, FPLE RHODE ISLAND STATE ENERGY, L.P. and FPLE RHODE ISLAND STATE ENERGY GP, INC., | ) | **C.A. No. 05-066-ML** |
| Defendants, | ) | |
| v. | ) | |
| CERTIFIED POWER SYSTEMS, INC., | ) | |
| Defendant on Counterclaim/Third-Party Plaintiff, | ) | |
| v. | ) | |
| ZAMPELL REFRACTORIES, INC., | ) | |
| Third-Party Defendant. | ) | |

**PLAINTIFF/COUNTERCLAIM DEFENDANT/THIRD-PARTY PLAINTIFF, CERTIFIED POWER SYSTEMS, INC.'S MOTION *IN LIMINE* TO BAR THE EXPERT TESTIMONY OF DONALD DUSENBERRY**

Pursuant to Federal Rules of Evidence 401, 402, 403, 702 and 704, plaintiff/defendant on counterclaim/third-party plaintiff, Certified Power Systems Inc. ("CPS"), by its attorneys, Jessica L. Papazian-Ross of Visconti & Boren Limited and Mark Robert Vespole of Tressler, Soderstrom, Maloney & Priess, LLP, hereby moves the Court for an order *in limine* to bar the expert testimony of Donald Dusenberry regarding his interpretation of the FPL/Sargent & Lundy contract and references to NFPA and OSHA standards. In support of this motion, CPS states:

Fourth-party defendant, Sargent & Lundy seeks to rely upon the expert testimony of Donald Dusenberry. For the reasons set forth in the attached Memorandum of Law in support of this Motion, this Court should grant the Motion *in Limine* and bar the testimony of Donald Dusenberry and/or conduct a preliminary hearing to address the issues raised herein.

Plaintiff/Third-Party Counterclaim Defendant,
CERTIFIED POWER SYSTEMS, INC.
By its Attorneys,

/s/ Jessica L. Papazian-Ross
Jessica L. Papazian-Ross, Esq. (#3905)
***Visconti & Boren Ltd.***
55 Dorrance Street
Providence, RI 02903
Tel. No. (401) 331-3800
Fax No. (401) 421-9302
JLPR@viscontilaw.com

**Pro hac vice counsel**
Mark Robert Vespole
Tressler, Soderstrom, Maloney & Priess
744 Broad Street, Suite 1510
Newark, NJ 07102
Tel. No. (973) 848-2900
Fax No. (973) 623-0405

***CERTIFICATION OF SERVICE***

The undersigned hereby certifies that this document has been filed electronically on this 3rd day of October 2006 and is available for viewing and downloading to the ECF registered counsel of records:
Via Electronic Service/ECF:

**Armando E. Batastini**
abastini@eapdlaw.com rjil@eapdlaw.com

**Janet R. Davis**
janet.davis@mbtlaw.com

**Mark W. Freel**
Mfreel@eapdlaw.com

**John R. Mahoney**
JackMahoney@amplawllp.com

**Matthew Thomas Oliverio**
mto@om-rilaw.com

**Joseph John Reale, Jr.**
realse@conversent.net

**Stephen B. Lang**
slang@hhc-law.com

The undersigned hereby certifies that on this 3rd day of October 2006 a true copy of the within document was forwarded via U.S. Mail, postage pre-paid, to the following counsel of record:
Via U.S. Mail, postage pre-paid:

**Georgene M. Wilson**
**Andrew M. Hutchison**
Meckler Bulger & Tilson LLP
Suite 1800
123 North Wacker Drive
Chicago, IL 60606

/s/ Jessica L. Papazian-Ross
Jessica L. Papazian-Ross, Esq. (#3905)
***Visconti & Boren Ltd***.
55 Dorrance Street
Providence, RI 02903
Tel. No. (401) 331-3800
Fax No. (401) 421-9302
JLPR@viscontilaw.com

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| CERTIFIED POWER SYSTEMS, INC.,<br><br>Plaintiff,<br>v.<br><br>RHODE ISLAND STATE ENERGY STATUTORY TRUST 2000, FPLE RHODE ISLAND STATE ENERGY, L.P. and FPLE RHODE ISLAND STATE ENERGY GP, INC.,<br><br>Defendants,<br>v.<br><br>CERTIFIED POWER SYSTEMS, INC.,<br><br>Defendant on Counterclaim/Third-Party Plaintiff,<br><br>v.<br><br>ZAMPELL REFRACTORIES, INC.,<br><br>Third-Party Defendant,<br>v.<br><br>SARGENT & LUNDY, LLC and PREMIER ENGINEERING SERVICES, INC.<br>Fourth-Party Defendant. | ) | **C.A. No. 05-066-ML** |

