# Exhibit B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CERTIFIED POWER SYSTEMS, INC.
Plaintiff,

VS. C.A. NO. 05-066-ML

RHODE ISLAND STATE ENERGY
STATUTORY TRUST 200, FPLE
RHODE ISLAND STATE ENERGY, LP,
and FPLE RHODE ISLAND
STATE ENERGY, GP, INC.,
Defendants,
VS.
CERTIFIED POWER SYSTEMS, INC.,
Defendant on Counterclaim/Third Party
Plaintiff,
VS.
ZAMPELL REFRACTORIES, INC.,
Third-Party Defendants/Fourth Party
Plaintiff,
VS.
SARGENT & LUNDY, LLC and
PREMIER ENGINEERING,
Fourth Party Defendants

DEPOSITION OF FLORENCE CONE, a witness in the above-entitled cause, taken on behalf of the PLAINTIFF, before Claudia J. Read, a Notary Public in and for the State of Rhode Island, at the offices of ASQUITH & MAHONEY, 155 South Main Street, Providence, Rhode Island on August 24, 2006 at 9:30 A.M.

RHODE ISLAND COURT REPORTING
25 SEA VIEW AVENUE
EAST PROVIDENCE, RI 02915
(401) 437-3366



PRESENT:

FOR THE PLAINTIFF . . . . . TRESSLER, SODERSTROM,
MALONEY & PRIESS
744 BROAD STREET
SUITE 1510
NEWARK, NJ 07102
BY: MARK VESPOLE, ESQUIRE

FOR THE DEFENDANT . . . . . ASQUITH & MAHONEY
(ZAMPELL) 155 SOUTH MAIN STREET
PROVIDENCE, RI 02903
BY: JOHN R. MAHONEY, ESQUIRE
- AND -
JOSEPH REALE, ESQUIRE

FOR THE DEFENDANT . . . . . EDWARD ANGELL PALMER
(FPLE) & DODGE, LLP
2800 FINANCIAL PLAZA
PROVIDENCE, RI 02903
BY: MARK FREEL, ESQUIRE

FOR THE DEFENDANT . . . . . MECKLER, BULGER & TILSON
(FP-SARGENT & LUNDY) 123 NORTH WACKER DRIVE
CHICAGO, IL 60606
BY: JANET DAVIS, ESQUIRE
- AND -
HIGGINS, CAVANAGH& COONEY
123 DYER STREET
PROVIDENCE, RI 20903
BY: STEPHEN LANG, ESQUIRE



I N D E X

WITNESS PAGE
FLORENCE CONE
Examination By Mr. Vespole. . . . . 4
Examination By Mr. Mahoney. . . . . 108
Further Examination By Mr. Vespole. 164

E X H I B I T S

NO. DESCRIPTION PAGE

CONE'S

1 Resume (2pp) . . . . . . . . . . . . . . . 56

2 Article listing (6pp). . . . . . . . . . 106



(DEPOSITION COMMENCED AT 9:40 A.M.)

FLORENCE CONE

Being duly sworn, deposes and testifies as follows:

THE REPORTER: State your full name for the record, please.

THE WITNESS: Florence Marie Cone.

EXAMINATION BY MR. VESPOLE

**Q. Good morning, Ms. Cone. My name is Mark Vespole. I'm the attorney for CPS in this lawsuit in which you and the company that you work for, Thielsch Engineering, have given expert opinions.**

**I know you've given depositions before and have been an expert witness before, so I'll try to give you the Reader's Digest version of the instructions. We can't talk at the same time. All your answers have to be verbal. If you don't understand my question, tell me and I'll repeat it so that you do, because if you answer a question and don't express any difficulty having understood the question, we'll assume that the answer that you gave is truthful, accurate, and responsive.**

**And as you know, a transcript of your testimony, sworn testimony, is made here today,**



COPY

Page 69

A. They did not comply with the AWS D1.6, correct.
**Q. And separately from that, it's your opinion that the welds were defective because there was excessive melt-through?**
A. That's one of the ways in which they did not comply with AWS D1.6. They did not comply with the design requirements.
**Q. What specific design requirements?**
A. The ones prepared by Zampell.
**Q. What specifically about the requirements did they not comply with?**
A. They were short.
**Q. Okay.**
A. They had unacceptable profile. They had excessive undercut. They had melt-through. And some of them had piping porosity, and melt-through on that.
**Q. And let's take each of those separate criticisms and the fact that the welds were short means that they weren't of the length specified; is that what you're saying?**
A. Yes, sir.
**Q. And you believe the specifications was Zampell's own specification of length?**

Page 70

A. Yes, sir.
**Q. And what do you mean by the fact that the welds didn't have unacceptable profile?**
A. Actually, I said they had unacceptable profile, rather than they did not have unacceptable profile.
**Q. I'm sorry. What did you mean by the fact that the welds did not have acceptable profile or that had unacceptable profile, however you want to say it?**
A. When you look at a fillet weld, there is an acceptable profile, meaning if you were to look at it in cross-section, the crown of the weld is actually supposed to follow a certain pattern.
And if the weld is not acceptable, you may have a crown that is concave, you may have excessive convexity. You may have uneven leg length, and the leg length is supposed to be equal. Basically the weld doesn't have the right profile or shape.
**Q. And explain for us your criticism that the weld had excessive undercut?**
A. Basically, excessive undercut can be problematic -- let me back up and explain what undercut is. It's where you're actually melting

Page 71

the base material immediately adjacent to the fill of the weld. Undercut is where you're melting the base material so that you have basically a trough right beside the toe of the weld.
Undercut is unacceptable because in fatigue situations, it will produce a notcherizer or a stress condition which will accelerate the propensity for fatigue cracking or exacerbate the propensity for fatigue cracking.
In addition to that, it reduces the cross-sectional area. In this case when you looked at the welds, you could see that there was undercut. The other thing that's significant about undercut is it basically means that your welding parameters, either your travel speed or your heat input, is not correct.
**Q. Explain what you mean by piping porosity?**
A. Porosity that basically gives you a pipe-like, follows a pipe-like pattern. Porosity is like a pore in the material that's created by gas evolution, so it's like a void in the weld deposit. Piping porosity follows like an actual pipe shape.
**Q. That is the result of what, in your opinion?**

Page 72

A. Either the surface wasn't adequately cleaned or that there was water contamination, something that would evolve gas.
**Q. And melt-through, what's your criticism about melt-through?**
A. Melt-through would be unacceptable in accordance with the requirements of AWS D1.6 because this was a fillet weld. It wasn't supposed to melt through the base material.
The problem with melt-through is that you actually have now significantly altered the quality of the base material in the area where you did the welding. And that may or may not be a problem, depending upon the design basis. In addition to that, you've introduced foreign material onto the backside of whatever you're welding on.
**Q. In your opinion, did the fact that the welds, some of the welds were short, have any relationship to the cause of the fire, direct relationship?**
MR. FREEL: Objection. You may answer.
A. If your question is did the short weld cause a fire, it may have been a short weld that caused