**<u>CERTIFIED POWER SYSTEMS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE* TO BAR THE EXPERT TESTIMONY OF DONALD DUSENBERRY</u>**

**<u>Donald Dusenberry's Opinions Amount To Nothing More Than An Interpretation Of The Contracts In This Matter And Therefore Are Not Properly The Subject of Expert Testimony</u>**

The report authored by Donald Dusenberry, dated August 30, 2006, provides nothing more than his interpretation of the contract between FPL and Sargent & Lundy. It does not

provide any opinions with respect to cause and origin of the fire or on other structural issues that might properly be the subject of expert testimony. Instead it seeks to usurp the province of the Court and jury by seeking to interpret the contract. (Copy of 8/30/06 report is annexed hereto as Exhibit A.) Moreover, while Dusenberry has an impressive resume as it relates to structural analysis of buildings, it does not give any indication that he has any training or experience regarding either the legal interpretation of contracts or the application of NFPA 51-B. (Copy of Dusenberry's resume is annexed hereto as Exhibit B.)

In reviewing Dusenberry's conclusions it is clear that his opinions are not based on science or engineering but merely his interpretation of the contract documents.

- The RISEC agreement with S&L required S&L to design modifications for the air intake system and to provide certain construction phase services.

- S&L's construction phase obligations did not include responsibility for means and methods of construction, including site safety. Indeed, the agreement between RISEC and S&L specifically freed S&L from responsibility for site safety issues, even if S&L failed to alert RISEC to hazards.

- A separate document listing the duties of the S&L site representative did alter S&L's contracted role regarding site safety.

- On issues related to the design of the modifications to the air intake system, the Project Specification prepared by S&L described, in a manner consistent with convention and the standard of care in the construction industry, the technical information required to construct the system modifications and the reference standards that, by the contract between RISEC and CPS, bound CPS in its work. The Project Specification appropriately did not prescribe means and methods of construction.

- The S&L site representative was not involved, by contract or by practice on the site in the evaluation of fire hazards related to welding and did not participate in the issuance of hot work permits. Management of those matters remained with RISEC and the contractors.

- The Pneumafil drawing that S&L distributed on 5 November 2004 contained an unambiguous warning about the flammability of the evaporative cooling media. Hence, all principal parties knew or should have known prior to the fire that the inlet structures contained flammable material.

- CPS and Zampell did not perform their contracted obligations to inspect the site sufficiently to identify the fire hazard associated with welding on the outside of the inlet structures with flammable evaporative cooling media inside the structures.

- CPS and Zampell did not take the contractual and industry-standard precautions necessary to prevent ignition of the evaporative cooling media during welding.

- S&L fulfilled its contractual obligations on this project, and conducted itself within the industry standard of care in the execution of its contractual obligations.

None of the above opinions are based on engineering knowledge or any industry codes or standards. It is the job of the court to determine whether the contract meaning is clear, and it is the job of the jury to decide the responsibilities of the parties under the contract.

The admission of Dusenberry's testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides in relevant part:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Clearly, Dusenberry does not have any expertise above and beyond the Court that would allow him to shed any light on the interpretation of contract between FPL and either Sargent & Lundy or CPS.

This court, as well as the First Circuit, has long recognized that it is the Court's role to act as gatekeeper and admit only expert evidence that rests on a reliable foundation and is relevant to the particular facts of the case. See, Hall v. Eklof Marine Corporation, 399 F.Supp.2d 369, 381 (D.R.I. 2004); Cipollone v. Yale Industrial Products, Inc., 202 F.3d 376, 380 (1st Cir. 2000). Likewise, the Rhode Island Supreme Court has held that expert testimony must be reliable and the opinions must be predicated on facts legally sufficient to support the conclusions. In Kurczy v. St. Joseph Veterans Association, Inc., the court stated:

> "Before admitting expert testimony, the trial justice must evaluate whether the testimony that a party seeks to present to the jury is `relevant, within the witness' expertise, and based on an adequate factual foundation." Id. at 940.

An expert must show a "threshold" competency. As the court held in Levin v. Dalva Brothers, Inc., 459 F.3d 68, 77 (1st Cir. 2006):

> Among other requirements, Fed.R.Evid. 702 mandates that a putative expert be qualified to testify by knowledge, skill, experience, training or education. *See* Diefenbach v. Sheridan Transp., 229 F.3d 27, 30 (1st Cir. 2000). Under this rule, a testifying expert "should have achieved a meaningful threshold of expertise" in the given area. Prado Alvarez v. R.J. Reynolds Tobacco Co., Inc., 405 F.3d 36, 40 (1st Cir. 2005). That "a witness qualifies as an expert with respect to certain matters or areas of knowledge, [does not mean] that he or she is qualified to express expert opinions as to other fields." Nimely v. City of New York, 414 F.3d 381, 399 n. 13 (2d Cir.2005).

Aside from the fact that Dusenberry's report is an exercise in contract interpretation, it is also clear that his interpretation is not based on any established code or standard. Dusenberry's deposition testimony makes it clear that he did not rely on NFPA, OSHA, ANSI or any other standard with regard to his assessment of Sargent & Lundy's conduct.

Dusenberry Transcript, p. 79, lines 23 – 24 and p. 80 lines 1 – 11 provides:[1]

> Q. Now, what is the particular industry standard of care you were making reference to in that paragraph?
>
> A. The industry standard of care as I understand it based on the contract, the reference documents, my 30 years of experience in the industry, and my review of the project documents.

Similarly, he states at p. 81, lines 23-24, p. 82, lines 1-24, p. 83 line 1 and lines 7-17:

> Q. So, when you've made reference in that last bullet point to the industry standard of care, what particular industry standard of care were you talking about?

[1] The relevant pages of the September 12, 2006 Dusenberry deposition transcript are annexed as Exhibit C.

A. Industry standard of care refers, in addition to those matters, what is conventionally performed as the engineer's role in a project.

Q. And where can they be found?

A. An industry standard of care can refer to the practice in the industry in addition to written standards.

Q. What written standards are there? You mentioned building codes. You mentioned general accepted methods of analysis. What written standards that may apply to this particular case and Sargent & Lundy's role exist?

A. Well, for instance, there are - - there's a Construction Standards Institute which prepares model specifications for technical work and general provisions and whatnot for specifications that engineers develop. And to the extent that I reviewed those parts as they relate tot his matter, I am convinced that Sargent & Lundy's work was performed in accordance with those standards of care.

Q. Did you specify what they were in your report?

A. I did not, no.

Q. Yeah, but are you saying there are some written standards which you did review and felt S&L complied with, but you didn't reference them in your report?

A. Well, they represented a body of knowledge of my experience from 30 years in practice. I didn't specifically pull them out to review them for this case, but those standards and many other documents, references, and books constitute the body of my knowledge which I've applied on this case.

See also p. 93, lines 1-13:

Q. So I think I've gone through all of the written standards that you have referenced in your report. Is there anyone that you can think of that I left out?

A. Not as I sit here right now. We could take a look at the report but I don't believe so.

Q. Okay. And none of those standards then that you've cited in your report apply specifically to the conduct of Sargent & Lundy in its role as either designer, preparer of the specifications or field engineer?

A. As I sit here right now, I think that is an accurate statement, yes.

**To The Extent Donald Dusenberry's Report Seeks To Draw Conclusions Under Rhode Island Law His Testimony Must Not Be Permitted**

Among the conclusions reached by Dusenberry is his opinion that the safety practices of CPS and Zampell do not comply with the requirements of OSHA and NFPA. In rendering these opinions Mr. Dusenberry invades the province of the court by seeking to render a legal opinion as to the requirements of these laws. Since OSHA and NFPA standards are the Law of the State of Rhode Island, and in light of the Court's September 29, 2006 ruling on FPL's motion to exclude extrinsic evidence, Dusenberry cannot offer an opinion that would usurp the court's role as the ultimate authority on the application of these laws.

The distinction between an expert being allowed to testify regarding facts and an expert being allowed to interpret the law is considered by the Court of Appeals for the First Circuit Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 99 -101 (1st Cir.1997), wherein the court held:

> Because the jury does not decide such pure questions of law, such testimony is not helpful to the jury and so does not fall within the literal terms of Fed.R.Evid. 702, which allows expert testimony "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue..." As the D.C. Circuit noted, "Expert testimony that consists of legal conclusions cannot properly assist the trier of fact in either respect..." Burkhart, 112 F.3d at 1212; see *also* Aguilar, 966 F.2d at 447 (expert legal opinion does not assist the factfinder under Rule 702). This is because the judge's expert knowledge of the law makes any such assistance at best cumulative, and at worst prejudicial. See Burkhart, 112 F.3d at 1213 ("Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards."); 7 Wigmore *on Evidence* § 1952 (Chadbourne rev. 1978) ("It is not the common knowledge of the jury which renders the witness' opinion unnecessary, but the special legal knowledge of the judge.")
>
> Similarly, Fed.R.Evid. 704(a), which removes the common-law bar on "otherwise admissible" testimony that "embraces an ultimate

> issue to be decided by the trier of fact," does not vitiate the rule against expert opinion on questions of law. The common law did not allow an expert witness to inform the jury of his or her factual conclusion concerning the "ultimate issue" in the case, because this was thought to invade the province of the jury. The abolition in Rule 704(a) of this "ultimate issue" rule allows the expert witness to offer his or her factual conclusion in order to aid the jury, which properly can choose to accept or reject it. However, questions of law are not "to be decided by the trier of fact"; rather it is for the judge, not the lawyers or the witnesses, to inform the jury of the law applicable in the case and to decide any purely legal issue.

Moreover, while it is clearly improper for Dusenberry to offer these opinions, in general it is even more improper for him to offer opinions with reference to NFPA 51-B, as he admittedly lacks the necessary experience to so.

Dusenberry's lack of background is evident in his admission that he did not know if the NFPA is applicable under Rhode Island law. (Dusenberry Transcript, p. 96, lines 7-24):

Q. Are those the same contracts which in response to a question from Mr. Mahoney you weren't sure were trumped by OSHA or NFPA?
(Mr. Lang Objection)

Q. You can answer.

A. Well, I'm rather certain that OSHA regulations would apply in spite of whatever contract language there is. So I would – I guess the answer to that question is I'm aware it is possible that OSHA would trump the contract if it was applicable in this particular case.

Q. Would you say the same about NFPA if it were applicable under Rhode Island law?
(Mr. Lang Objection)

A. I would have to know under what context NFPA was mandated by Rhode Island law.

Q. And you don't know that?

A. As I sit here right now, I don't.

Finally, Dusenberry admitted that he may never have given an opinion in a case in which NFPA 51-B was involved. (Dusenberry Transcript, p. 99 lines 4-15):

Q. Do you have any recollection of cases that are on this list for which you didn't give testimony but for which you gave opinions about NFPA 51-B?

A. Not as I sit here right now. There may be instances, but I can't think of any.

Q. So this could be the first case in which you've given an opinion specifically about 51B of the NFPA?

A. Not likely, but it could be.

Q. You're not sure?

A. As I sit here right now, I don't remember the details of cases that are not active.

**Dusenberry's Should Not Be Allowed To Testify Regarding Either NFPA Or OSHA Standards**

In ruling on the admissibility of testimony regarding OSHA and NFPA standards on September 29, 2006, the Court has held that evidence of these standards may not be admitted as evidence, and that these standards could not be commented upon by experts for CPS and Zampell. The same issue arises with respect to the testimony of Donald Dusenberry, and under the Law of The Case doctrine, the same holding must be reached. Based on this court's prior rulings, in rendering these opinions, Dusenberry should not be able to opine with respect to any state law. Since OSHA and NFPA standards are the law of the State of Rhode Island, an expert cannot offer an opinion that would usurp the court's role as the ultimate authority on the application of these laws.

In American Title Ins. Co. v. East West Financial Corp., 817 F.Supp. 251, 257 (D.R.I. 1993), rev. other grounds at American Title Ins. Co. v. East West Financial, 16 F.3d 449 (1st Cir.1994) Judge Torres, held:

> On the contrary, relitigating those matters would be inconsistent with the "law of the case" doctrine and the objectives of judicial economy and finality that it serves. Under the "law of the case" doctrine, a decision on an issue of law made at one stage of a case is viewed as a binding precedent that must be followed at later stages of that case. See Moore, supra, at ¶ 0.404[1]. When the decision is one made by a higher court, a lower court has no authority to revisit the issue. See Moore, supra at ¶ 0.404[1]. When the decision is one made by the same court or a co-ordinate court, the court in which the case is pending has the power to reconsider the decision but should exercise that power only if there are extraordinary circumstances that, otherwise, would cause a serious injustice. Bell, supra, at 251; United States v. Rivera-Martinez, 931 F.2d 148, 151 (1st Cir.1991), cert. denied, 502 U.S. 862, 112 S.Ct. 184, 116 L.Ed.2d 145 (1991). See Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 814-15, 108 S.Ct. 2166, 2177, 100 L.Ed.2d 811 (1988) (law of the case doctrine applies with the same force to the decisions of coordinate court as it does to a court's own decisions).

The distinction between an expert being allowed to testify regarding facts and an expert being allowed to interpret the law is considered by the Court in Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 99 -101 (1st Cir. 1997), wherein the court held:

> Because the jury does not decide such pure questions of law, such testimony is not helpful to the jury and so does not fall within the literal terms of Fed.R.Evid. 702, which allows expert testimony "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue..." As the D.C. Circuit noted, "Expert testimony that consists of legal conclusions cannot properly assist the trier of fact in either respect..." Burkhart, 112 F.3d at 1212; see also Aguilar, 966 F.2d at 447 (expert legal opinion does not assist the factfinder under Rule 702. This is because the judge's expert knowledge of the law makes any such assistance at best cumulative, and at worst prejudicial. See Burkhart, 112 F.3d at 1213 ("Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards."); 7 Wigmore on Evidence § 1952 (Chadbourne rev. 1978) ("It is not the common knowledge of the jury which renders the witness' opinion unnecessary, but the special legal knowledge of the judge.") [6] [7]
>
> Similarly, Fed.R.Evid. 704(a), which removes the common-law bar on "otherwise admissible" testimony that "embraces an ultimate

> issue to be decided by the trier of fact," does not vitiate the rule against expert opinion on questions of law. The common law did not allow an expert witness to inform the jury of his or her factual conclusion concerning the "ultimate issue" in the case, because this was thought to invade the province of the jury. The abolition in Rule 704(a) of this "ultimate issue" rule allows the expert witness to offer his or her factual conclusion in order to aid the jury, which properly can choose to accept or reject it. However, questions of law are not "to be decided by the trier of fact"; rather it is for the judge, not the lawyers or the witnesses, to inform the jury of the law applicable in the case and to decide any purely legal issue.

Therefore, the opinions of Donald Dusenberry, to the extent they seek to deal with OSHA and NFPA, must not be allowed.

WHEREFORE, plaintiff/defendant on counterclaim/third-party plaintiff, Certified Power Systems Inc., seeks an order *in limine* barring the testimony of Donald Dusenberry, with respect to his interpretation of the FPL/Sargent & Lundy and FPL/CPS contracts and with regard to OSHA and NFPA codes and standards.

CERTIFIED POWER SYSTEMS, INC.
By their Attorneys,

/s/ Jessica L. Papazian-Ross
Jessica L. Papazian-Ross, Esq. (#3905)
***Visconti & Boren Ltd***.
55 Dorrance Street
Providence, RI 02903
Tel. No. (401) 331-3800
Fax No. (401) 421-9302
JLPR@viscontilaw.com

*Pro hac vice counsel*
Mark Robert Vespole, Esq.
***Tressler, Soderstrom, Maloney & Priess, LLP***
744 Broad Street, Suite 1510
Newark, NJ 07102
Tel No. (973) 848-2900
Fax No. (973) 623-0405
mvespole@tsmp.com

***CERTIFICATION OF SERVICE***

The undersigned hereby certifies that this document has been filed electronically on this 3rd day of October 2006 and is available for viewing and downloading to the ECF registered counsel of records:

Via Electronic Service/ECF:

**Armando E. Batastini**
abastini@eapdlaw.com rjil@eapdlaw.com

**Janet R. Davis**
janet.davis@mbtlaw.com

**Mark W. Freel**
Mfreel@eapdlaw.com

**John R. Mahoney**
JackMahoney@amplawllp.com

**Matthew Thomas Oliverio**
mto@om-rilaw.com

**Joseph John Reale, Jr.**
realse@conversent.net

**Stephen B. Lang**
slang@hhc-law.com

The undersigned hereby certifies that on this 3rd day of October 2006 a true copy of the within document was forwarded via U.S. Mail, postage pre-paid, to the following counsel of record:
Via U.S. Mail, postage pre-paid:

**Georgene M. Wilson**
**Andrew M. Hutchison**
Meckler Bulger & Tilson LLP
Suite 1800
123 North Wacker Drive
Chicago, IL 60606

**Mark Robert Vespole**
Tressler, Soderstrom, Maloney & Priess, LLP
744 Broad Street, Suite 1510
Newark, NJ 07102

/s/ Jessica L. Papazian-Ross
Jessica L. Papazian-Ross, Esq. (#3905)
***Visconti & Boren Ltd*.**
55 Dorrance Street
Providence, RI 02903
Tel. No. (401) 331-3800
Fax No. (401) 421-9302